# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

YOON DOELGER and
PETER DOELGER,

               Plaintiffs,

     v.

JPMORGAN CHASE BANK, N.A. and
CHICKASAW CAPITAL MANAGEMENT, LLC,

               Defendants.

Civil Action No. 1:21-cv-11042-AK

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
SPECIAL "ANTI-SLAPP" MOTION TO DISMISS OR
IN THE ALTERNATIVE UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................................ 3

    I.     The Advisory Agreements and the 2015 Hedge Letter ......................................... 3

    II.    JP Morgan's Counterclaims ................................................................................. 5

ARGUMENT ...................................................................................................................... 6

    I.     The Doelgers' Special Motion to Dismiss Should be Granted and As a Result
         They Are Entitled to Attorneys' Fees and Costs Incurred in Connection with this
         Motion ................................................................................................................... 6

        A.    Massachusetts General Laws Chapter 231 § 59H Compels Dismissal of
              Lawsuits That May Chill Petitioning Activity ............................................... 6

        B.    JP Morgan Filed its Counterclaims Solely to Chill the Doelgers'
              Petitioning Activity ........................................................................................ 7

    II.    JP Morgan's Counterclaims Should be Dismissed Pursuant to Rule 12(b)(6) ....... 9

        A.    Standard for a Motion to Dismiss ................................................................. 9

        B.    JP Morgan Fails to Allege Any Breach of the Advisory Agreements
              (Count II) ....................................................................................................... 9

        C.    JP Morgan Fails to State a Breach of Contract Claim in Connection with the
              2015 Hedge Letter (Count I) ......................................................................... 13

        D.    JP Morgan Fails to State a Claim for Indemnity (Count III) ...................... 15

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*477 Harrison Ave., LLC* v. *JACE Boston, LLC*,
483 Mass. 520 (2019) ............................................................................................ 6

*Advanced Micro Devices, Inc. v. Feldstein*,
No. 13-40007-TSH, 2013 U.S. Dist. LEXIS 189838
(D. Mass. May 15, 2013) ...................................................................................... 20

*Angelo v. USA Triathlon*,
No. 13-12177-LTS, 2014 U.S. Dist. LEXIS 131759
(D. Mass. Sept. 18, 2014) .................................................................................... 12

*Aronstein v. Mass. Mut. Life Ins. Co.*,
No. 15-12864-MGM,
2016 U.S. Dist. LEXIS 54190 (D. Mass. Apr. 22, 2016) ...................................... 10

*Ashcroft v.Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 9

*Bargantine v. Mechs. Coop. Bank*,
No. 13-11132-NMG, 2013 U.S. Dist. LEXIS 169284
(D. Mass. Nov. 26, 2013) ....................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 9

*Bodden v. Kean*,
No. 23250/2008, 2009 N.Y. Misc. LEXIS 6678, 490
(N.Y. Sup. Ct. Kings County 2009) ................................................................. 14, 15

*Brennan v. Carvel Corp.*,
929 F.2d 801 (1st Cir. 1991) ................................................................................ 10

*Butvin v. DoubleClick, Inc.*,
No. 99-4727-JFK, 2001 U.S. Dist. LEXIS 2318
(S.D.N.Y. Mar. 5, 2001) ...................................................................................... 10

*Cardno ChemRisk, LLC v. Foytlin*,
476 Mass. 479 (2017) ............................................................................................. 8

*Cervantes v. CRST Int'l, Inc.*,
No. 20-10106-PBS, 2020 U.S. Dist. LEXIS 139189
(D. Mass. Aug. 5, 2020) ....................................................................................... 20

*Crotty v. Continuum Energy Techs.*,
No. 1984-cv-03971-BLS2, 2020 Mass. Super. LEXIS 95
(Mass. Super. Ct. May 12, 2020) ............................................................................ 7, 8

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*,
697 F. Supp. 2d 213 (D. Mass. 2010) ........................................................................ 12

*Davis v. Davis*,
2007 Mass. App. Div. 124 (2007) .............................................................................. 14

*Doe v. Trs. of Bos. Coll.*,
892 F.3d 67 (1st Cir. 2018) .................................................................................. 13, 14

*Duracraft Corp. v. Holmes Prods. Corp.*,
427 Mass. 167 (1998) .................................................................................................. 9

*Edlow v. RBW, LLC*,
No. 09-12133-RGS, 2010 U.S. Dist. LEXIS 50519
(D. Mass. May 21, 2010) ............................................................................................ 11

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011) ........................................................................ 11

*Fabre v. Walton*,
436 Mass. 517 (2002) ................................................................................................... 7

*Fafoutis v. Lyons*,
149 A.D.2d 565 (N.Y. App. Div. 1st Dep't 1989) ...................................................... 14

*Flagg v. Yonkers S&L Ass'n*,
307 F. Supp. 2d 565 (S.D.N.Y. 2004) ....................................................................... 20

*Garnet Constr. Co. v. Acadia Ins. Co.*,
No. 2001-2373-C, 2002 Mass. Super. LEXIS 492
(Mass. Super. Ct. Nov. 8, 2002) ................................................................................ 17

*Godin v. Schencks*,
629 F.3d 79, 92 (1st Cir. 2010) ................................................................................... 6

*Goldsmith v. Marsh USA, Inc.*,
604 B.R. 600 (Bankr. D. Mass. 2019) .................................................................... 9, 10

*Great N. Ins. Co. v. Interior Constr. Corp.*,
7 N.Y.3d 412 (N.Y. 2006) .......................................................................................... 16

*Guckenberger v. Boston Univ.*,
957 F. Supp. 306, 316 (D. Mass. 1997) ..................................................................... 11

*Guilfoile v. Shields*,
  913 F.3d 178 (1st Cir. 2019) ........................................................................ 9

*Hooper Assoc. Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487 (N.Y. 1989) .................................................................. 16, 19

*James B. Nutter & Co. v. Estate of Murphy*,
  478 Mass. 664 (2018) ................................................................................ 20

*L'Oreal USA, Inc. v. RG Shakour, Inc.*,
  No. 08-40064-FDS, 2010 U.S. Dist. LEXIS 92863
  (D. Mass. Sept. 7, 2010) ........................................................................... 10

*M.J. Flaherty Co. v. Walsh/O'Connell Joint Venture*,
  2003 Mass. Super. LEXIS 72
  (Mass. Super. Ct. Feb. 25, 2003) ............................................................. 17

*Matter of Power v. Olympic Reg'l Dev. Auth.*,
  195 A.D.3d 1104 (N.Y. App. Div. 3rd Dep't 2021) ................................. 20

*McLarnon v. Jokisch*,
  431 Mass. 350 (2000) .................................................................................. 7

*Mooney v. Diversified Business Communs.*,
  No. 1684-cv-03726-BLS2, 2018 Mass. Super. LEXIS 50
  (Mass. Super. Ct. March 2, 2018) ............................................................. 18

*N. Am. Expositions Co. Ltd. P'ship v. Corcoran*,
  452 Mass. 853 (2009) .................................................................................. 6

*Nassau Cnty. v. N.Y. State Urban Dev. Corp.*,
  4 N.Y.S.3d 874 (N.Y. Sup. Ct. Nassau County 2015) ............................. 14

*SI Venture Holdings, LLC v. Catlin Specialty Ins.*,
  118 F. Supp. 3d 548 (S.D.N.Y. 2015) ...................................................... 15

*Source One Fin. Corp. v. Occidental Fire & Cas. Co.*,
  No. 2084-cv-2712-BLS2, 2021 Mass. Super. LEXIS 447
  (Mass. Super. Ct. July 16, 2021) ............................................................ 6, 7

*Steinmetz v. Coyle & Caron, Inc.*,
  No. 15-cv-13594-DJC, 2016 U.S. Dist. LEXIS 99631
  (D. Mass. July 29, 2016) .......................................................................... 6, 7

*Tonking v. Port Auth.*,
  3 N.Y.3d 486 (N.Y. 2004) ........................................................................ 17

*Umscheid v. Simnacher*,
    106 AD2d 380, 381 (N.Y. App. Div. 2d Dept 1984) ............................................... 15

*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*,
    647 F.3d 377 (1st Cir. 2011).............................................................................. 9

*Wenger v. Aceto*,
    451 Mass. 1 (2008) ......................................................................................... 6

*Whitehaven S.F., LLC v. Spangler*,
    45 F. Supp. 3d 333 (S.D.N.Y. 2014)................................................................ 15

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001)............................................................... 14

**Statutes**

Mass. G.L. c. 231 § 59H ........................................................................... 1, 6, 7

Investment Advisers Act of 1940, 5 U.S.C. §§ 80b-1—80b-21 ........................... 3, 5, 13

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................. 1, 2, 9

**Other Authorities**

Advisers Act Release No. 5248 (Jul. 12, 2019)................................................. 3

*Heitman Capital Management, LLC, et al.*,
    SEC Staff No-Action Letter, No. 801-15473 (Feb. 12, 2007) .................................. 3

Restatement 2d Conflict of Laws § 145 (1971) ................................................. 3

Plaintiffs Yoon Doelger and Peter Doelger submit this Memorandum of Law in Support of their Special "Anti-SLAPP" Motion to Dismiss or, in the Alternative, under Rule 12(b)(6) of the Federal Rules of Civil Procedure against JPMorgan Chase Bank, N.A. ("JP Morgan").

## PRELIMINARY STATEMENT

JP Morgan's counterclaims epitomize why anti-SLAPP[1] statutes were enacted. JP Morgan admits in its Answer and Counterclaims that it is bringing its counterclaims solely based on the petitioning activity of the Doelgers, namely, filing the Complaint against Defendants. JP Morgan asserts two breach of contract claims against the Doelgers, each concerning a different purported agreement, but fails to plead any provisions of the agreements that it believes the Doelgers breached. Instead, JP Morgan merely pleads in conclusory fashion that the Doelgers breached the agreements by "filing and maintaining the Complaint." Counterclaims, ¶¶ 29, 34.[2] In addition, JP Morgan asserts an indemnity counterclaim against the Doelgers by relying on two separate indemnity provisions that are either unenforceable or, at the least, inapplicable to intraparty disputes.

Moreover, as with JP Morgan's opposition to the Motion to Admit James R. Serritella *Pro Hac Vice*, JP Morgan's counterclaims are not only wholly without merit, but are nothing more than an attempt to cause the Doelgers additional financial hardship. JP Morgan, the largest bank in the United States and with limitless resources, has demonstrated that it has little desire to litigate the merits of the Doelgers' claims, and instead has engaged in a pattern of bullying the Doelgers.

The Doelgers are elderly retires; Mr. Doelger, 84, is a retired businessman. Mr. Doelger has been suffering from cognitive decline, including dementia, for years. Mrs. Doelger, 74 and an

---

[1] "SLAPP" is an acronym for "Strategic Litigation Against Public Participation"; *see* Mass. G.L. c. 231 § 59H.
[2] As used herein, "Counterclaims" refers to the portion of the pleading titled "Defendant JPMorgan Chase Bank, N.A.'s Answer, Affirmative Defenses and Counterclaims", p. 86 – 97, Docket No. 25.

artist, is originally from Korea and speaks English as a second language.  The Doelgers put their trust in JP Morgan as their investment adviser, but JP Morgan failed to act in the Doelgers' best interest.  As alleged in the Complaint, JP Morgan's egregious breaches of its fiduciary duties and undisclosed non-waivable conflicts of interest resulted in millions of dollars of losses to the Doelgers, from which JP Morgan profited, at the Doelgers' expense, to the tune of millions of dollars.  JP Morgan's Answer and Counterclaims, which is full of outlandish and false statements regarding the Doelgers, is an attempt to impugn their reputation and harass and intimidate the Doelgers from pursuing their claims—a litigation strategy indicative of its general approach to the Doelgers.

It appears JP Morgan's mistreatment of the Doelgers is not an isolated occurrence.  Indeed, the Office of the Comptroller of Currency (the "OCC") recently fined JP Morgan $250 million because it determined JP Morgan "engaged in unsafe or unsound practices that were part of a pattern of misconduct" in connection with its fiduciary activities.[3]

For these reasons and the reasons discussed below, JP Morgan's Counterclaims should be dismissed pursuant to the anti-SLAPP statute, and attorneys' fees *must* be assessed against JP Morgan.  In the alternative, the Counterclaims should be dismissed under Rule 12(b)(6) because JP Morgan fails to state a claim for which relief can be granted.

---

[3]  See consent order dated November 24, 2020 (the "Consent Order"), https://www.occ.gov/static/enforcement-actions/ea2020-067.pdf.  The OCC found that "[f]or several years, the Bank maintained a weak management and control framework for its fiduciary activities and had an insufficient audit program for, and inadequate internal controls over, those activities."  Consent Order at 2.  The OCC Further noted that "[a]mong other things, the Bank had deficient risk management practices and an insufficient framework for avoiding conflicts of interest."  *Id*.

<u>**STATEMENT OF RELEVANT FACTS**</u>

**I.      The Advisory Agreements and the 2015 Hedge Letter**

On or about August 10, 2015, Mr. Doelger signed various agreements (the "2015 Advisory Agreements") in connection with the opening of an advisory account with JP Morgan (the "Advisory Account").  *See* Ex. 1.[4]  Pursuant to the 2015 Advisory Agreements, Defendants agreed to become Mr. Doelger's investment advisers.

Six weeks after Mr. Doelger and JP Morgan signed the 2015 Advisory Agreements, JP Morgan and its affiliate, J.P. Morgan Securities LLC ("JP Morgan Securities"), sent Mr. Doelger a self-serving letter dated September 24, 2015 (the "2015 Hedge Letter")[5] purporting to limit JP Morgan's liability in connection with its role as an investment adviser by requesting that Mr. Doelger make certain acknowledgements regarding his financial acumen that they knew were untrue.  *See* Ex. 2; *see also* Complaint ¶ 96.  In addition, JP Morgan misstated Mr. Doelgers' net worth as significantly higher than it was.  Complaint ¶ 97.  However, JP Morgan was well-aware of Mr. Doelger's complete financial circumstances, including all his assets and liabilities and his net worth, given that (i) Mr. Doelger had a decades long relationship with JP Morgan, which conducted nearly all his banking, (ii) JP Morgan regularly prepared personal financial statements listing Mr. Doelger's assets and liabilities, (iii) JP Morgan was the custodian for Mr. Doelger's existing investment portfolio (iv) and, beginning in 2009 or prior, JP Morgan extended millions of

---

[4]  References herein to "Ex. _" are to the exhibits attached to the Declaration of Joshua W. Gardner, dated October 22 and submitted herewith.

[5]  A "hedge clause" is an exculpatory provision in an investment advisory agreement that purports to relieve an adviser from liability and/or give the adviser the ability to seek indemnity from its client.  *See* <u>Interpretive Release Regarding Standard of Conduct for Investment Advisers, Advisers Act Release No. 5248</u> at 11, n. 31 (Jul. 12, 2019).  The Securities and Exchange Commission has condemned such hedge clauses as running afoul of Section 206 (the Anti-Fraud Provisions) of the Investment Advisers Act of 1940 (the "Advisers Act"), stating "there are few (if any) circumstances in which a hedge clause in an agreement with a retail client would be consistent with those antifraud provisions, where the hedge clause purports to relieve the adviser from liability for conduct as to which the client has a non-waivable cause of action against the adviser provided by state or federal law."  *Id.*; *see also Heitman Capital Management, LLC, et al.*, SEC Staff No-Action Letter, No. 801-15473 at 3 (Feb. 12, 2007).

dollars in loans to Mr. Doelger that were renewed based on JP Morgan's annual assessment of Mr. Doelger's assets and liabilities. *See* Complaint ¶¶ 19, 20, 22, 23, 27 and 98; *see also* admissions in JP Morgan's Answer ¶¶ 19, 22, 23, 26-7.

Pursuant to the 2015 Hedge Letter, JP Morgan and JP Morgan Securities purported to obtain indemnity from Mr. Doelger in connection with certain third-party claims brought against them. JP Morgan and JP Morgan Securities did not agree to provide Mr. Doelger with any benefit or services in exchange for the purported agreements and indemnity they sought in the 2015 Hedge Letter. Mrs. Doelger was not a party to the 2015 Hedge Letter and JP Morgan does not, and cannot, allege otherwise.

From August 2015 until June 2019, the Advisory Account was solely in Mr. Doelger's name. On or about June 21, 2019, Mrs. Doelger was added to the Advisory Account as a joint account holder pursuant to a "Title Change Request" and she signed a set of agreements (the "2019 Advisory Agreements") that were nearly identical to the 2015 Advisory Agreements. *See* Exs. 1 and 3. Mr. Doelger also signed the 2019 Advisory Agreements. *See* Ex. 3. Pursuant to the 2019 Advisory Agreements, Defendants agreed to become Mrs. Doelger's investment advisers. JP Morgan did not present the Doelgers with a hedge letter in connection with the 2019 Advisory Agreements.

The Doelgers performed all their obligations under the 2015 Advisory Agreements and the 2019 Advisory Agreements (collectively, the "Advisory Agreements"), including paying Defendants hundreds of thousands of dollars in investment advisory fees. *See* Complaint ¶ 169; *see also* Answer ¶ 169 (admitting to charging the Doelgers a 1% annual fee on their investments). The Doelgers allege that Defendants breached the Advisory Agreements by, among other things, failing to invest the Doelgers' funds in accordance with the Doelgers' investment objectives or

perform routine portfolio reviews to determine whether their recommended investment strategy was in the best interest of the Doelgers.  *See*, *e.g.*, Complaint, ¶¶ 264-65.

## II.    JP Morgan's Counterclaims

Chickasaw filed its Answer on September 24, 2021 and *did not* file counterclaims.  JP Morgan filed its Answer with Counterclaims on October 1, 2021 and asserts three causes of action:

- Count I:  JP Morgan alleges that the Doelgers breached the 2015 Hedge Letter by "filing and maintaining the Complaint, which contradicts Mr. Doelger's prior representations in the September 2015 Letter and disavows Mr. Doelger's express assumption of his investment risks."  Counterclaims ¶ 29.

- Count II:  JP Morgan alleges that the Doelgers breached the Advisory Agreements by "filing and maintaining their Complaint, which contradicts the Doelgers' prior representations in those agreements and asserts claims the Doelgers agreed not to assert under the limited liability clauses in those agreements." Counterclaims ¶ 34.

- Count III:  JP Morgan alleges that it is entitled to contractual indemnity for its attorneys' fees and costs in this action by relying on two separate one-sided indemnity provisions (one in the above-mentioned 2015 Hedge Letter and one in the terms and conditions).  Counterclaims ¶¶ 37, 40.

In connection with Count II , the "limited liability clauses" to which JP Morgan refers appear to be provisions in JP Morgan's Combined Terms and Conditions (the "Terms and Conditions"), for which there are several different versions.  *See* Exs. 4 and 5.  Although the Terms and Conditions are separate and apart from the Advisory Agreements, JP Morgan has indicated that it intends to argue they were part of the Advisory Agreements and that a different set of Terms and Conditions applies to each of the Advisory Agreements.[6]  *See* Gardner Decl. ¶¶ 6-7.  The provisions relevant to this Motion are ether identical or substantially the same in both sets of Terms and Conditions.

---

[6] The Doelgers maintain that the Terms and Conditions are not binding on them.  First, the Advisory Agreements do not specifically refer to any "Combined Terms and Conditions".  In addition, the Doelgers do not believe that JP Morgan included the Terms and Conditions with the Advisory Agreements when they were signed and did not make them readily accessible.  In any event, certain provisions in the Terms and Conditions constitute unenforceable hedge clauses under the Advisers Act and are unenforceable waivers of JP Morgan's fiduciary duties.  Accordingly, the Doelgers reserve their rights to challenge the enforceability of the Terms and Conditions and/or certain of the provisions contained therein.

<u>**ARGUMENT**</u>

I.  **The Doelgers' Special Motion to Dismiss Should be Granted and As a Result They Are Entitled to Attorneys' Fees and Costs Incurred in Connection with this Motion**

   A.  **Massachusetts General Laws Chapter 231 § 59H Compels Dismissal of Lawsuits That May Chill Petitioning Activity**

If ever a case compelled an anti-SLAPP motion to dismiss, this is that case.  In enacting the anti-SLAPP statute, "the Legislature intended to immunize parties from claims 'based on' their petitioning activities." *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 167 (1998); *see* Mass. G.L. c. 231 § 59H.  Accordingly, the statute provides broad protections for individuals who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits.  *See N. Am. Expositions Co. Ltd. P'ship v. Corcoran*, 452 Mass. 852, 853 (2009) (noting that the statute "creates a special motion to dismiss for the prompt resolution of SLAPP suits, actions designed not to win, but, rather, 'to deter or retaliate against individuals who seek to exercise their right of petition.'") (*quoting Wenger v. Aceto*, 451 Mass. 1, 4 (2008).

Filing a lawsuit constitutes "petitioning activity" under the statute.  *477 Harrison Ave., LLC* v. *JACE Boston, LLC*, 483 Mass. 514, 520 (2019) ("Commencement of litigation is quintessential petitioning activity."); *Source One Fin. Corp. v. Occidental Fire & Cas. Co.*, No. 2084-cv-2712-BLS2, 2021 Mass. Super. LEXIS 447, at *11-12 (Mass. Super. Ct. July 16, 2021) ("Petitioning activity under § 59H includes, among other things, the filing of a lawsuit.").  Further, the "Massachusetts anti-SLAPP statute [is] applicable as substantive law to diversity cases brought in federal court." *Bargantine v. Mechs. Coop. Bank*, No. 13-11132-NMG, 2013 U.S. Dist. LEXIS 169284, at *8 (D. Mass. Nov. 26, 2013) (citing *Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010)); *see also Steinmetz v. Coyle & Caron, Inc.*, No. 15-cv-13594-DJC, 2016 U.S. Dist. LEXIS 99631, at *8-10 (D. Mass. July 29, 2016) ("The reasoning and conclusion of *Godin* extend to the Massachusetts anti-SLAPP statute because, as three judges in this district have expressly

recognized, the Massachusetts anti-SLAPP statute is in all relevant respects the same as the Maine anti-SLAPP statute.") (citations omitted). "Accordingly, the Massachusetts anti-SLAPP statute applies in federal courts." *Steinmetz*, 2016 U.S. Dist. LEXIS 99631, at *10.

A two-step procedure applies generally to a special motion to dismiss a claim pursuant to § 59H. First, the special movant (the Doelgers) must make a threshold showing that "all or part of the Defendants' counterclaim is 'solely' based upon [the Plaintiff's] petitioning activity." *Source One*, 2021 Mass. Super. LEXIS 447, at *11. If this showing is made, the nonmoving party (JP Morgan) can only avoid the motion to dismiss by showing that the petitioning activity is "devoid of any reasonable factual support or any arguable basis in law," and that "the [special movant's] acts caused actual injury" to the nonmoving party. *Fabre v. Walton*, 436 Mass. 517, 520 (2002) (quoting Mass. G.L. c. 231 § 59H). Once a court grants a special motion to dismiss under § 59H, the award of attorney's fees, "including those incurred for the special motion and any related discovery matters," is mandatory. G.L. c. 231 § 59H; *Crotty v. Continuum Energy Techs.*, No. 1984-cv-03971-BLS2, 2020 Mass. Super. LEXIS 95, at *2 n.3 (Mass. Super. Ct. May 12, 2020) (noting that "[i]f a court grants a special motion to dismiss under the anti-SLAPP statute, it 'has no discretion whether to grant costs and reasonable attorney's fees; under the statute [G.L.c. 231, §59H] the grant of both is mandatory.'"); *McLarnon v. Jokisch*, 431 Mass. 343, 350 (2000) ("The judge has no discretion in deciding whether to award costs and fees.").

**B. JP Morgan Filed its Counterclaims Solely to Chill the Doelgers' Petitioning Activity**

In this case, it is without question that the Counterclaims are based solely on the Doelgers filing this action. JP Morgan flatly admits it filed its counterclaims in response to the Doelgers' petitioning activity:

- "The Doelgers now have opted to blame others for their choices in attempt to avoid the losses they incurred due to their chosen investment strategy. To that end, on June 23, 2021, the Doelgers filed their Complaint against JPMC." Counterclaims ¶ 20.

- "The Doelgers' filing of the Complaint breaches their Agreements…." Counterclaims ¶ 22.

- "The Doelgers' Complaint also breaches their agreement not to assert claims against JPMC, *inter alia*, negligence." Counterclaims ¶ 24.

- "The Doelgers should be held accountable for this conduct [*i.e.*, filing the Complaint] and should reimburse JPMC for those legal expenses pursuant to the indemnity provisions of the Doelgers [sic] Agreements." Counterclaims ¶ 22.

- "The Doelgers have breached the [2015 Hedge Letter] by, among other things, filing and maintaining the Complaint…." Counterclaims ¶ 29.

- "The Doelgers have breached the [Advisory Agreements] by, among other things, filing and maintaining their Complaint…." Counterclaims ¶ 34.

Here, "[t]he counterclaims implicate the anti-SLAPP statute because they are based solely on [Plaintiff's] actions in filing his complaint and suing the Defendants." *Crotty v. Continuum Energy Techs.*, No. 1984-cv-03971-BLS2, 2020 Mass. Super. LEXIS 95, at *3 (Mass. Super. Ct. May 12, 2020).

Moreover, JP Morgan cannot show that the Doelgers' lawsuit is devoid of any reasonable factual support or any arguable basis in law and that this action caused JP Morgan actual injury. *See Cardno ChemRisk, LLC v. Foytlin*, 476 Mass. 479, 484 (2017) ("To withstand the special motion to dismiss, the nonmoving party must show, by a preponderance of the evidence, that the special movant's petitioning activity was devoid of any reasonable factual or legal support and that it caused the nonmoving party actual injury."). If JP Morgan truly believed that were the case, it could have made a motion to dismiss. However, it did not.

## II. JP Morgan's Counterclaims Should be Dismissed Pursuant to Rule 12(b)(6)

In the alternative, JP Morgan's counterclaims should be dismissed under Rule 12(b)(6) because JP Morgan fails to state a claim for which relief can be granted.

### A. Standard for a Motion to Dismiss

To survive a motion to dismiss, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory evidence, do not suffice to survive a motion to dismiss." *Ashcroft v.Iqbal*, 556 U.S. 662, 678 (2009). "A suit is properly dismissed 'if the complaint does not set forth factual allegations, *either direct or inferential*, respecting each material element necessary to sustain recovery under some actionable legal theory." *Guilfoile v. Shields*, 913 F.3d 178, 186-187 (1st Cir. 2019) (*quoting U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011) (emphasis in original).

### B. JP Morgan Fails to Allege Any Breach of the Advisory Agreements (Count II)

As an initial matter, JP Morgan has indicated that it intends to argue that New York law governs this dispute by relying on a provision in the Terms and Conditions. Ex. 4, at 4, Section 18; Ex. 5, at 5, Section 21. Given that there are issues of fact in connection with the enforceability of the Terms and Conditions, the Doelgers, without waiving any of their rights, assume for the purposes of this motion only that the Terms and Conditions are binding. *Supra* footnote. 6. The Terms and Conditions provide that "this Agreement shall be governed by the law of the State of New York." *Id.* However, that provision is narrow in scope and only applies to claims concerning breach of the agreement or disputes concerning interpretation of the agreement. *See Goldsmith v. Marsh USA, Inc.*, 604 B.R. 600, 617-18 (Bankr. D. Mass. 2019) ("By its terms, that contract's choice of law provision is limited to disputes arising out of the contract itself, not all disputes and potential claims between the parties."); *see also L'Oreal USA, Inc. v. RG Shakour, Inc.*, No. 08-

40064-FDS, 2010 U.S. Dist. LEXIS 92863, at *4 (D. Mass. Sept. 7, 2010) (holding that choice of law clause providing that "[t]his Agreement shall be construed in accordance with and all disputes herein shall be governed by the internal laws of the State of New York" applied only to contract claims); *accord Butvin v. DoubleClick, Inc.*, No. 99-cv-4727-JFK, 2001 U.S. Dist. LEXIS 2318, at *22-23 (S.D.N.Y. Mar. 5, 2001) ("[A] contractual choice of law provision…does not bind the parties with respect to non-contractual causes of action. Unless the express language of the provision is broad enough to encompass the entire relationship between the contracting parties, the choice of law provision applies only to the interpretation and enforcement of the contract itself.") (citations and internal quotation marks omitted).

The Doelgers maintain that Massachusetts law applies to this dispute. "In diversity cases, federal courts must apply the choice of law rules of the state in which the court sits." *Brennan v. Carvel Corp.*, 929 F.2d 801, 806 (1st Cir. 1991). Further, "in Massachusetts, the court must apply the law of the state with the 'most significant relationship' with the suit." *Id.* A number of factors help determine which state's law to apply: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Aronstein v. Mass. Mut. Life Ins. Co.*, No. 15-12864-MGM, 2016 U.S. Dist. LEXIS 54190, at *17 (D. Mass. Apr. 22, 2016) (quoting Restatement 2d Conflict of Laws § 145 (1971)). Here, (i) the parties began their decades-long relationship in Massachusetts, (ii) JP Morgan managed the Advisory Account out of its Boston branch, (iii) in-person meetings among the parties generally took place in Massachusetts, (iv) the Doelgers, at all relevant times, maintained a residence in Massachusetts and (v) the Doelgers incurred a substantial portion of

their injuries while they were present in Massachusetts. Accordingly, Massachusetts has the "most significant relationship" with this action.

In any event, JP Morgan fails to state a claim for breach of the Advisory Agreements under either Massachusetts or New York law. It is black letter law that "[t]o state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted). "To establish a breach, plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms. A term is material when it involves 'an essential and inducing feature' of the contract." *Edlow v. RBW, LLC*, No. 09-12133-RGS, 2010 U.S. Dist. LEXIS 50519, at *7 (D. Mass. May 21, 2010) (citation omitted).

New York law is substantially the same on the elements for a breach of contract claim. "Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189-90 (S.D.N.Y. 2011) (citation omitted). "To plead these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Id.* at 190 (*quoting Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim because plaintiffs failed to identify the contractual provisions that defendant breached)). In addition, "[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Id.* (citation omitted).

Here, JP Morgan alleges, in conclusory fashion, that the Doelgers breached the Advisory Agreements by "filing and maintaining their Complaint, which contradicts the Doelgers' prior

representations in those agreements….” JP Morgan’s Answer and Counterclaims, Docket No. 25, at 94 ¶ 34. JP Morgan does not and cannot identify a single provision in the Advisory Agreements that prevent the Doelgers from bringing this action against JP Morgan for its various breaches and acts of bad faith. The Doelgers performed all their obligations to JP Morgan under the Agreements, including paying JP Morgan hundreds of thousands of dollars in advisory fees. *See* Complaint ¶ 169.

Moreover, JP Morgan’s claim that somehow the Advisory Agreements it singlehandedly drafted could prevent a client from suing it amounts to an argument that JP Morgan is immune from suit. Such a reading would violate public policy. *See Angelo v. USA Triathlon*, No. 13-12177-LTS, 2014 U.S. Dist. LEXIS 131759, at *11 (D. Mass. Sept. 18, 2014) (reaching the conclusion “specifically that Massachusetts courts would not enforce an indemnity provision insofar as it relieved a party from liability stemming from its own gross negligence”); *CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, 697 F. Supp. 2d 213, 226 (D. Mass. 2010) (stating that “[c]ontracts that violate public policy are unenforceable”); *accord SI Venture Holdings, LLC v. Catlin Specialty Ins.*, 118 F. Supp. 3d 548, 551 (S.D.N.Y. 2015) (“Under New York law, ‘[a]n agreement may be unenforceable [] as contrary to public policy even in the absence of a direct violation of a criminal statute, if the sovereign has expressed a concern for the values underlying the policy implicated.’”) (citation omitted); *Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 344 (S.D.N.Y. 2014) (“Because contracts against public policy are void, it is well-established that courts will not enforce such contracts or ‘recognize rights arising from them.’”) (citation omitted).

JP Morgan’s conclusory allegation that “the Doelgers agreed not to assert [claims] under the limited liability clauses in those agreements” is equally unavailing. There is no provision in the Advisory Agreement or the Terms and Conditions under which the Doelgers agreed not to

pursue certain claims against JP Morgan.  JP Morgan seems to refer to an exculpatory clause in the Terms and Conditions, but that provision, to the extent enforceable, does not provide that the Doelgers cannot assert claims against JP Morgan.  It merely provides that JP Morgan can only be liable for losses resulting from its "gross negligence or willful misconduct."  Terms and Conditions, Exs. 4 and 5, at 3, Section 11.  If JP Morgan truly believes that its liability is limited to acts of gross negligence or willful misconduct, then the procedurally proper mechanism is for JP Morgan to assert an affirmative defense, which it has done, and not retaliatory counterclaims. *See* Answer and Counterclaims, Eleventh Defense.  Accordingly, Count II must be dismissed.

### C.  JP Morgan Fails to State a Breach of Contract Claim in Connection with the 2015 Hedge Letter (Count I)

#### 1.  The 2015 Hedge Letter Cannot be Enforced Against Mrs. Doelger

As an initial matter, JP Morgan's attempt to enforce the 2015 Hedge Letter against Mrs. Doelger is without merit.  As JP Morgan is well aware, Mrs. Doelger did not sign the 2015 Hedge Letter.  JP Morgan did not become Mrs. Doelger's investment adviser until 2019, when JP Morgan and Mrs. Doelger signed the 2019 Advisory Agreements.  JP Morgan never presented Mrs. Doelger with the 2015 Hedge Letter and she never signed such letter, and JP Morgan does not, and cannot, allege otherwise.  Accordingly, Count II must be dismissed against Mrs. Doelger.

#### 2.  The 2015 Hedge Letter is Not a Valid Contract

The 2015 Hedge Letter is not a valid contract given that JP Morgan failed to provide any consideration to Mr. Doelger in exchange for Mr. Doelgers' undertakings in the 2015 Hedge Letter.[7]  "The essential elements for the formation of a contract under Massachusetts law consist

---

[7] The Doelgers reserve their rights to challenge the 2015 Hedge Letter on additional grounds once there is a fully developed record in this case, including, without limitation, that the 2015 Hedge Letter is unenforceable because it violates the Advisers Act, 15 U.S.C. § 80b-15, and because JP Morgan breached its fiduciary duties in bad faith and/or with reckless indifference to the Doelgers' interests and/or profited from the Doelgers' losses.

of an offer, acceptance, and consideration." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018). "As to the element of consideration, 'the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor.'" *Id.* (citation omitted). Here, there was no legal detriment of JP Morgan, which insists it received a wholesale waiver of claims, nor was there any benefit to Mr. Doelger. Thus, the 2015 Hedge Letter is not a valid contract. *See id.* ("Because there was no consideration, no enforceable contract was formed."); *see also Nassau Cnty. v. N.Y. State Urban Dev. Corp.*, 4 N.Y.S.3d 874, 884 (N.Y. Sup. Ct. 2015). Indeed, on August 10, 2015, JP Morgan agreed to become Mr. Doelger's investment adviser when it signed the 2015 Advisory Agreement. *See* 2015 Advisory Agreement, Opportunistic Advisory Program at 1-2. At that time, JP Morgan did not condition acceptance of this agreement on Mr. Doelger agreeing to any additional "waiver", "assumption of risk" or "indemnity". Nonetheless, six weeks later, on September 24, 2015, JP Morgan, on behalf of itself, and its affiliate, JP Morgan Securities, which was not even a party to the Advisory Agreements, sent Mr. Doelger the 2015 Hedge Letter. Accordingly, JP Morgan has not alleged consideration as a matter of law.

Any argument from JP Morgan that "making the MLPEI offering available to [Mr. Doelger]" was the consideration for the 2015 Hedge Letter is unavailing. "Past consideration is not sufficient to support a contract." *Davis v. Davis*, 2007 Mass. App. Div. 123, 124 (2007); *accord Fafoutis v. Lyons*, 149 A.D.2d 565, 56 (N.Y. App. Div. 2d Dep't 1989) ("A covenant to do what one is already under a legal obligation to do is not sufficient consideration for another contract."); *Bodden v. Kean*, No. 23250/2008, 2009 N.Y. Misc. LEXIS 6678, 490 (N.Y. Sup. Ct. Kings County 2009) ("Generally, past consideration is no consideration and cannot support an agreement "because the detriment did not induce the promise. That is, since the detriment had

already been incurred, it cannot be said to have been bargained for in exchange for the promise.")
(*quoting Umscheid v. Simnacher*, 106 AD2d 380, 381 (N.Y. App. Div. 2d Dept 1984)).   As
discussed, JP Morgan was already under a legal obligation to make the MLPEI offering available
to Mr. Doelger pursuant to the 2015 Advisory Agreement and JP Morgan had already incurred the
"detriment" (*i.e.*, making the MLPEI offering available) and cannot be said to have been bargained
for any across-the-board promise not to sue or "assumption of the risk".

### 3.    The 2015 Hedge Letter Does Not Make JP Morgan Immune from Suit

Even if the 2015 Hedge Letter were a valid contract, which it is not, JP Morgan has failed
to state a claim for breach of contract for the same reasons it has failed to state a claim for breach
of the Advisory Agreements.   That is, JP Morgan fails to allege what specific provisions of the
2015 Hedge Letter the Doelgers supposedly breached by filing the Complaint and, in any event,
there is no provision in the letter preventing the Doelgers from suing JP Morgan.   Accordingly,
Count I must be dismissed.

### D.   JP Morgan Fails to State a Claim for Indemnity (Count III)

This Action concerns JP Morgan's misconduct, yet JP Morgan relies on indemnity clauses
to exculpate itself from liability for its own misconduct.   Specifically, JP Morgan bases its claim
for indemnity on two provisions (the "Indemnity Provisions"): one provision is in the Terms and
Conditions (the "T&C Indemnity Provision") and the other provision is in the 2015 Hedge Letter
(the "Hedge Indemnity Provision"), both of which were drafted *solely* by JP Morgan and benefited
*only* JP Morgan.   For the reasons discussed below, to the extent any of the provisions are
enforceable, they are inapplicable here and, if anything, only apply to third-party claims brought
against JP Morgan.   Accordingly, Count III must be dismissed.

### 1.	The T&C Indemnity Provision Does Not Apply to This Action

As an initial matter, JP Morgan alleges that the T&C Indemnity Provision applies solely because the Doelgers have supposedly breached the Advisory Agreements.  However, as discussed above, JP Morgan does not, and cannot, allege that the Doelgers breached the Advisory Agreements.  Accordingly, the indemnity claim based on the T&C Indemnity Provision must be dismissed.  In addition, the T&C Indemnity Provision only applies to indemnity claims in connection with third-party claims brought against JP Morgan and does not apply to intra-party disputes.

Under New York law, it is well settled that indemnity provisions only cover claims by third parties and do not cover claims between contracting parties unless the contract is "unmistakably clear" that the indemnity clause covers intra-party disputes.  *Hooper Assoc. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (N.Y. 1989); *see also Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 361 (N.Y. 2020).  To evince an "unmistakably clear" intent, the provision must exclusively or unequivocally refer to claims between the contracting parties:

> The clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, it is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. It obligates defendant to "indemnify and hold harmless [plaintiff] from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of breach of warranty claims, the performance of any service to be performed, the installation, operation and maintenance of the computer system, infringement of patents, copyrights or trademarks and the like. All these subjects are susceptible to third-party claims for failures in the installation or operation of the system. None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.

*Id.* at 492.  *See also Great N. Ins. Co. v. Interior Constr. Corp.*, 7 N.Y.3d 412, 417 (N.Y. 2006) ("Courts will construe a contract to provide indemnity to a party for its own negligence only where the contractual language evinces an 'unmistakable intent' to indemnify.") (citation omitted); *see*

*also Tonking v. Port Auth.*, 3 N.Y.3d 486, 490 (N.Y. 2004) ("[T]he language of the parties is not clear enough to enforce an obligation to indemnify, and we are unwilling to rewrite the contract and supply a specific obligation the parties themselves did not spell out."); *accord Garnet Constr. Co. v. Acadia Ins. Co.*, No. 2001-2373-C, 2002 Mass. Super. LEXIS 492, at *6 (Mas. Super. Ct. Nov. 8, 2002) ("[T]he general rule is that there must be express language creating an obligation to indemnify one against his own negligence.") (citation and internal quotation marks omitted); *M.J. Flaherty Co. v. Walsh/O'Connell Joint Venture*, 2003 Mass. Super. LEXIS 72, at *7 (Mass. Super. Ct. Feb. 25, 2003) (finding that indemnity language covered third-party claims and not intra-party claims).

Here, the T&C Indemnity Provision does not include "unmistakably clear" language referring to claims between the Doelgers and JP Morgan. It does not specifically provide that JP Morgan can recover its attorneys' fees in a dispute with the Doelgers:

> You will indemnify and hold all Morgan Affiliates providing products or services under the Agreement harmless from any claim, loss, liability, or expense, including, without limitation, collection costs, reproduction and search costs and the reasonable fees and disbursements of counsel and other advisers incurred by them (i) in rendering services hereunder; (ii) if you breach the Agreement; (iii) if a third party brings a claim, suit or proceeding against a Morgan Affiliate because it provided products and services to you, or (iv) resulting from a subpoena, administrative order, court order, levy, garnishment, attachment or other legal process affecting the Account. You will not be required to indemnify any Morgan Affiliate if the claim, loss, or liability results from its gross negligence or willful misconduct.

Terms and Conditions, Exs. 4 and 5, at 3, Section 11. Rather, it is a typical indemnity provision that "contemplate[s] reimbursement . . . on a third-party claim"; it neither "unequivocally refer[s] to claims between [the parties]" nor supports an inference that it applies to "an action on the contract" between the Doelgers and JP Morgan. *Hooper*, 74 N.Y.2d at 492. For this reason alone, the indemnity claim must be dismissed.

In addition, the T&C Indemnity Provision can only be read to apply to third-party claims. JP Morgan argues that it can seek indemnity from a client if the client breaches the Terms & Conditions and nothing more (*i.e.*, it isolates out subparagraph (ii)). By JP Morgan's very own reading of the provision, it could seek indemnity from a client for activity wholly unrelated to the services and alleged breach of the Advisory Agreements. Following JP Morgan's reading to its logical conclusion, isolating out the remaining subparagraphs would lead to further absurd results. That is, JP Morgan would be able to seek indemnity from a client for merely "rendering services" (subparagraph (i)) and nothing more, or if a third party brings a claim against JP Morgan (subparagraph (iii)) and nothing more.

JP Morgan's reading of the provision makes no sense as it would allow JP Morgan to seek indemnity from a client if JP Morgan is negligent in providing services and the client did nothing wrong. The only reading of the T&C Indemnity Provision that actually makes sense is that in order for JP Morgan to seek indemnity from a client, it must allege the indemnity is sought in connection with (i) "rendering services hereunder", (ii) a "breach of the Agreement" *and* (iii) either a third party (a) brings a lawsuit against JP Morgan or (b) seeks a subpoena or "legal process affecting the Account." *See Mooney v. Diversified Business Communs.*, No. 1684-cv-03726-BLS2 2018 Mass. Super. LEXIS 50, *7 (Mass. Super. Ct. March 2, 2018) ("To make sense of the disputed provisions, the Court must consider the contract as a whole and construe each provision in context, not in isolation…. the Court must reconcile or harmonize all of the contract's provisions.") (internal quotation marks omitted).

## 2. *The Hedge Indemnity Provision Does Not Apply to This Action*

As discussed above, JP Morgan cannot enforce the 2015 Hedge Letter against Mrs. Doelger, a non-party to the alleged agreement. In addition, it cannot enforce the 2015 Hedge Letter against Mr. Doelger for lack of consideration, and thus, the indemnity claim based on the Hedge

Indemnity Provision cannot stand.  The indemnity claim also fails because it only applies to third-party claims and does not cover this Action.

It is not unmistakably clear that the Hedge Indemnity Provision applies to intraparty disputes.  That is, it does not specifically provide that JP Morgan can recover its attorneys' fees in a dispute with the Doelgers:

> To the fullest extent permitted by applicable law, you agree to indemnify and hold harmless JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and their affiliates (collectively, "JPMorgan") from and against any and all liabilities, obligations, losses, damages, fines, penalties, claims, demands, actions, suits or proceedings, costs, expenses and disbursements (including legal and accounting fees and expenses, costs of investigation and sums paid in settlement) of any kind or nature whatsoever which may be imposed on, incurred by or asserted at any time against JPMorgan in the event that any of the confirmations, statements or agreements made by you as reflected in this letter are incomplete or incorrect in any respect. To the fullest extent permitted by applicable law, you agree to pay the expenses (including legal fees and expenses and costs of investigation) covered by this indemnity and incurred by JPMorgan as such expenses are incurred.

2015 Hedge Letter at 2, Ex 2.  The provision is a run of the mill indemnity provision that courts have routinely held only covers third party claims.

Moreover, the Hedge Indemnity Provision cannot even be read to cover JP Morgan's attorneys' fees in this Action.  By its terms, the provision applies to claims "in the event that any of the confirmations, statements or agreements made by you as reflected in this letter are incomplete or incorrect in any respect."  Ex 2 at 2.  It bears repeating that this Action arises from Defendants' egregious breaches of their fiduciary duties and not from any statements Mr. Doelger supposedly made.  JP Morgan essentially argues that because there were inaccurate statements in a self-serving letter it drafted, it can now seek attorneys' fees from Mr. Doelger for any claims brought against JP Morgan, regardless of whether the claims arise from the inaccurate statements. JP Morgan's overly broad reading of the provision is not only illogical, it is absurd.

### 3. The Indemnity Provisions Are at Best Ambiguous and Must Be Interpreted Against JP Morgan

Where there is doubt or ambiguity in a contract of adhesion, "a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Flagg v. Yonkers S&L Ass'n*, 307 F. Supp. 2d 565, 583 (S.D.N.Y. 2004) (citation omitted); accord *Advanced Micro Devices, Inc. v. Feldstein*, No. 13-40007-TSH, 2013 U.S. Dist. LEXIS 189838, at *32 (D. Mass. May 15, 2013) ("[I]t is appropriate to define the contract narrowly against the interest of the drafter."); *Cervantes v. CRST Int'l, Inc.*, No. 20-10106-PBS, 2020 U.S. Dist. LEXIS 139189, at *7 (D. Mass. Aug. 5, 2020) (noting "the long-established rule in contract law that ambiguities in contracts are construed against the drafter"). *See Matter of Power v. Olympic Reg'l Dev. Auth.*, 195 A.D.3d 1104, 1106 (N.Y. App. Div. 3rd Dep't 2021) ("This ambiguity itself precludes a finding of entitlement to contractual indemnification.").

The Terms & Conditions and the 2015 Hedge Letter are unquestionably contracts of adhesion and, at best, the Indemnity Provisions are ambiguous. JP Morgan was capable of drafting the Indemnity Provisions to clearly cover disputes between the parties. However, JP Morgan failed to do so. The Court should accept the Doelgers' reasonable interpretations of the Indemnity Provisions and reject JP Morgan's strained reading of the provisions. *James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664, 669 (2018) (internal quotations omitted) ("The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party.")

### CONCLUSION

For the foregoing reasons, the Doelgers respectfully request that the Court grant the Special Motion to Dismiss. Also, the Court must award the Attorneys their attorneys' fees. The Attorneys will provide an attorney fee petition under the Court's direction.

Dated: October 22, 2021

Respectfully submitted,

YOON DOELGER and PETER DOELGER

By their attorneys,

 /s/ Joshua W. Gardner

Joshua W. Gardner (BBO No. 657347)
GARDNER & ROSENBERG P.C.
One State Street, Fourth Floor
Boston, Massachusetts 02109
Tel. (617) 390-7570
josh@gardnerrosenberg.com

## LOCAL RULE 7.1 CERTIFICATION

I certify that prior to filing this motion a conference was held with counsel for JP Morgan. JP Morgan refused to assent to the relief sought herein.

Date: October 22, 2021

/s/ Joshua W. Gardner
Joshua W. Gardner

## CERTIFICATE OF SERVICE

I certify that that on this date the foregoing "PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SPECIAL "ANTI-SLAPP" MOTION TO DISMISS OR IN THE ALTERNATIVE UNDER RULE 12(b)(6)" was filed electronically with the Clerk of the Court by CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's CM/ECF electronic filing system. Parties may access this filing through the Court's system.

Date: October 22, 2021

/s/ Joshua W. Gardner
Joshua W. Gardner