**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

PETER DOELGER, and
YOON DOELGER,

<em>Plaintiffs,</em>

vs.

JPMORGAN CHASE BANK, N.A., and
CHICKASAW CAPITAL MANAGEMENT,
LLC,

<em>Defendants.</em>

No. 1:21-cv-11042-ADB

HEARING REQUESTED

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

I.   THE DOELGERS SEEK TO MOVE THEIR MLP PORTFOLIO TO JPMC ........................ 3

II.  IN CONNECTION WITH OPENING AND FUNDING THE MLP ACCOUNT, MR.
     DOELGER MAKES SEVERAL REPRESENTATIONS AND AGREES TO INDEMNIFY
     JPMC AS PART OF THE SEPTEMBER 2015 LETTER AGREEMENT AND 2015
     ADVISORY AGREEMENT ............................................................................. 3

     A.   2015 Advisory Agreement ................................................................... 3

     B.   The September 2015 Letter ..................................................................4

III. THE DOELGERS ADD MRS. DOELGER AS AN OWNER OF THE MLP ACCOUNT IN
     2019 TO ASSIST MR. SERRITELLA ............................................................... 5

IV.  AFTER IGNORING JPMC'S ADVICE TO DIVERSIFY, THE DOELGERS' MLPS
     DECLINE IN VALUE DURING THE COVID-19 PANDEMIC ...................................... 6

V.   RATHER THAN TAKING RESPONSIBILITY FOR THEIR INVESTMENT DECISIONS,
     THE DOELGERS AND MR. SERRITELLA DEMAND THAT JPMC RECOUP THEIR
     LOSSES .................................................................................................... 6

VI.  THE DOELGERS FILE THE COMPLAINT AND JPMC FILES ITS ANSWER AND
     COUNTERCLAIMS ...................................................................................... 7

     A.   The Doelgers Are In Breach Of The Doelger Agreements And Their
          Indemnification Obligations Have Been Triggered ...............................7

          1.   Breach Of The Doelger Agreements.............................................7

          2.   Indemnification Obligations .......................................................8

     B.   JPMC Files Its Counterclaims To Preserve Its Rights .........................8

ARGUMENT.................................................................................................... 8

I.   THE DOELGERS' SPECIAL MOTION TO DISMISS SHOULD BE DENIED ...................... 8

     A.   The Doelgers Have Not Met Their Burden Of Establishing That JPMC's
          Counterclaims Are Based *Solely* On Their Petitioning Activity ..................10

     B.   JPMC's Counterclaims Are Colorable And Not Retaliatory...................11

     C.   The Doelgers' Complaint Lacks Any Objectively Reasonable Basis ...............12

II.  DOELGERS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) SHOULD BE
     DENIED .................................................................................................. 13

     A.   New York Law Governs JPMC's Counterclaims ...............................14

**B. JPMC Has Stated A Colorable Claim For Breach Of Contract As To The 2015 Advisory Agreement And The Title Change Agreement (Count II)** ........14

    1.   JPMC Properly Alleged That The Doelgers Breached The 2015 Advisory Agreement And The Title Change Agreement ...................................................14

    2.   The Advisory Agreements Are Valid And Binding...........................................15

**C. JPMC Has Stated A Colorable Claim For Breach Of Contract As To The September 2015 Letter (Count I)** ...........................................................................16

    1.   JPMC Properly Alleged The Elements Of A Breach Of Contract Claim .........16

    2.   The September 2015 Letter Was A Valid And Binding Contract ....................17

**D. JPMC Stated A Colorable Claim For Indemnity Under The Doelger Agreements (Count III)** ..............................................................................................18

    1.   The Indemnity Provisions Of The Doelger Agreements Were Triggered ........18

    2.   The Parties Intended The Indemnity Clauses To Apply Under These Circumstances .................................................................................................19

**CONCLUSION** ...................................................................................................................**20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alantra LLC v. Apex Indus. Techs. LLC,*
2020 WL 6263596 (D. Mass. Oct. 23, 2020)...............................................................2, 10, 11

*Aldana v. Worcester Dig. Mktg. LLC,*
2020 WL 5993103 (Mass. Super. Aug. 12, 2020)...................................................................12

*Blanchard v. Steward Carney Hosp., Inc.,*
477 Mass. 141 (2017) ...............................................................................................................9

*Blanchard v. Steward Carney Hosp., Inc.,*
483 Mass. 200 (2019) ...................................................................................................*passim*

*Branch v. Turtleboy Dig. Mktg.,*
2020 Mass. Super. LEXIS 639 (Dec. 4, 2020) ......................................................................12

*Breed, Abbott & Morgan v. Hulko,*
74 N.Y.2d 686 (1989) ........................................................................................................19, 20

*Charter Oak Fire Ins. Co. v. Trio Realty Co.,*
2002 WL 123506 (S.D.N.Y. Jan. 31, 2002) ...........................................................................16

*Citibank, N.A. v. Franco,*
No. 11 CIV. 2925 RMB, 2011 WL 6961404 (S.D.N.Y. Dec. 29, 2011)..................................17

*Daniel Goldreyer, Ltd. v. Van de Wetering,*
217 A.D.2d 434 N.Y.S.2d 18 (1995) ......................................................................................17

*Deutsche Bank Sec., Inc. v. Rhodes,*
578 F. Supp. 2d 652 (S.D.N.Y. 2008)................................................................................18, 19

*Doe v. Trs. of Bos. Coll.,*
892 F.3d 67 (1st Cir. 2018).....................................................................................................17

*Duracraft Corp. v. Holmes Prod. Corp.,*
427 Mass. 156 (1998) ......................................................................................................2, 10, 11

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.,*
307 F. Supp. 3d 52 (E.D.N.Y. 2018) ......................................................................................15

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
837 F. Supp. 2d 162 (S.D.N.Y. 2011).....................................................................................15

*GG Managers, Inc. v. Fidata Tr. Co. New York*,
    215 A.D.2d 241 N.Y.S.2d 488 (1995) ....................................................................17

*Goldsmith v. Marsh USA, Inc.*,
    604 B.R. 600 (Bankr. D. Mass 2019) ...................................................................14

*Happy Kids, Inc. v. Glasgow*,
    2002 WL 72937 (S.D.N.Y. Jan. 17, 2002) ......................................................19, 20

*Kagan Development KDC Corp. v. Brusenkova*,
    2018 WL 3209212 (Mass. Super. Jan. 19, 2018)..........................................2, 3, 12

*Katz v. Travelers*,
    241 F. Supp. 3d 397 (E.D.N.Y. 2017) ..................................................................14

*Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*,
    368 F. Supp. 3d 302 (D. Mass. 2019) ...................................................................14

*Metro. Prop. & Cas. Ins. Co. v. Bos. Reg'l Physical Therapy, Inc.*,
    538 F. Supp. 2d 338 (D. Mass. 2008) ...................................................................13

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)............................................................................19, 20

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*,
    483 F. Supp. 3d 195 (S.D.N.Y. 2020)..................................................................14

*Sharon v. City of Newton*,
    437 Mass. 99 (2002) ..............................................................................................16

*Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*,
    839 F. Supp. 2d 680 (S.D.N.Y. 2012)..................................................................17

*Tapalian v. Town of Seekonk*,
    188 F. Supp. 2d 136 (D. Mass. 2002) ...................................................................12

*In re Toscano*,
    799 F. Supp. 2d 230 (E.D.N.Y. 2011) ..................................................................18

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
    136 F. Supp. 2d 253 (S.D.N.Y. 2001)..................................................................16

*Van Liew v. Stansfield*,
    474 Mass. 31 (2016) ..........................................................................................2, 13

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001)..................................................................15

**Statutes**

Investment Advisors Act of 1940 ...................................................................................15

New York General Obligations Law § 5-1103 ...............................................................18

**Other Authorities**

Fed. R. Civ. P. 13(a)(1)(A) .......................................................................................2, 8

## PRELIMINARY STATEMENT

Plaintiffs' motion to dismiss (the "Motion") is an improper attempt to prevent Defendant JPMorgan Chase Bank, N.A. ("JPMC") from exercising rights that Plaintiffs contractually agreed to grant JPMC.  When ultra-high-net-worth Plaintiffs Peter and Yoon Doelger (the "Doelgers") asked to transfer some of their existing investments in oil-and-gas Master Limited Partnerships ("MLPs") to JPMC in 2015, JPMC insisted on certain protections before allowing the Doelgers to continue concentrating their assets in MLPs—a strategy JPMC expressly recommended they not follow.  (Counterclaims ("CC") ¶¶ 9, 12-13.)  Among other things, JPMC asked Mr. Doelger (a former oil-and-gas executive with decades of investing experience) to contractually confirm that he understood JPMC was not recommending this investment strategy, he understood JPMC was recommending that Mr. Doelger diversify his portfolio, he was a sophisticated investor who had consulted advisors as needed, and he was willing to assume the risks of his strategy.  (*Id.* ¶¶ 13-14.)  The Doelgers also made representations confirming their financial status and agreed that JPMC's liability would be limited to gross negligence and willful misconduct.  (*Id.* ¶¶ 14, 16, 18.)  Finally, the Doelgers agreed to indemnify JPMC if, *inter alia*, they breached their agreements or raised claims beyond the agreed-upon limitation of liability.  (*Id.* ¶¶ 14, 16, 18, 37, 40.)

Years (and many MLP distribution payments) later, the Doelgers' investment strategy resulted in losses in the wake of the pandemic; but instead of accepting responsibility for their investment decisions, the Doelgers (with the help of their son-in-law, Mr. Serritella) decided to bring baseless claims (including contractually barred claims) against JPMC in an effort to make JPMC an insurer for their investment losses.  (*Id.* ¶ 2.)  This compelled JPMC to assert its own right to petition the Court for redress by asserting compulsory counterclaims ("Counterclaims"), which it would otherwise lose entirely, as they arise from the same transaction or occurrence as

those in the Complaint.  Fed. R. Civ. P. 13(a)(1)(A).  But according to the Motion, not only has JPMC failed to state a claim, but Massachusetts' anti-SLAPP statute bars JPMC from asserting its contractual rights *at all*.  (*See* Mot. at 6.)  Respectfully, Plaintiffs are wrong on both counts.

First, the anti-SLAPP statute was never intended to deny litigants their due process right to seek judicial recourse for their legitimate claims; rather, it was designed to protect "individual citizens of modest means" from lawsuits solely based on their act of petitioning on issues of public concern.  *Blanchard v. Steward Carney Hosp., Inc.*, 483 Mass. 200, 206 (2019) ("*Blanchard II*").  Here, JPMC's Counterclaims are based on contractual rights in its agreements with the Doelgers, which "constitute a substantial basis other than [the Doelgers'] petitioning activity."  *Duracraft Corp. v. Holmes Prod. Corp.*, 427 Mass. 156, 168 (1998); *accord, e.g.*, *Alantra LLC v. Apex Indus. Techs. LLC*, 2020 WL 6263596, at *4 (D. Mass. Oct. 23, 2020).  Moreover, JPMC's compulsory Counterclaims satisfy two additional independent criteria requiring denial of the Doelgers' Motion: (1) they are colorable and patently non-retaliatory, *see, e.g.*, *Kagan Development KDC Corp. v. Brusenkova*, 2018 WL 3209212, at *2-*3 (Mass. Super. Jan. 19, 2018); and (2) the Doelgers' Complaint lacks any objectively reasonable basis.  *See Van Liew v. Stansfield*, 474 Mass. 31, 40 (2016).  For each of these independent reasons, the Motion's anti-SLAPP arguments fail.

Second, with regard to Plaintiffs' Rule 12(b)(6) motion, JPMC has more than adequately pled the elements of its claims.  The breach-of-contract Counterclaims allege the existence of three valid contracts supported by consideration, and they reference the portions of the agreements that were breached.  (CC ¶¶ 13, 16, 18, 22-25, 29, 34.)  Moreover, JPMC's indemnification Counterclaims set forth in full the indemnification provisions—which include suits between the parties—and facts showing how they have been triggered.  (*Id.* ¶¶ 37-42.)  To the extent that Plaintiffs disagree with JPMC's allegations, they may attempt to justify this position through

discovery (which the parties will already be taking in connection with litigating Plaintiffs' claims).

For these reasons, and as explained more fully below, the Motion should be denied.

## FACTUAL BACKGROUND

### I.   THE DOELGERS SEEK TO MOVE THEIR MLP PORTFOLIO TO JPMC

Peter Doelger is a successful oil-and-gas entrepreneur, an ultra-high-net-worth individual, and a sophisticated, experienced investor.  (*Id.* ¶ 7.)  For decades before coming to JPMC, Mr. Doelger maintained a strategy of concentrating his investments in energy-sector MLPs.  (*Id.* ¶ 8.)  In 2015, Mr. Doelger sought to transfer a portion of these assets into a JPMC offering in energy-sector MLPs managed by Chickasaw Capital Management (the "MLP Account").  (*Id.* ¶ 7.)

While the Doelgers wanted to add a new MLP manager, given Mr. Doelger's experience with energy-sector MLPs and the family's preexisting tax plan, the Doelgers had no intention of changing their MLP-heavy investment strategy.  (*Id.* ¶¶ 9-10.)  Thus, the Doelgers were not establishing a discretionary account managed based on JPMC's recommendations—rather, they strictly wanted to continue their strategy of investing significant assets in energy MLPs.  (*Id.* ¶ 9.)

### II.   IN CONNECTION WITH OPENING AND FUNDING THE MLP ACCOUNT, MR. DOELGER MAKES SEVERAL REPRESENTATIONS AND AGREES TO INDEMNIFY JPMC AS PART OF THE SEPTEMBER 2015 LETTER AGREEMENT AND 2015 ADVISORY AGREEMENT

As a condition of allowing the Doelgers to invest in the MLP Account, JPMC entered into two agreements in 2015 with Mr. Doelger, as outlined below.

#### A.   2015 Advisory Agreement

For one, Mr. Doelger entered into an agreement (the "2015 Advisory Agreement") with JPMC.  (DE 1-2.[1])  In it, Mr. Doelger made certain representations (CC ¶ 16), including that his

---

[1] The copy of the 2015 Advisory Agreement attached to the Complaint is incomplete, as is made clear by the lack of certain documents referenced in the initial document list (*see* DE 1-2 at 2-3).  This includes the Combined General Terms and Conditions (*see id.* at 3), which are attached as Exhibit 5 to the Motion.  All DE and Ex. page numbers used herein refer to the ECF-stamped page number on the top of the document.

net worth was "$100,000,000" (DE 1-2 at 15).  Mr. Doelger further agreed that "I have reviewed

this Application, and I confirm and certify that the information herein is correct."  (CC ¶ 16; DE

1-2 at 6; *see also id.* at 18 (making a comparable certification).)

Mr. Doelger also affirmed that "I have received and reviewed, and I understand and agree

to, the General Terms for Accounts and Services" (the "General Terms").  (DE 1-2 at 6; *see also*

*id.* at 10 (incorporating those terms).)  The General Terms state that JPMC's "sole liability . . . shall

be any direct damages you incur because of our gross negligence or willful misconduct."  (DE 34-

4 at 8 (¶ 11).)  The General Terms also set forth the following indemnification clause:

> You will indemnify and hold [JPMC] harmless from any claim, loss, liability, or
> expense, including, without limitation, collection costs, reproduction and search
> costs and the reasonable fees and disbursements of counsel and other advisers
> incurred by them (i) in rendering services hereunder; (ii) if you breach the
> Agreement; (iii) if a third party brings a claim, suit or proceeding against [JPMC]
> because it provided products and services to you, or (iv) resulting from a subpoena,
> . . . .  You will not be required to indemnify [JPMC] if the claim, loss, or liability
> results from its gross negligence or willful misconduct.

(*Id.*)  Finally, the General Terms stated they were governed by New York law.  (*Id.* at 9 (¶ 18).)

### B.     The September 2015 Letter

Concerned about Mr. Doelger's MLP-focused investment strategy, JPMC required a

separate agreement (the "September 2015 Letter") before it would permit Mr. Doelger to fund the

MLP Account.  (CC ¶ 13; DE 1-4.)  That agreement set forth in writing JPMC's recommendation

that Mr. Doelger further diversify his portfolio—advice that Mr. Doelger rejected:

> As we have previously explained to you, . . . the size of your proposed investment,
> relative to your overall net worth is not recommended and raises concerns which
> we wish to share with you.
>
> Specifically, and given that you have a liquid net worth of approximately
> $100,000,000, we cannot recommend that you make a $33,000,000 investment in
> the MLPEI offering. . . . [W]e would generally recommend an investment no larger
> than 5% of such client's net worth . . . .
>
> Instead of your suggested approach, we would recommend that you diversify your

> portfolio . . . [and] to reduce your overall exposure to the MLP structures . . . . [Y]ou may have little to no ability to sell or transfer these assets to limit losses in a severe correction, as has occurred with this sector in the past.

(CC ¶ 13; DE 1-4 at 2.)  The September 2015 Letter then confirmed that Mr. Doelger:

> ha[d] represented to us that you (a) were a professional in the utility/energy industry, [and] (b) are financially knowledgeable and sophisticated, and capable of making your own assessment of the investment risks . . . without relying on us . . . .

(DE 1-4 at 3.)  In consideration of JPMC making the offering available, Mr. Doelger also agreed:

> 1. You . . . are (a) capable of evaluating investment risks independently . . . ; and (b) will exercise independent judgment in evaluating . . . recommendations . . . .
>
> 2. You confirm that prior to investing in the MLPEI offering you . . . have made your own analysis and investigation and consulted such investment, legal, tax, accounting and other advisers as you have deemed necessary.  You . . . are making the investment with a full understanding of all of the terms, conditions and risks and are willing to assume those terms, conditions and risks.

(*Id.* at 3.)  Finally, the September 2015 Letter set forth this indemnification clause:

> To the fullest extent permitted by applicable law, you agree to indemnify and hold harmless [JPMC] from and against any and all liabilities . . . (including legal and accounting fees and expenses, costs of investigation and sums paid in settlement) . . . which may be imposed on, incurred by or asserted at any time against [JPMC] in the event that any of the confirmations, statements or agreements made by you as reflected in this letter are incomplete or incorrect in any respect.  To the fullest extent permitted by applicable law, you agree to pay the expenses (including legal fees and expenses and costs of investigation) covered by this indemnity and incurred by [JPMC] as such expenses are incurred.

(DE 1-4 at 3; *see* CC ¶ 14.)  Before signing the September 2015 Letter, Mr. Doelger shared it with his personal legal counsel, Paul Roberts, and had the opportunity to confer with him.  (CC ¶ 15.)  Relying on Mr. Doelger's representations and agreements in the 2015 Advisory Agreement and September 2015 Letter, JPMC agreed to open the MLP Account for the Doelgers.  (*Id.* ¶ 17.)

## III.   THE DOELGERS ADD MRS. DOELGER AS AN OWNER OF THE MLP ACCOUNT IN 2019 TO ASSIST MR. SERRITELLA

In June 2019, Mr. and Mrs. Doelger decided to retitle the MLP Account with Mrs. Doelger

as a co-owner.[2]  (*Id.* ¶ 18.)  In connection with that decision, the Doelgers signed account-opening documents (the "Title Change Agreement"; with 2015 Advisory Agreement, the "Advisory Agreements," and with September 2015 Letter as well, the "Doelger Agreements").  (*Id.*)

In the Title Change Agreement, the Doelgers confirmed the accuracy of certain representations (*id.*; DE 1-3 at 4-5) and agreed to JPMC's Combined Terms and Conditions (the "Combined Terms").  (CC ¶ 18; DE 1-3 at 4-5.)  Like the General Terms, the Combined Terms stated that (a) JPMC's liability would be limited to gross negligence or willful misconduct; and (b) the Doelgers would indemnify JPMC if, *inter alia*, the Doelgers breached their agreement, or a claim related to JPMC's services sought losses other than those resulting from JPMC's gross negligence or willful misconduct.  (CC ¶ 18; DE 34-5 at 8 (¶ 11).)  The Combined Terms also specified that New York law would govern the Title Change Agreement.  (DE 34-5 at 10 (¶ 19).)

## IV.   AFTER IGNORING JPMC'S ADVICE TO DIVERSIFY, THE DOELGERS' MLPS DECLINE IN VALUE DURING THE COVID-19 PANDEMIC

For years after opening their MLP Account, the Doelgers insisted on maintaining a high concentration of their investments in MLPs, despite JPMC's suggestion that they diversify.  (CC ¶¶ 1, 9-10, 12-13.)  However, when their energy-concentrated MLPs declined in value in the wake of the coronavirus pandemic in March 2020, the Doelgers sold their MLP holdings.  (*Id.* ¶ 19.)

## V.   RATHER THAN TAKING RESPONSIBILITY FOR THEIR INVESTMENT DECISIONS, THE DOELGERS AND MR. SERRITELLA DEMAND THAT JPMC RECOUP THEIR LOSSES

From the beginning, the Doelgers confirmed they understood (and were willing to accept) the risks of their chosen investment strategy.  (CC ¶ 14; DE 1-4 at 3.)  Yet when their strategy led to losses in March 2020, the Doelgers—with the help of their son-in-law, Mr. Serritella—decided

---

[2] James Baker, a JPMC investment specialist assigned to the Doelgers' account, understood that Mrs. Doelger requested this so that she could assist her daughter and son-in-law, Hee-Jean Kim and James Serritella, in attaining a home loan, as the move provided Mrs. Doelger with sufficient assets to act as a loan guarantor.  (DE 36 ¶ 3.)

to malign their investment specialist, Mr. Baker, and others at JPMC to try to avoid the consequences of their investment decisions.  (*Id.* ¶¶ 2, 20.)  Thus, in February 2021, Mr. Serritella served a demand letter on JPMC.  (DE 1 ¶ 315.)  JPMC responded with a letter that explained, in detail and with exhibits, the flaws in their purported claims.  (DE 37-1.)  The letter also reminded the Doelgers of their obligations and representations in the Doelger Agreements, and notified them that JPMC intended to enforce the Doelgers' indemnity obligations.  (*See id.* at 2-5, 13-15.)

## VI.    THE DOELGERS FILE THE COMPLAINT AND JPMC FILES ITS ANSWER AND COUNTERCLAIMS

### A.    The Doelgers Are In Breach Of The Doelger Agreements And Their Indemnification Obligations Have Been Triggered

As outlined in the Counterclaims, and as reflected in the Complaint filed on June 23, 2021 (CC ¶ 20), the Doelgers have breached the Doelger Agreements in several ways, and their indemnification obligations have been triggered.

#### 1.    Breach Of The Doelger Agreements

- *First,* the Doelgers have breached Mr. Doelger's agreement in the September 2015 Letter that he was "making the [MLP] investment with a full understanding of all of the terms, conditions and risks and are willing to assume those terms, conditions and risks." (CC ¶ 23.) The September 2015 Letter was specifically designed to verify the Doelgers' investment wishes and to ensure that the Doelgers were willing to take on the associated risks.  (CC ¶¶ 23, 29.)  The Doelgers' refusal to accept these risks now breaches their agreement to do so.

- *Second,* the Doelgers' assertion of claims for, *inter alia*, negligence against JPMC expressly conflicts with their agreement in the Advisory Agreements that JPMC's liability would be limited to claims based on gross negligence or willful misconduct.  (CC ¶¶ 24, 34; DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)

- *Finally,* the Doelgers made other representations in the Doelger Agreements that they certified as accurate, including with respect to their financial resources and financial sophistication.  (*See e.g.*, DE 1-4 at 2-3; CC ¶ 25.)  The Complaint directly contradicts a number of these representations.  (*See id.*)  To be clear, JPMC maintains that these representations were accurate.  But if Plaintiffs demonstrates that any of these representations were false, then the Doelgers breached the Doelger Agreements when they made those representations.  (*See id.* ¶¶ 25, 29, 34.)

7

2.      Indemnification Obligations

Separately, the Doelgers' indemnification obligations have been triggered.

In the September 2015 Letter, Mr. Doelger agreed to indemnify JPMC if his "confirmations, statements or agreements" in the letter "are incomplete or incorrect in any respect."  (CC ¶¶ 37-39; DE 1-4 at 3.)  This indemnification included "expenses (including legal fees and expenses and costs of investigation) . . . as such expenses are incurred."  (DE 1-4 at 3.)  As Mr. Doelger has not been willing to accept the risks of his investment decisions as agreed, and to the extent his other "confirmations, statements or agreements" are "incomplete or incorrect," Mr. Doelgers' indemnification obligation has been triggered.  (CC ¶¶ 37-39; DE 1-4 at 3.)

The indemnification clauses in the Advisory Agreements have also been triggered.  (CC ¶¶ 40-42; DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)  For one, and as outlined above (Fact § VI.A.1; CC ¶¶ 24, 25, 34, 41), the Doelgers "breach[ed] the Agreement" and thus triggered the indemnification clauses.  (DE 34-4 at 8 (¶ 11(ii)); DE 34-5 at 8 (¶ 11(ii)); CC ¶¶ 40-42.)  The clauses also apply to the extent the Doelgers' claims do not result from JPMC's gross negligence or willful misconduct, because the Doelgers have brought suit against JPMC "in rendering services" under the agreements.  (DE 34-4 at 8 (¶ 11(i)); DE 34-5 at 8 (¶ 11(i)); CC ¶ 40.)

**B.      JPMC Files Its Counterclaims To Preserve Its Rights**

On October 1, 2021, JPMC filed its Answer, Affirmative Defenses and Counterclaims. (DE 25.)  As reflected above, the Counterclaims arise from the same subject matter addressed by the Complaint.  (*See* DE 1, 25; Fed. R. Civ. P. 13(a)(1)(A).)  Accordingly, JPMC asserted its Counterclaims to protect its rights and to preserve its claims under the Doelger Agreements.

**ARGUMENT**

**I.      THE DOELGERS' SPECIAL MOTION TO DISMISS SHOULD BE DENIED**

JPMC submitted its Counterclaims to protect rights, including indemnification rights, that

the Doelgers granted JPMC in contracts entered into long before this litigation was filed. According to the Doelgers, however, the Massachusetts anti-SLAPP statute prohibits JPMC from ever enforcing its contractual rights because they are necessarily being raised through compulsory Counterclaims filed in response to the Doelgers' Complaint.  (*See* Mot. at 6.)  The Doelgers are wrong: the anti-SLAPP statute was never intended to prevent parties from acting upon breaches of contract representations or indemnification clauses.  Rather, this case presents the polar opposite of the anti-SLAPP statute's typical purpose of protecting "individual citizens of modest means" "for speaking publicly" on matters of public concern.  *Blanchard II*, 483 Mass. at 206.

To succeed on an anti-SLAPP motion, the moving party must "establish[] by a preponderance of the evidence that the putative SLAPP suit . . . was solely based on [the moving party's] own petitioning activities."  *Id.* at 203 (internal quotations omitted).  If the moving party does so, then the non-moving party can "demonstrate that the anti-SLAPP statute does not require dismissal" in one of two ways: (i) establishing that the moving party's "exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law" and that "the moving party's . . . acts caused actual injury to" the non-moving party; or (ii) demonstrating "(a) that its suit was colorable; and (b) that the suit was not brought primarily to chill the special movant's . . . legitimate exercise of its right to petition, *i.e.*, that it was not retaliatory."  *Id.* at 204 (internal quotations omitted); *see also Blanchard v. Steward Carney Hosp., Inc.*, 477 Mass. 141, 159 (2017) ("*Blanchard I*") (establishing this standard).

The Doelgers' Motion fails because they cannot meet their threshold burden of showing JPMC's Counterclaims are solely based on the Doelgers' petitioning activities.  Moreover, even if the Doelgers met this burden (which they did not), their Motion still fails because: (1) JPMC's Counterclaims were not retaliatory; and (2) the Doelgers' petitioning activity was devoid of any

factual or legal basis.  For all these reasons, the Doelgers' anti-SLAPP Motion must be denied.

**A.**   **The Doelgers Have Not Met Their Burden Of Establishing That JPMC's Counterclaims Are Based *Solely* On Their Petitioning Activity**

The Doelgers cannot satisfy their threshold burden of showing that JPMC's Counterclaims were "solely based on [the Doelgers'] own petitioning activities." *Blanchard II*, 483 Mass. at 203. Rather, JPMC's Counterclaims are grounded in its legitimate contractual rights related to party representations, limitations of liability, and indemnity—rights that arise from contractual provisions entered into years before Plaintiffs ever filed their Complaint.

While the Motion correctly notes that the lawsuit constitutes "petitioning activity," it ignores the holding in *Duracraft*—a pivotal case and one on which it relies.  (Mot. at 6.)  In *Duracraft*, the plaintiff sued the defendant for breaching a non-disclosure agreement by giving certain deposition testimony in a different case.  *See Duracraft*, 427 Mass. at 158.  Refusing to dismiss under the anti-SLAPP statute, the court held that the plaintiff's claim was not solely based on the defendant's petitioning activity, but rather was based on the defendant's breach of the non-disclosure contract.  *See id.* at 169.   The court explained that "[m]any preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning"—for example, "releas[ing] legal claims against an adversary that otherwise properly could be prosecuted by petitioning the court." *Id.* at 165-66.  The breach of the non-disclosure agreement "constitute[d] a substantial basis other than [the defendant's] petitioning activity to support [the plaintiff's] claims."  *Id.* at 168.

Recently, *Duracraft*'s holding was applied in *Alantra LLC v. Apex Indus. Techs. LLC*, 2020 WL 6263596 (D. Mass. Oct. 23, 2020).  In *Alantra*, an employer counterclaimed for breach of a non-disclosure agreement because its employee attached confidential information to his complaint. *See id.* at *1.  The court held the counterclaims were "not based on [the employee's] petitioning

activities alone; rather, they have a substantial basis in [the employee's] alleged breach of a contractual duty not to disclose confidential information." *Id.* at *4. Thus, "[t]he fact that [the employee] allegedly committed those breaches while performing a petitioning activity does not compel the conclusion that the counterclaims are based on that petitioning activity alone." *Id.*

*Duracraft's* and *Alantra's* holdings compel denial of the Motion. JPMC's Counterclaims are not based solely on the Doelgers' act of petitioning this Court, but rather are grounded in the Doelgers' indemnification obligations and contractual breaches under the Doelger Agreements. Like the movants in *Duracraft* and *Alantra*, the Doelgers entered into contracts that limited their rights, including petitioning rights (*e.g.*, by barring claims other than for gross negligence or willful misconduct, or requiring indemnification for costs related to untrue representations). (*See supra* at 3-6.) That the Doelgers raised their contractually barred negligence claims "while performing a petitioning activity does not compel the conclusion that the counterclaims are based on that petitioning activity alone." *Alantra*, 2020 WL 6263596, at *4. And the contractual representations the Doelgers breached were made long ago and entirely outside the context of this suit. (*See supra* at 3-5.) Because Plaintiffs cannot show that JPMC's Counterclaims are based solely on their petitioning activity, the anti-SLAPP Motion must be denied.

**B.      JPMC's Counterclaims Are Colorable And Not Retaliatory**

Even if the Doelgers had met their threshold burden, which they have not, their anti-SLAPP Motion still fails because JPMC's Counterclaims are colorable and not retaliatory. *See Blanchard II*, 483 Mass. at 204. Notably, Plaintiffs' Motion fails entirely to address this "second path" through which a non-moving party can defeat an anti-SLAPP motion. (Mot. at 7.)

JPMC brought its compulsory Counterclaims not to burden the Doelgers' petition rights, but to "seek redress for harm caused by the [Doelgers'] . . . conduct." *Blanchard II*, 483 Mass. at 206. JPMC did so only to the extent necessary to protect these contractual rights it previously

negotiated with the Doelgers (CC ¶¶ 13-18), and to ensure it can avoid the damage for which it is indemnified.   Importantly, JPMC is not seeking indemnity for liability resulting from JPMC's gross negligence or willful misconduct (though there was none), and therefore there is no basis for claiming retaliation against "petitioning activity" concerning such liability.   *See Aldana v. Worcester Dig. Mktg. LLC*, 2020 WL 5993103, at *6 (Mass. Super. Aug. 12, 2020) (claim not retaliatory where, *inter alia*, it was not a "classic" SLAPP suit involving a person of modest means and there was "no indication defendants will cease petitioning"); *Branch v. Turtleboy Dig. Mktg.*, 2020 Mass. Super. LEXIS 639, at *14-15 (Dec. 4, 2020) (no retaliatory motive where "there is no assertion that the defendants will cease petitioning").   And while JPMC counterclaimed at a "close proximity in time" to the Complaint, JPMC had to bring its claims (which arise out of the same transaction or occurrence) now or risk losing them.   *See Kagan Dev. KDC Corp.*, 2018 WL 3209212, at *2 (defendant "was obligated to defend herself . . . by asserting her legitimate, compulsory counterclaims").   Had JPMC waited to assert these claims, Plaintiffs undoubtedly would have argued that JPMC had waived them.   *See, e.g.*, *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 140 (D. Mass. 2002) (barring counterclaims not raised in responsive pleading).

In addition, the facts alleged by JPMC plainly are sufficient to show a "colorable" claim. *See Blanchard II*, 483 Mass. at 207-08 (a colorable claim turns on whether it "offers some reasonable possibility of a decision in the party's favor").   Colorable is a "lighter, less technical burden of presenting a claim . . . at a stage in the litigation when discovery typically has not yet occurred." *Id.* at 208.   As JPMC explains below when addressing Plaintiff's arguments under Rule 12(b)(6) (*see infra* at 14), the Counterclaims are plainly colorable, as demonstrated by the allegations themselves and the underlying documents, including the Doelger Agreements.

## C.    The Doelgers' Complaint Lacks Any Objectively Reasonable Basis

The Doelgers are wealthy investors who, against JPMC's explicit and documented

recommendations, made concentrated investments in energy-sector MLPs that lost value during a market downturn. (CC ¶¶ 1-2.) Their frivolous attempt to make JPMC their insurer for their investment losses is "devoid of any reasonable factual support or any arguable basis in law" and must be rejected. *Blanchard II*, 483 Mass. at 204

The core of the Doelgers' petitioning activity, *i.e.*, their Complaint, is the allegation that JPMC "willfully, recklessly and imprudently thrust the Doelgers' liquid assets under their care into undiversified and highly risky investments." (DE 1 ¶ 1; *see also, e.g.*, Mot. at 4-5.) In short, Plaintiffs rest on the allegation that JPMC failed to diversify the Doelgers' investments.

But as the September 2015 Letter shows, JPMC recommended exactly this kind of diversification—a recommendation the Doelgers rejected. (CC ¶ 1, 12-14.[3]) Because the entire predicate of the Complaint is demonstrably false, Plaintiffs' Motion lacks any reasonable basis in law or fact and must be denied. *See Van Liew v. Stansfield*, 474 Mass. 31, 40 (2016) (affirming denial of special motion where petitioning activity failed to meet requirements for relief).

## II.   DOELGERS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) SHOULD BE DENIED

When "confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the counterclaim plaintiff." *Metro. Prop. & Cas. Ins. Co. v. Bos. Reg'l Physical Therapy, Inc.*, 538 F. Supp. 2d 338, 341 (D. Mass. 2008). Dismissal "is only appropriate if the counterclaim . . . fails to allege a plausible entitlement to relief." *Id.* Counterclaim plaintiffs "only are obliged to set forth . . . factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Id.* Here, JPMC breach-of-contract and indemnity allegations are more than sufficient to state a claim, and Plaintiffs' Motion to dismiss under Rule 12(b)(6) should be denied.

---

[3] JPMC also continued to suggest diversification and paying down debt to the Doelgers over the course of their relationship, though the Doelgers generally refused these suggestions. (*See, e.g.*, DE 36-3, 36-4, 36-10.)

### A.      New York Law Governs JPMC's Counterclaims

Pursuant to the Doelger Agreements' choice-of-law clauses, New York law governs JPMC's Counterclaims.  (*See* DE 34-4 at 9 (¶ 18); DE 34-5 at 10 (¶ 19).)  In fact, the Doelgers effectively concede that the choice of law provisions in the Agreements "appl[y] to claims concerning breach of the agreement or disputes concerning interpretation of the agreement" (*see* Mot. at 9)—the exact the nature of the Counterclaims JPMC is bringing here.[4]

### B.      JPMC Has Stated A Colorable Claim For Breach Of Contract As To The 2015 Advisory Agreement And The Title Change Agreement (Count II)

Under New York law,[5] "there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017).  Plaintiffs argue that JPMC has not sufficiently pled the first and third elements with respect to the breach-of-contract claim in Count II.[6]  Both arguments fail.

> 1.      JPMC Properly Alleged That The Doelgers Breached The 2015 Advisory Agreement And The Title Change Agreement

Contrary to the Doelgers' assertion that JPMC cannot identify a breached provision in the Advisory Agreements, (*see* Mot. at 12), JPMC specifically alleges that (a) the Doelgers "agreed to only assert liability against JPMC in the event of JPMC's gross negligence or willful misconduct" in those agreements (*see* CC ¶¶ 16, 18); and (b) the Doelgers breached these agreements by "assert[ing] claims against JPMC for, *inter alia*, negligence."  (*Id.* ¶ 24; *see also id.* ¶ 34; DE 34-

---

[4] The Doelgers rely on *Goldsmith v. Marsh USA, Inc.* to suggest New York law does not apply (*see* Mot. at 9), but there the court enforced the choice-of-law provision as to the contract claims.  604 B.R. 600, 617 (Bankr. D. Mass. 2019).  Further, the Doelgers' reliance on Massachusetts' most significant relationship test is misplaced because that test does not apply "where, as here, there is a choice-of-law provision."  *Levesque v. Schroder Inv. Mgmt. N. Am., Inc.*, 368 F. Supp. 3d 302, 310 (D. Mass. 2019); (*see* Mot. at 10-11).

[5] JPMC agrees that New York and Massachusetts law is substantially the same for a breach of contract claim.

[6] Plaintiffs have waived any argument that targets the second and fourth elements.  *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived.").  In any event, JPMC has expressly pled both that it performed its obligations under the Advisory Agreements (*see* CC ¶¶ 17-18, 33), and that it suffered damages (CC ¶¶ 2, 25, 35).

4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)   As to the Doelgers' representations in these agreements, including as to their "finances and other personal details" (CC ¶ 16; *see also id.* ¶ 18; DE 1-2 at page 15 ("$100,000,000" net worth)), the Counterclaims specifically allege that the Doelgers now indicate that those original representations were not accurate.  (CC ¶ 25.)  While JPMC does not concede this, it does adequately allege that such a situation, if true, would amount to breach of contract.  (*Id.* ¶¶ 25, 34; *see generally supra* at 7.)

Thus, JPMC's allegations regarding breach of the Advisory Agreements were sufficiently pled.  *See E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 307 F. Supp. 3d 52, 59 (E.D.N.Y. 2018) (allegation that "Defendant failed to provide goods and materials that were conforming, acceptable, and in accordance with the specifications contained in the" contract was sufficient to withstand a motion to dismiss (internal quotations omitted)).[7]

### 2.    The Advisory Agreements Are Valid And Binding

JPMC also adequately alleged that the Advisory Agreements are valid and binding.  (*See* CC ¶¶ 16-18, 32.)  This includes the General Terms and Combined Terms, which were agreed to and incorporated into the Advisory Agreements.  (*See* DE 1-2 at 6 (Agreement § (ii)) & 10 (§ 8); DE 1-3 at 4 (Agreement § (ii)) & 13 (§ 8)).)  Moreover, the Doelgers acknowledge they "received and reviewed" those documents.  (DE 1-2 at 6; DE 1-3 at 6.[8])

---

[7] The Doelgers also contend that the Counterclaims are "conclusory" (Mot. at 11-12), but in the cases they cite, claims were dismissed not for being conclusory, but because there was no contractual language supporting the claims—a situation that does not apply to JPMC's claims under the Doelger Agreements.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189-90 (S.D.N.Y. 2011) (dismissing claims for failing to "monitor the performance of the Servicer" and "safeguard the assets of the Securitizations" because the contract "does not require . . . any generalized monitoring or safeguarding duties"); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001) (dismissing claim as not supported by the contract language).

[8] The Doelgers further state in their Motion that they "reserve their rights to challenge the enforceability of the Terms and Conditions" under "the Advisers Act [as] unenforceable waivers of JP Morgan's fiduciary duties."  (Mot. at 5.) To the extent that the Doelgers *do* intend to argue that the Doelger Agreements violate the Investment Advisors Act of 1940, JPMC reserves the right to challenge that notion, including because: (a) the Doelger Agreements do not purport to waive the Doelgers' non-waivable causes of action; and (b) the argument is especially unpersuasive as to Mr. Doelger, an institutional client with financial sophistication and a number of advisors with financial expertise.

The Doelgers also assert that JPMC's claims "amount to an argument that JP Morgan is immune from suit" (Mot. at 12), but this is wrong both factually and legally.  JPMC has never claimed that it is immune from *any* lawsuit; rather, per the Doelgers' express agreement, JPMC asserts its liability is *limited* to acts of gross negligence or willful misconduct.  (*See id.* ¶¶ 16, 18.) Further, New York courts routinely uphold such contractual provisions.[9]  *See e.g.*, *Charter Oak Fire Ins. Co. v. Trio Realty Co.*, 2002 WL 123506, at *4 (S.D.N.Y. Jan. 31, 2002) ("waiver clauses in commercial contracts are enforceable to limit recovery for claims based on ordinary negligence, they will not preclude recovery . . . where the losses are a result of gross negligence."); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 256 (S.D.N.Y. 2001) (same).

## C.    JPMC Has Stated A Colorable Claim For Breach Of Contract As To The September 2015 Letter (Count I)

As with the other Doelger Agreements, JPMC has adequately pled that the September 2015 Letter is a valid agreement that Plaintiffs breached, notwithstanding their arguments otherwise.[10]

### 1.    JPMC Properly Alleged The Elements Of A Breach Of Contract Claim

Here again, Plaintiffs are wrong to suggest that JPMC failed to plead a breach of the September 2015 Letter.  (*See* Mot. at 13; *see generally supra* at 7.)  The Counterclaims explain that Mr. Doelger breached his agreement to assume the risks of his MLP investment decision.  (CC ¶¶ 23, 29; *see also id.* ¶ 21.)  In addition, Plaintiffs now claim that Mr. Doelger made a number of false representations in the September 2015 Letter, including regarding his financial sophistication and the Doelgers' personal finances (CC ¶¶ 14, 21(a), 25); while JPMC disputes these claims, the Counterclaims allege that, to the extent those representations were false, the Doelgers breached

---

[9] Massachusetts law is equivalent.  *See Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) ("A party may, by agreement, allocate risk and exempt itself from liability . . . as a result of its own negligence.").

[10] While Plaintiffs have waived any challenge to these breach-of-contract elements, JPMC also sufficiently alleged that it performed under the September 2015 Letter (CC ¶ 28) and that it suffered damages (CC ¶¶ 2, 25, 30).

the September 2015 Letter.  (CC ¶¶ 25, 34.)

> ### 2.   The September 2015 Letter Was A Valid And Binding Contract

JPMC has adequately alleged that the September 2015 Letter is "a valid and binding agreement."[11]  (CC ¶ 27.)  To form a valid contract under New York law "there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  *Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*, 839 F. Supp. 2d 680, 687 (S.D.N.Y. 2012).[12]  The Doelgers assert that the September 2015 Letter is not supported by consideration.  (*See* Mot. at 13-15.)  This argument fails, however, because JPMC did allege the consideration it provided for the September 2015 Letter: its agreement to permit the Doelgers' investment in the MLP Account.[13]  (*See* CC ¶¶ 13, 17); *Citibank, N.A. v. Franco*, No. 11 CIV. 2925 RMB, 2011 WL 6961404, at *5 (S.D.N.Y. Dec. 29, 2011) (recognizing account opening as consideration in binding agreement).

The Doelgers also argue (incorrectly) that the 2015 Advisory Agreement entirely subsumed the subject matter of the September 2015 Letter, thus preventing it from having consideration. (*See* Mot. at 14-15.)  Even if this were true, the argument still fails because, in that case, the September 2015 Letter would be a modification of the 2015 Advisory Agreement, and as such "is not rendered invalid because of the absence of consideration."  *GG Managers, Inc. v. Fidata Tr. Co. New York*, 215 A.D.2d 241, 626 N.Y.S.2d 488 (1995) (upholding indemnification follow-on agreement between parties that was not supported by consideration independent of the original

---

[11] In their Motion, the Doelgers argue that the September 2015 Letter cannot be enforced against Mrs. Doelger because she did not sign it.  (*See* Mot. at 13.)  As an initial matter, that agreement was sent to both Mr. and Mrs. Doelger prior to execution, at an email address that they shared.  (*See* DE 36-1.)  In any event, JPMC notes that the Complaint does not distinguish between the Doelgers when asserting claims, even though their Motion asserts that "JP Morgan did not become Mrs. Doelger's investment advisor until 2019."  (*See* Mot. at 13.)  To the extent Plaintiffs assert that Mrs. Doelger has claims with respect to the MLP Account prior to 2019, JPMC reserves the right to argue any such claims are subject to the agreements governing the MLP Account during that time, including the September 2015 Letter.
[12] Massachusetts law on contract validity is similar.  *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018).
[13] The issue of adequate consideration, moreover, "is generally a question of fact" that "should not be decided on [a] motion to dismiss."  *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 438, 630 N.Y.S.2d 18 (1995).

contract).  New York General Obligations Law § 5-1103 clearly states that such an agreement "shall not be invalid because of the absence of consideration," provided that it is "in writing and signed by the party against whom it is sought to enforce," as it is here.  *See, e.g.*, *In re Toscano*, 799 F. Supp. 2d 230, 248 (E.D.N.Y. 2011) (upholding modification unsupported by consideration); *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 660 (S.D.N.Y. 2008) (same).

### D.   JPMC Stated A Colorable Claim For Indemnity Under The Doelger Agreements (Count III)

JPMC's indemnity rights under all the Doelger Agreements are triggered by the Doelgers' breaches and their choice to seek recovery for acts beyond gross negligence and willful misconduct.

### 1.   The Indemnity Provisions Of The Doelger Agreements Were Triggered

First, the indemnity provisions of the Advisory Agreements apply to "any claim, loss, liability, or expense" incurred by JPMC, *inter alia*, "(i) in rendering services hereunder; [or] (ii) if [the Doelgers] breach the Agreement," except for losses based on JPMC's gross negligence and willful misconduct.  (DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)  As discussed *supra* at 7-8, the Doelgers have breached the Advisory Agreements, and they have sued JPMC for claims other than for gross negligence or willful misconduct.[14]

Second, the September 2015 Letter indemnity provision applies to JPMC losses "in the event that any of the confirmations, statements or agreements made by you as reflected in this letter are incomplete or incorrect in any respect."  (DE 1-4 at 3.)  The Doelgers breached the September 2015 Letter representation that they were "willing to assume those terms, conditions and risks" of the MLP investments.  (*Id.*)  Further, to the extent that the Doelgers prove their representations regarding their net worth or Mr. Doelger's financial sophistication were false

---

[14] These indemnity obligations also are triggered because Plaintiffs' claims clearly arise from JPMC's "rendering services" under the Advisory Agreements.  (DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)  To the extent this indemnity basis is not sufficiently pled, which JPMC disputes, JPMC requests leave to amend to make this point more clearly.

(which, to be clear, JPMC disputes), those representations likewise would be "incomplete or incorrect" and thus would trigger the September 2015 Letter's indemnification clause. (*Id.*)

        2.   <u>The Parties Intended The Indemnity Clauses To Apply Under These</u>
<u>Circumstances</u>

Under New York law, courts should "infer a party's intention to provide counsel fees as damages for a breach of contract" where "the intention to do so is unmistakably clear from the language of the contract." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005). For this purpose, courts consider the "all-encompassing nature of the indemnity provided, the clear expressions of intent to reach to the maximum lawful extent of liability, and the express exception of certain categories of litigation between the parties, [which] compel the conclusion that the parties unmistakably intended an indemnity for other forms of litigation between them." *Happy Kids, Inc. v. Glasgow*, 2002 WL 72937, at *4 (S.D.N.Y. Jan. 17, 2002). Moreover, indemnity should be enforced between the parties where it would be "difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify" if not for suits between the parties. *Breed, Abbott & Morgan v. Hulko*, 74 N.Y.2d 686, 687 (1989). And, where one indemnity provision is specifically limited to third parties and a second provision is not, this indicates "the parties intended for the second provision to apply to actions . . . including actions between the parties." *Mid-Hudson*, 418 F.3d at 178-79. Here, the indemnity provisions of all three Doelger Agreements clearly reflect the parties' intent that they apply to inter-party disputes.

First, the indemnity provision in the Advisory Agreements expressly lists liability to third parties as a separate basis for indemnity: "(iii) if a third party brings a claim, suit or proceeding against a Morgan Affiliate because it provided products and services to you." (DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).) This indicates that the other bases for indemnity included in the

section—*i.e.*, "(i) in rendering services hereunder," and "(ii) if [the Doelgers] breach the Agreement"—were meant to apply to inter-party suits.  *See Mid-Hudson*, 418 F.3d at 178–79.

Second, indemnification under clauses (i) and (ii) above would be meaningless if they did not apply to claims from the Doelgers.  (DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11).)  It would be "difficult, if not impossible" to ascertain how JPMC would face third-party liability from rendering services to the Doelgers, or through their breach of the Advisory Agreements.  *See Breed, Abbott*, 74 N.Y.2d at 687.  Similarly, it is unclear how JPMC could face third-party liability from the Doelgers' "incomplete or incorrect" representations in the September 2015 Letter.  (DE 1-4 at 3.)

Third, the "all-encompassing nature of the indemnity provided" and "clear expressions of intent to reach to the maximum lawful extent of liability" in the Doelger Agreements—particularly the September 2015 Letter—indicate the parties' intent to indemnify inter-party disputes.  *Happy Kids, Inc.*, 2002 WL 72937, at *4; (*see* DE 1-4 at 3 ("[t]o the fullest extent permitted by applicable law"; "from . . . any and all liabilities"; "of any kind or nature whatsoever")).

And fourth, the Advisory Agreements contain the "express exception of certain categories of litigation between the parties," *i.e.*, claims arising out of gross negligence or willful misconduct.  *Happy Kids, Inc.*, 2002 WL 72937, at *4; DE 34-4 at 8 (¶ 11); DE 34-5 at 8 (¶ 11)).

For these reasons, the indemnification provisions at issue plainly apply to this dispute.[15]

## CONCLUSION

For the foregoing reasons, the Doelgers' Motion should be denied.

---

[15] The Doelgers' arguments to the contrary are not persuasive.  (*See* Mot. at 18.)  First, they suggest that JPMC's reading would allow JPMC to seek indemnity for claims unrelated to the Advisory Agreements—but this seems nonsensical as all the provisions reference the Advisory Agreements, JPMC's provision of contracted-for services or the clients' breach of their agreements.  (*See id.*)  Moreover, the Doelgers do not explain how their proposed solution of reading out inter-party disputes fixes this supposed problem.  Second, the Doelgers suggest the "only reading . . . that actually makes sense" is for the court to insert an "and" that is not currently there between clauses (i)/(ii) and (iii)/(iv), essentially requiring the existence of two clausal conditions rather than one to trigger indemnification.  (*Id.*)  This is not a contractual "reading"; rather, it is an outright alteration of the contract's text and an implicit (and inappropriate) request for contract reformation.

Dated:   Boston, Massachusetts
          December 1, 2021

Respectfully submitted,

/s/ Joan A. Lukey
**CHOATE, HALL & STEWART LLP**
Joan A. Lukey, BBO No. 307340
Two International Place
Boston, Massachusetts 02110
Tel: 617.248.5000

**DONTZIN NAGY & FLEISSIG LLP**
Tibor L. Nagy, Jr.*
Tracy O. Appleton*
William H. LaGrange*
980 Madison Avenue
New York, New York 10075
Tel: 212.717.2900

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

**\***Admitted *pro hac vice*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Joan A. Lukey, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent to those indicated as non-registered participants on December 1, 2021.

/s/ Joan A. Lukey
Joan A. Lukey, BBO No. 307340