UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER and YOON DOELGER, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A. and CHICKASAW CAPITAL MANAGEMENT, LLC, <br><br> Defendants. | Case No. 21-CV-11042-AK |

## MEMORANDUM AND ORDER ON
## PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

**A. KELLEY, D.J.**

This is a diversity action concerning the fiduciary relationship between Plaintiffs, who are individual investors, and Defendants, who are financial services companies. At issue is Plaintiffs' motion to dismiss the three counterclaims they face. For the reasons that follow, the motion will be **DENIED**.

### I. FACTUAL & PROCEDURAL BACKGROUND

The Court summarized the relevant background of these proceedings in its March 21, 2022 memorandum and order. [Dkt. 58]. At issue on this motion are the three counterclaims Defendant JPMorgan Chase Bank, N.A. ("JPMC") raised in its Answer and Counterclaim on October 1, 2021. [Dkt. 25, ("Counterclaim Complaint")]. Counterclaim One is a common-law breach of contract action concerning a letter (the "September Letter") that JPMC sent to Plaintiff

1

Peter Doelger[1] in September 2015, in which it purported to partially disclaim liability in connection with its role as Plaintiffs' financial advisor and requested that Mr. Doelger acknowledge that he had entered into his advisory relationship with JPMC as a knowledgeable actor. [Dkt. 1-4, ("September Letter")]. JPMC asserts that the September Letter, which Mr. Doelger signed and returned to JPMC, is an actionable contract, and Plaintiffs' filing of tort claims against JPMC constitutes a breach of that contract.

Counterclaim Two is a second common-law breach of contract action concerning the overarching Advisory Agreement and Title Change Agreement between the parties. JPMC asserts that its form terms and conditions (the "Terms and Conditions") associated with these agreements prohibited Plaintiffs from asserting tort claims against JPMC. Accordingly, it asserts that Plaintiffs' filing of this action also constitutes a breach of the parties' overarching contract.

Counterclaim Three is a contractual indemnity claim. JPMC alleges that both the September Letter and the Terms and Conditions contain actionable indemnity provisions that render Plaintiffs liable for any attorney fees and costs JPMC incurs as a result of Plaintiffs' breach of contract. Accordingly, JPMC seeks to recover any fees and costs it may expend in its successful prosecution of Counterclaims One and Two.

Plaintiffs timely moved to dismiss all three counterclaims under both Federal Rule of Civil Procedure 12(b)(6) and the Massachusetts anti-SLAPP statute. [Dkt. 32].

## II.   DISCUSSION

### A.   Anti-SLAPP Motion

#### 1.   **Legal Standard**

---

[1] Plaintiff Yoon Doelger was not a party to the September Letter, but is a party to the overarching Advisory Agreement between both Plaintiffs and JPMC.

The Massachusetts anti-SLAPP statute provides an alternate avenue to dismiss "meritless suits" under limited circumstances. See Duracraft Corp. v. Holmes Prods. Corp., 691 N.E.2d 935, 941 (Mass. 1998) (citation omitted). The statute targets "strategic litigation against public participation," which are based on a party's "exercise of its right of petition," including "any written or oral statement made before or submitted to a … judicial body." M.G.L. ch. 231 § 59H. SLAPP suits are most typically "directed at individual citizens of modest means for speaking publicly against development projects," but the anti-SLAPP statute applies equally to actions that arise outside of this most common scenario. See Baker v. Parsons, 750 N.E.2d 953, 958 (Mass. 2001) (citation omitted). Where, as here, a party moves to dismiss under both the anti-SLAPP statute and Rule 12, the Court first addresses the anti-SLAPP motion before considering alternate grounds for dismissal. De Lench v. Archie, 406 F. Supp. 3d 154, 158 (D. Mass. 2019).

To succeed on a special motion to dismiss brought under the anti-SLAPP statute, the moving party must first establish, "by a preponderance of the evidence," that the non-moving party's claims are "solely based on [its] own petitioning activities." Blanchard v. Steward Carney Hosp., Inc. ("Blanchard II"), 130 N.E.3d 1242, 1248 (Mass. 2019) (citation omitted). If the moving party meets this threshold burden, the burden at the second stage shifts to the non-moving party, which may defeat the anti-SLAPP motion by either of two paths. Id. First, the non-moving party may establish "by a preponderance of the evidence" that the moving party's activity (1) "was devoid of any reasonable factual support or any arguable basis in law" (2) and "caused actual injury" to the non-moving party. Id. This path presents a "high bar," which, in effect, requires the non-moving party to prove that the petitioning activity at issue (here, Plaintiffs' Complaint) "was, in essence, a sham." Id. at 1249.

Alternatively, the non-moving party may prevail via the second path, by demonstrating (1) "that its suit was colorable" and (2) "that the suit was not brought primarily to chill the [moving party's] legitimate exercise of its right to petition, i.e., that it was not retaliatory." Id. (citations and internal quotation marks omitted). This is a "totality of the circumstances" inquiry, in which it is "necessary but not sufficient" for the non-moving party to demonstrate that its claims "offer[] some reasonable possibility" of success on the merits. Blanchard v. Steward Carney Hosp., Inc. ("Blanchard I"), 75 N.E.3d 21, 39 (Mass. 2017) (citations omitted); see Blanchard II, 130 N.E.3d at 1249. The Court considers "the course and manner of proceedings, the pleadings filed, and affidavits stating the facts upon which the liability or defense is based," and may consider "the presence of absence of the classic indicia" of an anti-SLAPP suit: i.e., whether the suit is "directed at individual citizens of modest means for speaking publicly against development projects." Blanchard II, 130 N.E.3d at 1250. Further, the Court may consider "whether the lawsuit was commenced close in time to the petitioning activity"; "whether the anti-SLAPP motion was filed promptly"; "the centrality of the challenged claim in the context of the litigation as a whole"; "the relative strength of the nonmoving party's claim"; "evidence that the petitioning activity was chilled"; and "whether the damages requested by the nonmoving party, such as attorney's fees associated with an abuse of process claim, themselves burden the moving party's exercise of the right to petition." Id. at 1250–51.

    2. **Plaintiffs' Initial Burden**

Our analysis of Plaintiffs' anti-SLAPP motion begins with the "threshold inquiry," in which Plaintiffs must establish that each of JPMC's counterclaims is "solely based on [Plaintiffs'] petitioning activities," i.e., their Complaint. See Blanchard II, 130 N.E.3d at 1248. At this stage, JPMC's *motives* behind its counterclaims are "irrelevant"; the focus is solely on

whether the *only* conduct JPMC complains of in its counterclaims is Plaintiffs' own Complaint. Office One, Inc. v. Lopez, 769 N.E.2d 749, 757 (Mass. 2002).

Here, Plaintiffs have clearly satisfied this threshold burden. Counterclaim One alleges that Plaintiffs "breached the [September Letter] by, among other things, filing and maintaining the Complaint." [Counterclaim Complaint at 93]. The Counterclaim Complaint contains no indication as to what the "other things" Counterclaim One alleges may be; rather, each statement in the Counterclaim Complaint that may plausibly give rise to a claim that Plaintiffs breached the September Letter relates directly to Plaintiffs' Complaint. Similarly, Counterclaim Two alleges that Plaintiffs "have breached the Advisory Agreement and Title Change Agreement by, among other things, filing and maintaining their Complaint," and all statements in the Counterclaim Complaint that may plausibly support this claim reference Plaintiffs' Complaint. [Id. at 94]. Finally, Counterclaim Three states that certain allegations in Plaintiffs' Complaint are "causing [JPMC] to incur costs and attorney's fees through the litigation," and alleges that Plaintiffs' Complaint "triggers Mr. Doelger's indemnification obligation[s]." [Id. at 94–95]. Accordingly, Plaintiffs have succeeded in establishing that each of JPMC's three counterclaims is "solely based on [their] own petitioning activities." See Blanchard II, 130 N.E.3d at 1248.

3.  **Colorability Analysis**

The burden thus shifts to JPMC to establish, through either of the two paths delineated in Blanchard II, that its counterclaims are not an unlawful SLAPP suit. JPMC pursues both paths, but raises more compelling arguments on the second path, which requires it to show, by the totality of the circumstances, that its claims are colorable and not retaliatory in purpose.[2]

---

[2] JPMC briefly argues that it prevails on the first path because Plaintiffs' claims are "devoid of any reasonable factual support or any arguable basis in law." Blanchard II, 130 N.E.3d at 1249. This argument is belied by JPMC's earlier decision not to move to dismiss any of these supposedly meritless claims. To the contrary, each

5

The Court's first inquiry on the second path is whether JPMC can establish that its claims are "colorable": that is, "worthy of being presented to and considered by the court." Blanchard II, 130 N.E. 3d at 1251. This is a "lighter" burden, which does not require JPMC to establish that its counterclaims are "sure of success," but merely requires that it distinguish them from the "meritless" suits that the anti-SLAPP statute contemplates. See id. at 1251–52.

Counterclaims One and Two each allege breach of contract. A claim for breach of contract under New York law[3] requires a party to establish: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) nonperformance by the other party; and (4) damages attributable to the breach. Moreno-Godoy v. Kartagener, 7 F.4th 78, 85 (2d Cir. 2021); accord Riccio v. Genworth Fin., 124 N.Y.S.3d 370, 372 (App. Div. 2020).

### a. Counterclaim Two

The Court begins, as the parties did, with Counterclaim Two, the claim for breach of the overarching Advisory Agreement. JPMC alleges that, in the Terms and Conditions associated with the Advisory Agreement, Plaintiffs "agreed to only assert liability against JPMC in the event of JPMC's gross negligence or willful misconduct." [Counterclaim Complaint at 90].

---

claim Plaintiffs pursue is rooted in a recognized cause of action, so JPMC cannot satisfy the "high bar" of proving Plaintiffs' Complaint is "in essence, a sham." Id.

[3] The parties agreed at oral argument that New York law governs the Terms and Conditions (which are at issue in Counterclaims Two and Three) to the extent that the Terms are Conditions are valid and binding (which Plaintiffs contest). However, the parties present competing choice-of-law arguments otherwise. JPMC argues that New York law applies to the September Letter because it is subject to the choice-of-law provision in the Terms and Conditions, which selects New York law. Plaintiffs argue that Massachusetts law applies to the September Letter because the letter is not part of the parties' overarching Advisory Agreement subject to the Terms and Conditions, and Massachusetts is the jurisdiction with the "most significant relationship" to the letter. Plaintiffs likewise argue that Massachusetts law governs the overarching Advisory Agreement if the Terms and Conditions, which contain the choice-of-law provision, are not valid.

Because the parties agree that Massachusetts law and New York law are substantively indistinguishable on the points relevant to this motion, and because the Court's inquiry is limited to whether Defendants have stated "colorable" claims for breach of contract, the Court need not rule on this choice-of-law question at this time. Instead, the Court is satisfied that Defendants have made a "colorable" claim that the Terms and Conditions are operable and that New York law applies to all three counterclaims, and will apply New York law for the purposes of this motion only.

Accordingly, it asserts Plaintiffs breached the Advisory Agreement by filing their Complaint, which contains claims for, *inter alia*, breach of fiduciary duty, simple negligence, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violations of Massachusetts and Florida consumer protection statutes. JPMC alleges that Plaintiffs' breach of this limitation of liability has caused it damages, [Counterclaim Complaint at 94]; it specified at oral argument that these damages include the attorney fees and costs it is accruing by litigating against claims that it alleges Plaintiffs had contractually waived.

Plaintiffs argue that this is a "conclusory allegation," and that JPMC may not initiate suit based on an exculpatory clause that limits its liability to instances of gross negligence or willful misconduct. Rather, Plaintiffs argue, JPMC should have raised this clause as an affirmative defense to any of Plaintiffs' claims it believes fall outside of the stipulated limitations. JPMC cites two cases in support of its position that a clause limiting liability to gross negligence and willful misconduct is enforceable against a party bringing a suit for simple negligence. However, in each of these cases, it appears that the defendant raised the clause as an affirmative defense rather than as a counterclaim, as Plaintiffs argue was JPMC's proper course of action here. See Charter Oak Fire Ins. Co. v. Trio Realty Co., No. 99 Civ. 10827, 2002 WL 123506 at *3 (S.D.N.Y. Jan. 31, 2002) (evaluating waiver clause raised as defense to plaintiff's claim, not as the basis for a counterclaim); Travelers Indem. Co. v. Losco Grp., Inc., 136 F. Supp. 2d 253, 256 (S.D.N.Y. 2001) (evaluating waiver clause raised as grounds for dismissal for failure to state a claim, not as the basis for an independent counterclaim).

Plaintiffs' position is not without merit: JPMC may well have invoked the waiver clause either as an affirmative defense, or in a motion to dismiss any of Plaintiffs' claims that fall outside the ambit of that clause. However, the Court accepts JPMC's representation that it

7

invoked the clause as a counterclaim specifically to preserve its right to rely on the contract in pursuit of attorney fees and costs should it prevail in this litigation. The Court thus declines to find that this claim is "meritless" and not "worthy of being presented to and considered by the court." See Blanchard II, 130 N.E. 3d at 1251–52. Accordingly, Counterclaim Two states a sufficiently colorable claim to survive this stage of the anti-SLAPP analysis.

### b.    Counterclaim One

The above analysis applies with equal force to Counterclaim One, which brings a similar contractual claim for attorney fees and costs JPMC has incurred in litigating against claims it alleges that Plaintiffs have waived. However, Plaintiffs additionally argue that Counterclaim One is not colorable because the instrument it relies on, the September Letter, is not an actionable contract because it was not supported by consideration. See Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co., 839 F. Supp. 2d 680, 687 (S.D.N.Y. 2012) (recognizing "offer, acceptance, consideration, mutual assent and intent to be bound" as requirements for valid contract).

Under New York law, consideration exists "where there is 'either a benefit to the promisor or a detriment to the promisee.'" Genger v. Genger, 76 F. Supp. 3d 488, 498 (S.D.N.Y. 2015) (quoting Hollander v. Lipman, 885 N.Y.S.2d 354, 355 (App. Div. 2009)). A promise to "perform a pre-existing legal obligation" is not consideration. Id. (citation omitted). As consideration, JPMC alleges that it permitted Plaintiffs to invest in an account, contingent on Mr. Doelger's assent to the terms of the letter, which purportedly include the disclaimer of certain rights of recovery against JPMC in the event of financial loss. In other words, JPMC alleges that it offered a benefit to Plaintiffs—permitting access to its investment services—in exchange for a detriment to Plaintiffs, the waiver of their right to sue on certain grounds in the event that the

8

advisory relationship went south. In the alternative, JPMC asks that the Court construe its Counterclaim Complaint as alleging that the September Letter was a mere modification of the overarching contract between the parties, the validity of which is not contested. A written agreement to modify an existing contract does not require independent consideration so long as it is "signed by the party against whom" it is enforced. N.Y. Gen. Oblig.§ 5–1103; GG Managers, Inc. v. Fidata Trust Co. N.Y., 626 N.Y.S.2d 488, 490 (App. Div. 1995).

Plaintiffs argue that JPMC's proffered consideration, permitting Plaintiffs to invest in an account, fails as a matter of law because that consideration had previously been rendered: at the time JPMC sent the September Letter, Plaintiffs allege that they had already invested in the account, and thus had already secured the benefit that JPMC alleges it conferred pursuant to the September Letter. A review of the September Letter does not provide a dispositive answer: the letter refers to Plaintiffs' "proposed investment" and requests that Plaintiffs confirm certain information "prior to investing" in a JPMC account, each of which may plausibly support a claim that Plaintiffs' investment would constitute new and independent consideration. [September Letter]. Further, Plaintiffs do not compellingly rebut JPMC's assertation that the September Letter may be construed as a modification of the prior contract, for which no independent consideration would be required. JPMC has thus plausibly alleged two theories under which the September Letter may be an actionable contract, and accordingly has satisfied its burden that Counterclaim One is "colorable," and "worthy of being presented to and considered by the court." Blanchard II, 130 N.E. 3d at 1251.

    c.  **Counterclaim Three**

Counterclaim Three is a claim for contractual indemnity, brought pursuant to both the September Letter and the Terms and Conditions accompanying the Advisory Agreement. JPMC

alleges that the September Letter provides that Mr. Doelger will "agree to indemnify and hold harmless [JPMC] … from … any and all liabilities … actions, suits or proceedings, costs, expenses, and disbursements (including legal and accounting fees and expenses, costs of investigation, and sums paid in settlement) … which may be imposed on, incurred by, or asserted at any time against [JPMC] in the event that any of the confirmations, statements, or agreements made by [Mr. Doelger] as reflected in this letter are incomplete or incorrect in any respect." [Counterclaim Complaint at 94].  JPMC further alleges that Plaintiffs' Complaint contains statements inconsistent with the representations of financial literacy Mr. Doelger made by signing the September Letter, and that Mr. Doelger's apparent admission in the Complaint that his attestations in the September Letter were incorrect triggers his obligations under the indemnity clause.  [Id.]  Similarly, JPMC alleges that the Terms and Conditions provide that Plaintiffs will indemnify JPMC for its expenses "if [Plaintiffs] breach the Agreement," but excludes Plaintiffs from liability if JPMC's expenses arise from its own "gross negligence or willful misconduct."  [Id.]

      The parties disagree on whether either, or both, of these indemnity clauses require Plaintiffs to indemnify JPMC for fees it accrues in a lawsuit between Plaintiffs and JPMC, and thus could form the basis of a colorable claim for indemnification.  Under New York law, courts "infer a party's intention to provide counsel fees as damages for a breach of contract" where "the intention to do so is unmistakably clear from the language of the contract."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005); see Hooper Assoc. Ltd. v. AGS Comps., Inc., 548 N.E.2d 903, 905 (N.Y. 1989) ("Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's

fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear."). Plaintiffs argue that neither indemnity clause contains "unmistakably clear" language indicating that the parties intended the clause to apply to litigation between them, rather than merely between JPMC and third-party litigants, and compare the language of the clauses to similar form language that other courts have found failed to meet the "unmistakably clear" threshold. JPMC, conversely, argues that the indemnity clause in the Terms and Conditions reflects an "unmistakably clear" understanding that it applies both to actions between these two parties and to third-party actions. Specifically, JPMC identifies that subclause (iii) of this indemnity clause applies where "a third party brings a claim … against [JPMC] because it provided products and services to [Plaintiffs]," while subclause (ii) applies "if [Plaintiffs] breach the agreement." [Counterclaim Complaint at 94]. Accordingly, JPMC argues, to read the indemnity clause to apply only to third-party litigation would be to render subclause (ii) a nullity and subclause (iii) superfluous.

Again, the Court need not determine if JPMC's position is correct at this stage of the litigation, only if it is sufficiently colorable to survive Plaintiffs' anti-SLAPP motion. The presence of subclause (ii), indicating that the indemnity provision applies "if [Plaintiffs] breach the agreement," provides sufficient support for Counterclaim Three to clear this modest hurdle: where the plain language of the document appears, on its face, to contemplate indemnity in the event of Plaintiffs' own breach, JPMC may make a colorable claim that the parties clearly intended the clause to apply to actions between JPMC and Plaintiffs and not merely to actions involving third parties.

    4.    **Retaliation Analysis**

Having satisfied that each of its three counterclaims are colorable, JPMC's final task under the anti-SLAPP standard is to establish that the counterclaims are not retaliatory. This "totality of the circumstances" inquiry requires JPMC to show that, beyond having a reasonable possibility of success on the merits, its counterclaims do not cast the chilling effect anticipated by the anti-SLAPP statute. See Blanchard I, 75 N.E.3d at 39.

Upon full consideration of the record, including the parties' representations at oral argument, the Court is satisfied that JPMC's counterclaims are not retaliatory. This suit does not bear the "classic indicia" of a SLAPP: JPMC's claims are not "directed at individual citizens of modest means for speaking publicly against development projects." Blanchard II, 130 N.E.3d at 1250. Conversely, Plaintiffs—although without the resources of a global bank—are individuals of significant means, and the "petitioning activity" that triggered JPMC's counterclaims is a private suit concerning the investment relationship between these parties and these parties only rather than a public project implicating the interests of a larger class of persons.

Plaintiffs ask the Court to construe JPMC's interpretation of the clauses that form the basis of its counterclaims as a declaration that it is immune from suit, contrary to all public policy. At this stage of the litigation, however, the Court is satisfied with JPMC's more modest explanation of its claims as a preservation of its right to seek attorney fees. Although there is a strong public policy interest in Plaintiffs' claims being fully litigated, that interest is not defeated by permitting JPMC to attach contractual claims for attorney fees to this action, and no broader interest in "public participation," see M.G.L. ch. 231 § 59H, in the judicial process is threatened by the survival of these claims. Further, although JPMC may have avoided this motion by raising its contractual rights as affirmative defenses, as Plaintiffs suggest, its choice to instead do so via counterclaim is a defensible litigation strategy—and as Plaintiffs conceded at oral

argument, in the absence of any statutory scheme, these contractual provisions may provide JPMC's only avenue for recovery of attorney fees and costs at the end of this litigation.

In sum, although JPMC's counterclaims are clearly the result of Plaintiffs' petitioning activity, there is sufficient evidence to conclude that each claim is colorable and not retaliatory. Because JPMC's counterclaims are not a SLAPP suit, Plaintiffs' motion fails on these grounds.

### B.    Rule 12(b)(6) Motion

#### 1.    **Legal Standard**

Plaintiffs also argue that JPMC's counterclaims fail to state a claim under Rule 12(b)(6). To survive a motion to dismiss under this rule, a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

#### 2.    **Application**

Although the Rule 12(b)(6) standard is distinct from the anti-SLAPP statute's "colorability" standard, JPMC's counterclaims survive this inquiry for the reasons described in

detail above. Counterclaims One and Two each allege breach of contract, and JPMC's Counterclaim Complaint plausibly alleges each element of a breach of contract action as to each counterclaim, including the existence of consideration for the September Letter in the form of the opening of an investment account, a breach of contract by Plaintiffs in their filing of a lawsuit following their purported disclaimer of liability, and damages in the amount of the attorney fees and costs incurred in litigating this suit. Counterclaim Three seeks contractual indemnity, and the Counterclaim Complaint plausibly alleges that the parties entered, with "unmistakably clear" intent, into an indemnity provision that applies to actions between the parties "where [Plaintiffs] breach the agreement."

In sum, each of JPMC's three counterclaims may be construed as a claim for the costs and fees it is accruing in this litigation. Although Plaintiffs have previewed potentially meritorious defenses to each of JPMC's arguments through their briefing in support of this motion, the facts alleged in the Counterclaim Complaint, if taken as true, give rise to a "reasonable inference" that Plaintiffs may be liable under the parties' contracts for some or all of JPMC's fees and costs. That inference is sufficient to permit JPMC to proceed with its counterclaims.

As a final matter, Plaintiffs seek to dismiss Yoon Doelger from JPMC's counterclaims related to the September Letter. Because that letter was addressed to, and signed by, Peter Doelger alone, Plaintiffs argue that Ms. Doelger is not a party to this letter and cannot be held liable under any of its terms. In response, JPMC cites the Terms and Conditions, which provide that all owners of an investment account may be held jointly and severally liable for all obligations arising from the advisory relationship, regardless of whether a particular owner personally incurred the obligation. Because Ms. Doelger is a signatory to the Advisory

Agreement and a co-owner of Plaintiffs' investment account, JPMC argues that she is a proper party to each of its claims brought under the umbrella of the parties' contractual relationship. This theory of liability against Ms. Doelger would require JPMC to prove: (1) that the Terms and Conditions, including the joint and several liability provision, are a part of the parties' contract; (2) that the September Letter also became part of the parties' contract; and (3) that the contradictions between Mr. Doelger's representations in the September Letter and in Plaintiffs' Complaint create an obligation to JPMC for which Ms. Doelger may be held liable. Although Plaintiffs contest each of the elements of JPMC's claims against Ms. Doelger, JPMC has adequately pleaded allegations that, if true, would be sufficient to sustain this cause of action. Accordingly, the Court will not dismiss the counterclaims as to Ms. Doelger.

### III.   CONCLUSION

Each of JPMC's three counterclaims is plead sufficiently to survive dismissal under both the Massachusetts anti-SLAPP statute and Rule 12(b)(6). Accordingly, Plaintiffs' motion to dismiss, [Dkt. 32], is **DENIED**.

    **SO ORDERED.**

June 2, 2022                                                                                /s/  Angel Kelley  
                                                                                     ANGEL KELLEY  
                                                                                  U.S. DISTRICT JUDGE