# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YOON DOELGER and PETER DOELGER,<br><br>*Plaintiffs,*<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., and CHICKASAW CAPITAL MANAGEMENT, LLC,<br><br>*Defendants.* | No. 1:21-cv-11042-AK |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
OBJECTIONS TO THE ORDER ON PLAINTIFFS' MOTION
<u>FOR LEAVE TO AMEND THE COMPLAINT</u>**

Plaintiffs Yoon and Peter Doelger ("Yoon" and "Peter"; collectively "Plaintiffs"), by and through their undersigned counsel, submit this reply memorandum of law in further support of their objections to the Order on Plaintiffs' Motion for Leave to Amend the Complaint, (Doc No. 271) (the "Order") to add additional allegations and causes of action against Defendants JP Morgan Chase Bank, N.A. ("JP Morgan Bank") and Chickasaw Capital Management, LLC ("Chickasaw"; together with JP Morgan Bank "Defendants"), and new claims against proposed new defendant J.P. Morgan Securities, LLC ("JP Morgan Securities"; together with JP Morgan Bank "JP Morgan"; JP Morgan collectively with Chickasaw "Prospective Defendants").

## PRELIMINARY STATEMENT

In their opening papers, Plaintiffs set forth how and when they came to learn of the new information underlying the proposed amended complaint ("PAC"), why they could not obtain this information sooner, how the PAC Defendants are not prejudiced by the amendment, and why the Order was wrong in denying leave where it should be freely given.

In their opposition, Defendants do not dispute their repeated and significant discovery violations, including failing to produce nearly half of their total document production for up to 8 months after their court-ordered deadline. Instead, they seek to paint their discovery violations and other bad-faith tactics as delays by Plaintiffs, asserting that Plaintiffs should have brought the PAC apparently before document production even began, or possibly before the Complaint was even filed. They also argue that Plaintiffs somehow had this information already, despite the relevant documents not being produced, and necessary contextual and background information not being available.

Defendants cannot ignore their own violative conduct. Nor can they reasonably argue that Plaintiffs were supposed to have material knowledge of unproduced documents, or that Plaintiffs somehow should be expected to divine all necessary meaning from the bare face of what

1

documents were produced. For Defendants, *Citizen Kane* would have been a very short movie, as once Charles Kane whispered "Rosebud" on his deathbed all required information had been produced and no further investigation was necessary.

More fundamentally, this Court should consider the totality of Defendants' conduct. Thousands of obviously relevant documents were produced months after their deadline, often only after Plaintiffs noted the deficiency or moved to compel. Defendants delayed depositions for key witnesses, held up litigation for half a year by challenging a *pro hac vice* motion, and engaged in countless other instances of gamesmanship that go beyond any reasonable standard of conduct. To date, Defendants have only been rewarded for their behavior. This kind of conduct should not be condoned by a federal court. The Order should be reversed, and leave to file the PAC should be granted.

## ARGUMENT

### I. The Appropriate Standard of Review in this Case is *De Novo*

Where, as here, denial of the motion would be dispositive of claims, *de novo* review is appropriate. Rule 72 "broadly defines nondispositive matters as matters that are 'not dispositive of a party's claim or defense' . . . [t]hus, de novo review may be appropriate where denial of [a party's] motion is 'dispositive' of [the party's claim or defense]." *Monique Sargent v. Nordx*, 2022 U.S. Dist. LEXIS 226506, at *10 (D. Me. Dec. 16, 2022) (citations omitted); *see also Summer Infant (USA), Inc. v. Tomy Int'l, Inc.*, 2020 U.S. Dist. LEXIS 137461, at *2 (D.R.I. Aug. 3, 2020) ("Denial of leave to amend would foreclose litigation of the claim and therefore de novo review is appropriate."); *Emissive Energy Corp. v. NovaTac, Inc.*, 2010 U.S. Dist. LEXIS 88544, at *6 (D.R.I. July 28, 2010); *Quick Fitting, Inc. v. Wai Feng Trading Co.*, 2015 U.S. Dist. LEXIS 132890, at *2 n.1 (D.R.I. March 12, 2015); *Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 31 n.1 (D.R.I. 2000) ("Several courts, including this Court, have held that...a matter not listed [as

dispositive] may nonetheless require de novo review, if its effect is dispositive on a claim or defense of a party."); *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me. 1998) ("[D]e novo review of Defendant's motion to amend her answer to include an affirmative defense...is appropriate because the matter is dispositive of a defense.").

The Order is dispositive as to the new causes of action set forth in the PAC, and Defendants cannot reasonably argue to the contrary. Accordingly, the Order should be reviewed *de novo*.

## II.     Any Delay in this Case was Transparently Caused by Defendants

In their brief in chief and supporting papers, Plaintiffs set forth at length how Defendants repeatedly delayed litigation of this case through numerous discovery violations, baseless motions, and other bad faith conduct. In their opposition, Defendants do not even dispute that they materially violated discovery deadlines, yet still argue that it was Plaintiffs who somehow delayed litigation in this matter. This argument is transparently deficient.

### A. Defendants' Behavior Concerning the *Pro Hac Vice* Motion is Indefensible

First, Defendants delayed litigation for nearly a year by asserting a baseless challenge to the *pro hac vice* motion of Plaintiffs' trial counsel James Serritella ("Serritella"), including representing to this Court that Serritella was a necessary witness and would definitely be called as a witness at trial before literally any discovery had taken place. Defendants' gamesmanship as to whether they would insist on deposing Serritella continued for nearly another year after the *pro hac vice* motion was decided, and did not end until Plaintiffs filed a protective order.

Incredibly – shamelessly – Defendants now assert that it was <u>Plaintiffs</u> who delayed litigation during this ordeal, on the grounds that "Plaintiffs were unwilling to engage in discovery before Mr. Serritella's *pro hac vice* motion was ruled upon." The attendant circumstances are described in detail in the Affidavit of Josh Gardner ("Gardner"; "Gardner Aff.") submitted herewith, but the highlights are as follows: 1) discovery in this matter was initially forestalled not

3

because of anything to do with Serritella's *pro hac* motion, but because no scheduling order was entered due to the reassignment of the case; 2) Gardner nevertheless did attempt to negotiate a scheduling order with Defendants, but Defendants insisted on proceeding before the motion was decided, to which Gardner could not agree given his limited role as local counsel; 3) Gardner offered to proceed with limited document discovery in the absence of a scheduling order, but Defendants would not even agree to let Serritella be copied on correspondence; and 4) once the motion hearing date was set, the issue was mutually regarded as moot. *See* Gardner Aff. ¶¶ 2-11. Defendants opposed a routine *pro hac* motion in bad faith, attempted to steamroll local counsel while it was pending, refused even the most straightforward compromises, and now claim that Plaintiffs were "unwilling to engage in discovery."

**B. Defendants Do Not Even Try to Deny that They Violated Discovery Deadlines**

Next, Defendants egregiously violated discovery deadlines by as much as several months, and Plaintiffs repeatedly had to move to compel production. In their opposition, Defendants do not attempt to deny this, because they cannot.

Defendants dumped thousands of documents, including key policies and manuals, on Plaintiffs at the last minute. Indeed, Defendants admit in their opposition that they produced over 8,000 additional documents roughly a month after its September 2022 deadline, which they attribute to unidentified "technical issues."

However, even this admission does not tell the whole story. First, Defendants made not one but <u>thirteen</u> additional productions between October 7, 2022 and July 1, 2023, totaling over 16,000 documents and over 76,000 pages. *See* Declaration of James Serritella ("Serritella Decl.") at ¶ 12. Indeed, nearly half of Defendants' total document production occurred after (and for some documents up to **8 months** after) their court-ordered deadline for substantial completion.

Second, these documents were only produced after multiple deficiency letters and motions to compel, and in many cases Plaintiffs did not even know of the existence of the unproduced documents (all of which were clearly relevant and included in Plaintiffs' document demands) until learning about them during depositions, and Defendants repeatedly refused to produce documents (again, that clearly fell under the document demands) unless and until Plaintiffs identified them by name.  Any suggestion that these discovery violations were mere "technical issues" is belied by a cursory review of the docket.

Third, many of these late-produced documents are highly significant, and support the new allegations in the PAC.  Some of the pertinent documents produced significantly after the deadline include:  (1) JP Morgan's Written Supervisory Procedures Manual; (2) JPM's Reg 9.6 Account Reviews Manual; (3) JP Morgan's Fiduciary Account Opening Policy; (4) JP Morgan's Fiduciary Account Reviews Policy; (5) JP Morgan's Discretionary Investment Management Account Opening Policy; (6) JP Morgan's Suitability and Appropriateness Policy; (7) JP Morgan's Fiduciary Activities Policy - 12 CFR 9; (8) JP Morgan's Fiduciary Activities Standards - 12 CFR 9 and 12 CFR 12; (9) JP Morgan's Discretionary Investment Management Manual; (11) JP Morgan's Discretionary Investment Management Policies; and (12) JP Morgan's Financial Exploitation and Abuse of Elder/Vulnerable Person Policy, among many others.  *See* Ex. R. Moreover, these late productions included multiple documents specific to Plaintiffs' accounts, including:  Peter's due diligence reports, Know Your Customer summaries, the 3005 Account Opening Summary, the 2018 Annual Account Review, the 2019 Annual Account Review, and the 2020 Annual Account Review.  *See id.*

### C. Because of Defendants' Discovery Violations, Plaintiffs Could Not Have Brought the PAC Sooner

The general rule in the First Circuit that a lapse of "considerable time" – variously defined as several months to a year – between the filing of the initial complaint and seeking leave to amend "warrant[s] explanation," requiring the plaintiff to show "some valid reason" for the delay. *Zullo v. Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citation omitted). As set forth in Plaintiffs' brief in chief, it has been repeatedly held that such a "valid reason" exists when Plaintiffs have learned new information that affects their causes of action. *See, e.g., Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 39 (1st Cir. 2022) 39; *In re Telexfree Sec. Litig.*, 2021 U.S. Dist. LEXIS 232681 at *52 (D. Mass. 2021) (finding no undue delay where "plaintiffs' counsel avers that many of the new facts alleged in the proposed complaint were derived from evidence recently obtained"); *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, (D. Mass. Dec. 22, 2020); *W. Sur. Co. v. McMusa, LLC*, 2015 U.S. Dist. LEXIS 190635 (D. Mass. June 22, 2015); *Palacio v. City of Springfield*, 25 F. Supp. 3d 163, 1699 (D. Mass. 2014); *cf. Zullo*, 755 F.3d at 4 (1st Cir. 2014) (denying leave where "this is not a case where the movant sought to amend upon learning previously undiscoverable information").

In their main papers, Plaintiffs set forth at length all of the new information on which the PAC is based, and when it was obtained in discovery. Since they cannot deny the case law or their numerous discovery violations, Defendants instead attempt to shift responsibility by arguing that Plaintiffs were already in possession of the information or could have obtained it from another source. As an initial matter, this is irrelevant as to Defendants' discovery violations: "a responding party is required to produce documents in his possession, custody, or control regardless of whether the requesting party is already in possession of the requested documents." *Viscito v. Nat'l Planning Corp.*, 2019 U.S. Dist. LEXIS 181635 at *22 (D. Mass. Oct. 21, 2019 (quoting *P.R. Med.*

6

*Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016); other citations omitted); *see also Med. Protective Co. v. Am. Int'l Specialty Lines Ins. Co.*, 2014 U.S. Dist. LEXIS 141557 at *3 (N.D. Ind. Oct. 6, 2014) ("[I]t is not a proper objection to discovery to suggest that the other party already has the information or that it is available elsewhere."). Defendants never asserted that these documents are irrelevant or that it would have been an undue burden (on one of the largest banks in the world) to produce them in a timely manner, and even if they did it would have been their burden to prove. *See, e.g., Viscito*, 2019 U.S. Dist. LEXIS at *4 (citations omitted).

But more fundamentally, merely asserting that some information was produced elsewhere ignores the central point that the importance of that information could not be ascertained without appropriate context, which (as set forth in Plaintiffs' primary brief and accompanying exhibits) Plaintiffs could not obtain until months later. Thus, to the extent there was any delay in bringing the PAC, it was valid and fully explained.

### 1. The AARs

Defendants claim it "cannot be accurate" that Plaintiffs learned about annual account reviews ("AARs") from the deposition of John Beggans ("Beggans"). However, Defendants did not produce the AARs, which are plainly both relevant to this case and responsive to Plaintiffs' document requests, until after Beggans' deposition. *See* Serritella Decl. ¶ 35. Second, Defendants refer to deposition exhibits as "focused on AARs," but the first referenced exhibit is an email with the subject line "DIM Audits…," and the second referenced exhibit is a single page excerpt from a JP Morgan manual. Prior to these depositions, Defendants produced only that single page of the manual as one of several attachments to an email, necessitating questioning as to the importance of the AAR. Plaintiffs did not learn what the AARs were or their import until after Beggans' deposition in April 2023, and the documents were not produced until still later.

7

### 2. The AIMS

The Agreement for Investment Management Services ("AIMS") is another highly-relevant document that Plaintiffs had no way of fully understanding until after the deposition of Chickasaw's 30(b)(6) witness in June 2023. Prior to this deposition, Plaintiffs believed that Chickasaw was a signatory to the advisory agreements, based on materials that had been produced to Plaintiffs prior to the onset of litigation. *See* Serritella Decl. ¶ 39. However, Plaintiffs learned at that deposition that Chickasaw's principals had never seen these agreements, and instead believed that their contractual obligations were entirely contained within the AIMS. *See id.* Thus the importance of the AIMS could not have been determined prior to this deposition.

### 3. The Modified Account Opening Documents

Among the most important new allegations in the PAC concern Plaintiffs' investment adviser James Baker ("Baker") modifying Peter's account opening documents after he signed them to show a higher liquid net worth, so as to get around internal compliance controls. *See* Serritella Decl. ¶¶ 19-28. Although documents may have been produced in or around September 2022 showing different net worths for Peter, without any supporting documentation or testimony it was impossible for Plaintiffs to surmise why the documents were different. Defendants perversely seem to argue that Plaintiffs should have immediately accused Baker of committing fraud without first ruling out all possible alternatives as to why the document might have been changed.

### 4. JP Morgan Securities

Defendants next argue that Plaintiffs should have known that JP Morgan Securities was a proper defendant in this case at an earlier date because its name appeared on some paperwork in Plaintiffs' possession. However, JP Morgan Securities was not clearly indicated to be in a contractual relationship with Plaintiffs in any of those documents. *See* Serritella Decl. ¶ 55. The full nature of JP Morgan Securities' involvement – including JP Morgan employees not knowing

8

who they work for and JP Morgan Securities receiving fees from the transactions at issue – was not knowable until after deposition testimony and yet another round of document production in May and June 2023.  *See id.* ¶¶ 52-57.

Defendants also argue that Plaintiffs should have somehow gleaned JP Morgan Securities' liability from public regulatory filings.  However, they assert no authority whatsoever for the position that Plaintiffs were required to scour JP Morgan's public records for the likelihood of alter-ego liability prior to bringing this lawsuit.  In any event, Defendants have already conceded that JP Morgan employees "often wear two hats," and "which legal entity one is employed by in a given year is a complicated question of law" – how or why it was Plaintiffs' burden to resolve this "complicated question" at the outset of or even prior to fact discovery is without authority and beyond all sense of fairness and justice.  Opposition to Plaintiffs' Motion for Leave to Amend, (Doc No. 234, at 7-8 n.21).

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' primary motion papers, Plaintiffs respectfully request that the Court reverse the Order and grant Plaintiffs leave to file the proposed amended complaint.

Dated:  New York, New York
November 10, 2023

Respectfully submitted,

YOON DOELGER and PETER DOELGER

By their attorneys,

/s/ James R. Serritella
James R. Serritella (*Pro Hac Vice*)
Justin Stone (*Pro Hac Vice*)
KIM & SERRITELLA LLP
110 W. 40th Street, 10th Floor
New York, NY 10018
T - (212) 960-8345
jserritella@kandslaw.com

9

                          Joshua W. Gardner (BBO No. 657347)
                          GARDNER & ROSENBERG P.C.
                          One State Street, Fourth Floor
                          Boston, Massachusetts 02109
                          T - (617) 390-7570
                          josh@gardnerrosenberg.com

## CERTIFICATE OF SERVICE

      I, James R. Serritella, certify that on November 10, 2023, I caused this document to be filed using the Court's ECF system, with a copy thereby delivered electronically to all counsel of record.

                          /s/ James R. Serritella

                          James R. Serritella