UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| PETER DOELGER and YOON DOELGER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 21-11042-AK |
| ) | |
| JPMORGAN CHASE BANK, N.A. <u>et al.</u>, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER ON PLAINTIFFS' MOTION FOR A JURY TRIAL
[Docket No. 231]

January 3, 2024

Boal, M.J.

Plaintiffs Peter and Yoon Doelger move for a jury trial in this case. Docket No. 231.[1] For the following reasons, I deny the Doelgers' motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2021, the Doelgers filed a nine-count complaint against JPMorgan Chase Bank, N.A ("JPMC") and Chickasaw Capital Management, LLC. Docket No. 1. The complaint contains no jury demand. Id.

The Doelgers allege an investment advisory relationship with Defendants since 2015. Id. ¶ 20. Based on this relationship, they invested tens of millions of dollars with Defendants. See id. ¶ 47. Defendants, the Doelgers assert, failed to use a reasonable and diversified investment strategy to meet the Doelgers' needs. See id. ¶ 2. Instead, the Doelgers contend that, inter alia,

---

[1] On February 9, 2023, Judge Kelley referred the case to the undersigned for full pretrial proceedings and report and recommendation on dispositive motions. Docket No. 170.

Defendants breached their fiduciary duty by maintaining the Doelgers' money primarily in volatile master limited partnerships ("MLPs"). Id. In particular, the Doelgers allege that James Baker, their key JPMC contact and investment advisor, was inexperienced, which contributed to Defendants' decision to place the Doelgers' money in irresponsibly risky portfolios. Id. ¶¶ 45, 205-214.

The investments resulted in a loss of more than $20 million. Id. ¶ 2. In addition, the Doelgers aver that JPMC lent the Doelgers money for which the MLP investments served as collateral, but never disclosed to the Doelgers the alleged conflict of interest in its serving as both a lender and an investment advisor. Id. Furthermore, the Doelgers contend that Defendants worked to dissuade the Doelgers from paying off those loans, including by making misrepresentations about the income generated by the MLPs, because Defendants would lose money if the Doelgers paid off the loans. Id. Defendants allegedly breached a contract governing the investor-advisor relationship between the parties and made material misrepresentations in a 2015 letter concerning the Doelgers' investments. Id. ¶¶ 95-104, 261-67.

A.   Agreements Between The Doelgers And JPMC

On August 10, 2015, Mr. Doelger signed an advisory agreement with JPMC which incorporates a jury waiver. See Docket Nos. 237-2 at 6; 237-5 at 7.[2] In order to add Mrs. Doelger to the account, on June 21, 2019, the Doelgers each signed another advisory account agreement with JPMC which incorporated the same jury waiver. See Docket Nos. 237-8 at 11; 237-1 ¶ 7.

On November 17, 2016, Mr. and Mrs. Doelger signed an agreement relating to a line of credit involving accounts relevant to the complaint. Docket No. 237-10 at 27. The agreement

---

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

states: "**WAIVER OF JURY TRIAL. THE UNDERSIGNED AND THE BANK EACH WAIVE ANY RIGHT TO JURY TRIAL.**" Id. at 8 (emphasis in original). Mr. Doelger also signed an agreement dated December 8, 2016, with JPMC which related to a foreign currency swap. Docket No. 237-13. That agreement contains a jury waiver provision. Id. at 7-8. The Doelgers both signed collateral agreements in June 2019 relating to their application for a line of credit from JPMC which involved accounts at issue in the complaint. Docket No. 237-11 at 10, 20. The agreement contained the same underlined and bolded jury waiver language as the November 17, 2016, agreement. Id. at 8, 18.

      B.  Mr. Serritella

Mr. Serritella, the principal lawyer for the Doelgers, is also their son-in-law.  Docket No. 35 at 13.  JPMC maintains that he participated as a family member, not as a lawyer, in a combination of meetings and calls during which disputed recommendations from JPMC were discussed.  Id.  For this reason, JPMC argues that Mr. Serritella's admission pro hac vice would violate Massachusetts Rule of Professional Conduct 3.7(a).  In support of their motion to admit Mr. Serritella pro hac vice, the Doelgers argued that there would be no confusion resulting from Mr. Serritella's role as a lawyer and witness because there was no jury demand.  Docket Nos. 30 at 11-12; 42 at 6.

      C.    Procedural History

Fact discovery ended on June 27, 2023. See Docket Nos. 215, 216, 217. Defendants filed a joint summary judgment motion on September 28, 2023. Docket Nos. 273. On April 21, 2022, Judge Kelley scheduled a bench trial for April 1, 2024. Docket No. 68.

On August 2, 2023, the Doelgers filed a motion to amend their complaint, which this Court denied on September 21, 2023. Docket Nos. 230, 271. That decision, after objection by the Doelgers, was subsequently adopted by Judge Kelley. Docket Nos. 284, 343.

On August 8, 2023, the Doelgers filed a motion for a jury trial. Docket No. 231. JPMC and Chickasaw filed a joint opposition on August 22, 2023, and the Doelgers filed a reply on September 5, 2023. Docket Nos. 237, 249. This Court heard oral argument on September 13, 2023.

II.     STANDARD OF REVIEW

The Seventh Amendment to the United States Constitution preserves the right to trial by jury in civil cases. U.S. CONST. amend. VII. This right occupies a firm and important place in this country's jurisprudence. However, the "right to a jury trial is unassailable but not unwaivable." Pizza Hut LLC v. Pandya, 79 F.4th 535, 538 (5th Cir. 2023). The Supreme Court has long recognized that parties can waive their jury right. Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848-49 (1986) (listing the civil jury trial right among the waivable constitutional rights). Such waiver may occur pre-suit in the form of a contractual waiver and post-suit in the form of failing to demand a jury trial in accordance with the Federal Rules of Civil Procedure.

With respect to a contractual waiver, such waiver must be knowing and voluntary. "There is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed." Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (1st Cir. 2002).[3] In a diversity jurisdiction suit, the enforcement of a jury waiver is a question of federal, not state, law. Id. The plain language of a contract's jury waiver determines whether it unambiguously covers the claims asserted. Id. at 19. Even where the waiver does encompass the claims at issue,

---

[3] The First Circuit has not apparently resolved the issue of which party bears the burden of proof as to whether a contractual jury trial waiver was knowing and voluntary. Id. at 18 n.3. See also Pizza Hut, 79 F.4th at 541 (recognizing circuit split on the issue). However, at least one district court in this circuit has held that the party seeking to enforce the waiver bears the burden. See Luis Acosta, Inc., v. Citibank, N.A., 920 F. Supp. 15, 18 (D.P.R. 1996).

courts will not enforce a jury waiver unless it was entered into knowingly and voluntarily. Id.

The analysis of post-suit waivers is governed by Rules 38 and 39 of the Federal Rules of Civil Procedure. Those rules set forth the procedure a litigant must follow to preserve its right to a jury trial. Rule 38(b) provides, in pertinent part, that

> [o]n any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand--which may be included in a pleading--no later than 14 days after the last pleading directed to the issue is served.

Fed. R. Civ. P. 38(b)(1). "A litigant waives his or her right to a jury trial unless he or she files a demand pursuant to Rule 38 or reasonably relies on the properly filed jury demand of another party." MIT Fed. Credit Union v. Cordisco, 501 F. Supp. 3d 17, 20 (D. Mass. 2020) (citing Fed. R. Civ. P. 38(d)) (additional citation omitted). Because the right to a trial by jury is constitutionally protected, "'casual waivers are not to be presumed.'" MIT, 501 F. Supp. 3d at 20 (quoting CoxCom, Inc. v. Chaffee, 536 F.3d 101, 110 (1st Cir. 2008)).

When no demand is made pursuant to Rule 38, a court may, on motion, order a jury trial on any issue for which a jury trial might have been demanded. Fed. R. Civ. P. 39(b). The First Circuit has listed the following factors for consideration in connection with a Rule 39(b) motion:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

TG Plastics Trading Co., Inc. v. Toray Plastics (America), Inc., 775 F.3d 31, 36 (1st Cir. 2014). "Any inquiry into the propriety of a Rule 39(b) motion is thus a highly fact-specific endeavor." Id. Even if a jury demand is untimely, courts have wide discretion in making their determination. MIT, 501 F. Supp. 3d at 20.

III.    DISCUSSION

A.    Contractual Waiver

The Defendants assert that there are multiple contractual waivers implicated by the claims in this case. This Court must determine both whether the waivers cover the claims asserted here and then assess whether the waivers were entered into knowingly and voluntarily. Med. Air. Tech Corp., 303 F.3d at 19.

1.    Scope Of The Waivers

The heart of the Doelgers' case focuses on an August 10, 2015 advisory agreement between Mr. Doelger and JPMC. On the signature page of that agreement is a clause stating that Mr. Doelger had "received," "reviewed," "underst[ood]," and "agree[d] to" the General Terms for Accounts and Services ("2015 General Terms"). Id. at 6. The 2015 General Terms include a separate paragraph with a jury waiver provision which states:

**19. Waiver of Jury Trial**

To the extent permitted by law, we and you knowingly, voluntarily and irrevocably waive all right to trial by jury in any action, proceeding or counterclaim, of whatever type or nature, including but not limited to actions in contract or tort, arising out of this Agreement or the relationship established by this Agreement.

You acknowledge that this jury waiver is a material inducement to us to enter into this agreement and acknowledge that no representative of ours has represented (expressly or otherwise) that we might not enforce this jury waiver in the event of litigation.

Docket No. 237-5 at 7; see also Docket No. 237-1 ¶ 4.  The Doelgers have not challenged that the waiver covers their claims arising from the 2015 advisory agreements.

In order to add Yoon Doelger to the account, the Doelgers both signed an account agreement with JPMC on June 21, 2019. Docket No. 237-8 at 11. The agreement states that it is "subject to and incorporates the J.P. Morgan General Terms for Accounts and Services [("2019 General Terms")]." Id. The 2019 General Terms contain the same jury trial waiver as that in the

2015 General Terms. Docket No. 237-1 ¶ 7. Further, within the agreement is a clause stating that they had "received," "reviewed," "underst[ood]," and "agree[d] to" the Combined Terms and Conditions ("T&Cs") for each account for which they were applying. Docket No. 237-8 at 17. The Doelgers do not challenge that the waiver covers claims arising from this agreement.

The Doelgers also signed multiple agreements relating to credit lines which involve accounts relevant to the complaint. Docket Nos. 237-10; 237-11. These agreements contain jury waivers in bolded and underlined language. Docket Nos. 237-10 at 8; 237-11 at 8, 18. In addition, Mr. Doelger signed an agreement with JPMC dated December 8, 2016 that related to a foreign currency swap. Docket No. 237-13. The agreement contains a jury waiver provision. Id. at 7-8.

The Doelgers put forth no argument that the waivers do not encompass the subject matter of this case and all its claims. Indeed, the claims do appear to fall within the purview of the waivers. Accordingly, this Court finds that the waivers cover the claims asserted against JPMC.

        2.    <u>Knowing and Voluntary Waiver</u>

        i.    <u>JPMC</u>

Even where a contractual jury waiver clause encompasses the asserted claims, courts will not enforce the waiver unless it was entered into knowingly and voluntarily. <u>Med. Air Tech. Corp.</u>, 303 F.3d at 19. Here, the Doelgers contend that they did not enter into a knowing and voluntary waiver of their right to a jury trial. Specifically, they allege that there is no proof that they received the incorporated documents because Defendants have not produced receipts or lists of documents sent to the Doelgers. Docket No. 249 at 3-5. They ignore, however, the many signed documents stating that they had, in fact, received the documents at issue. <u>See</u> Docket Nos. 237-2 at 6; 237-8 at 11, 17; 237-10 at 8; 237-11 at 10, 20; 237-13 at 7-8. Even if the Doelgers did not receive some of the documents incorporated into the agreements, they signed multiple

contracts with a jury waiver in the body of the document.

An incorporated document "[must] be referred to and described in the contract so that the referenced document may be identified beyond doubt." BBJ, Inc. v. MillerCoors, LLC, No. 12-CV-11305-IT, 2015 WL 4465410, at *6 (D. Mass. July 21, 2015) (alteration in original) (citations omitted). Here, the documents referred to in the contract are clearly and unambiguously identified. The "General Terms for Accounts and Services" Mr. Doelger acknowledged that he received in the August 10, 2015 agreement (Docket No. 237-2 at 6) refer to the document of the same name (Docket No. 237-5 at 4). The "Combined Terms and Conditions" listed in the June 21, 2019, agreement (Docket No. 237-8 at 11) refer to the larger overall document which contains the General Terms For Accounts and Services. See Docket No. 273-5 at 2, 3, 4, 7.

For all these reasons, this Court finds that the Doelgers knowingly and voluntarily waived their right to a jury trial for the claims asserted in this case against JPMC.

           ii.       <u>Chickasaw</u>

The contractual waiver issue with respect to Chickasaw is more complex. On November 19, 2014, JPMS and Chickasaw entered into the Agreement for Investment Management Services ("AIMS") that governs the relationship among the client, JPMC and Chickasaw. Docket No. 231-8. The subject agreement contains a jury waiver provision. Section 9.08 provides that JPMC and Chickasaw "each knowingly, voluntarily and irrevocably waives any and all rights to a trial by jury of any proceeding arising out of or relating to this agreement and the services provided and contemplated hereunder." Id. at 16. The Doelgers are not parties to this agreement. As a general matter, only parties to a contract can enforce a contractual jury waiver. Med. Air. Tech. Corp., 303 F.3d at 18. For this reason, the AIMS agreement does not waive the Doelgers' right to a jury trial. However, in the JPMC contracts, the Doelgers waived their jury trial right "in

any action . . . arising out of this Agreement or the relationship established by this Agreement."
See, e.g., Docket No. 237-5 at 7. The Doelgers have sued Chickasaw based on the relationships
established by the Advisory Agreements and therefore such claims are covered by the waiver.

For all these reasons, the Doelgers waived their right to a jury trial in this case.

B.      Post-Suit Waiver[4]

It is undisputed that the Doelgers did not request a jury trial within fourteen days after the
last pleading directed to the issue was served.[5] They have therefore waived their right to a jury
trial post-fling of the complaint. Accordingly, this Court will analyze the Doelgers' motion
pursuant to the Rule 39(b) factors.

1.      Whether The Issues Are Best Tried To A Jury

The Doelgers make the following claims against Defendants: (1) breach of fiduciary
duty; (2) breach of contract; (3) negligence/gross negligence; (4) negligent misrepresentation; (5)
breach of the covenant of good faith and fair dealing; (6) declaratory judgement that the 2015
hedge letter is an invalid contract and/or is unenforceable; (7) rescission of the 2015 hedge letter
pursuant to 15 U.S.C. § 80b-15; (8) deceptive trade practices and consumer protection act,
M.G.L. c. 93A violations; and (9) elder financial exploitation in violation of Fla. Stat. § 415.
Docket No. 1 at 42-51.

---

[4] Because this Court has found that the Doelgers waived pre-suit their right to a jury trial, that
finding is sufficient to deny their motion.  However, in an abundance of caution, this Court also
analyzes their post-suit waiver.
[5] The Doelgers' motion is largely premised on the assertion of new claims in a proposed
amended complaint. If the Court had allowed the motion to amend, then pursuant to Rule 38, the
Doelgers could have attempted to assert a right to a jury trial for the new claims. Of course, those
claims would face the same obstacle posed by the many contractual waivers. In any event, on
September 22, 2023, I denied the motion to amend, and Judge Kelley upheld that decision.
Docket Nos. 271, 343. Accordingly, my analysis is based on the original complaint only.

The issues in this case generally appear suited to jury determination.[6] Courts typically take the view that factual disputes are best resolved by a jury. See, e.g., Hamann v. Carpenter, No. 17-CV-11292-ADB, 2021 WL 1581016, at *3 (D. Mass. Apr. 22, 2021). Furthermore, there is no reason to think that a jury would be unable to comprehend the factual issues in this case.

Mr. Serritella's involvement in the case, however, presents more of an issue. First, although the parties have stipulated that he will not participate as a witness in the case, he has personally been involved in some of the interactions that may be used as evidence at trial. If he, in his capacity as counsel, examines other witnesses involved in the same interactions, he could inject statements of fact into his questions based on his personal knowledge as a witness. While a judge is capable of distinguishing between Mr. Serritella's two roles in the case, the issue becomes murkier for a jury.

Second, at oral argument, Defendants represented that they would not have agreed to the stipulation regarding Mr. Serritella if they had known that the case would be tried before a jury. See also Docket Nos. 225, 237 (stipulation as to Mr. Serritella's participation at trial in lieu of taking his deposition).  For these reasons, this factor is neutral.

### 2.    Length Of Delay And Disruption Of Schedules

The Doelgers filed their motion for a jury trial on August 8, 2023, more than two years after they filed their original complaint in this matter. See Docket Nos. 1, 231. The defendants filed a combined summary judgment motion on September 28, 2023. Docket No. 273. The bench trial, which Judge Kelley scheduled on April 21, 2022, is set to begin on April 1, 2024. Docket No. 67. If this Court were to grant the Doelgers' motion, that would leave less than four months

---

[6] Claims of breaches of fiduciary duty are equitable causes of action to which no right to jury trial generally attaches. Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 61-63, n.4 (1st Cir. 2003).

for the parties to prepare for a previously unanticipated jury trial. In light of the above, it is highly likely that the trial would have to be postponed, even though Judge Kelley scheduled it nearly a year and a half ago. This factor weighs heavily in favor of Defendants.

### 3. Reason For Delay

The Doelgers assert that they only waived their right to a jury trial because they believed that they were contractually prevented from making such a demand based on documents provided by Defendants. Docket No. 231-1 at 2-3. They further contend that Defendants prevented them from discovering the facts necessary for the instant motion. Id. at 6.

Defendants counter that the Doelgers signed agreements with JPMC that contain jury waiver clauses. Docket No. 237 at 7-11. Defendants also argue that the Doelgers are third-party beneficiaries to a contract between JPMC and Chickasaw which contains a jury waiver provision that binds them as well. Id. at 11.

As discussed, the Doelgers have validly waived their rights to a jury trial as to their accounts with JPMC. Even if they had not, the agreements at issue were signed between 2015 and 2019, and the Doelgers had them well before the filing of the instant motion. If they believed that the jury waiver clauses in the documents they signed were invalid, the time to raise such an issue was at the outset of the case.

In addition, if, as the Doelgers assert, they did not believe they had waived their rights to a jury trial as to Chickasaw (Docket No. 249 at 8), they could and should have sought a jury trial at the time they filed this case with respect to the Chickasaw claims. Their attempt to do so at this late juncture is unavailing. This factor weighs in favor of Defendants.

### 4. Prejudice To Defendants

For the past two years, Defendants have operated under the assumption that they would try the case before a judge, not a jury. That fact alone creates prejudice because Defendants

might well have proceeded differently and made different tactical decisions had they known the case was going to be heard by a jury rather than a judge. See Est. of Leavitt-Rey v. Marrero-Gonzalez, No. CV 16-2769 (RAM), 2019 WL 4391443, at *5 (D.P.R. Sept. 13, 2019).

This Court, in its discretion, finds that consideration of all these factors weighs in favor of Defendants.

IV.    ORDER

For the foregoing reasons, the Doelgers' motion for a jury trial is denied. I decline to order sanctions or award attorneys' fees or costs.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge