# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YOON DOELGER, and<br>PETER DOELGER,<br><br>*Plaintiffs,*<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., and<br>CHICKASAW CAPITAL MANAGEMENT,<br>LLC,<br><br>*Defendants.* | No. 1:21-cv-11042-AK |

**MEMORANDUM OF LAW IN SUPPORT OF
JPMORGAN CHASE BANK, N.A.'S MOTION TO ENJOIN
PLAINTIFFS FROM PURSUING THEIR DUPLICATIVE FINRA ARBITRATION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 4

I.  THE CORE OF THE DOELGERS' COMPLAINT IS THE MLPEI ACCOUNT, WHICH IS SUBJECT TO NON-ARBITRATION PROVISIONS ........................................................... 4

    A.  The MLPEI Agreements And The General Terms Explicitly Preclude Arbitration ....4

    B.  The JPMC Agreements Governing The Doelgers' Loans, Swaps, And Other Transactions At Issue Do Not Provide For Arbitration .................................................5

    C.  Only The 1000 Account Agreement With JPMS Contains An Arbitration Clause .....5

II.  THE DOELGERS FILED THEIR FEDERAL COMPLAINT AGAINST JPMC IN JUNE 2021, AND UNSUCCESSFULLY ATTEMPTED YEARS LATER TO AMEND THEIR COMPLAINT ...................... 5

    A.  The Original Complaint In June 2021 Deliberately Excluded JPMS As A Party And Stated That "The Parties Did Not Agree To A FINRA Arbitration"....................5

    B.  More Than Two Years Later, The Doelgers Sought To Amend Their Complaint To Add Additional Claims Against JPMC And JPMS As A Party ............................6

    C.  This Court Denied The Motion To Amend, Finding That The Doelgers "Ha[d] Not Provided A Viable Explanation" For Their Yearslong Delay .............................6

III.  WHILE THEY PURSUED THEIR MOTION-TO-AMEND APPEAL BEFORE DISTRICT JUDGE KELLEY, THE DOELGERS "PROPHYLACTICALLY" FILED A FINRA STATEMENT OF CLAIM THAT IS NEARLY IDENTICAL TO THE PROPOSED AMENDED COMPLAINT ................................ 7

IV.  JUDGE KELLEY ADOPTS THIS COURT'S RULING ON THE MOTION TO AMEND IN FULL .......... 8

V.  THE DOELGERS SEEK TO USE THE FINRA ARBITRATION TO RELITIGATE THE SAME CLAIMS THEY HAVE PURSUED HERE, ON A TIMELINE THAT MAY PRECEDE THIS COURT'S RESOLUTION OF THE DOELGERS' PENDING CLAIMS AGAINST JPMC ...................................... 8

    A.  The Doelgers' Counsel Told JPMS That In The FINRA Hearing, They Intend To Use The Same Documents, Call The Same JPMC And Chickasaw Witnesses, And Rely On The Same Experts And Reports As Were Produced In Federal Court..........8

    B.  The Doelgers Refuse To Schedule The FINRA Hearing After Federal Proceedings Have Concluded, Pressing Instead For Hearing Dates By June Or July .....................9

    C.  JPMS Moves To Dismiss The FINRA Arbitration On Several Grounds, Including Because It Improperly Duplicates This Litigation.......................................................9

LEGAL STANDARD ........................................................................................ 10

**ARGUMENT** ........................................................................................................................ **10**

I.   JPMC Is Likely To Succeed On The Merits Of Its Request ........................................ 10

    A.   The MLPEI Agreements Mandate That This Lawsuit Involving The MLPEI Agreement And JPMC Services Be Brought In Court, Not Arbitration ...................11

        1.   *The MLPEI Agreements And The General Terms Explicitly Preclude Arbitration Of The Claims At Issue In The FINRA Arbitration* ................11

        2.   *The Doelgers' Allegations Relating To The 1000 Account Arise Out Of The MLPEI Agreement And Therefore Are Not Arbitrable* ......................13

    B.   The Doelgers Purposefully Waived Their Right To Arbitrate Long Ago .................14

    C.   The Doelgers' Claims Are Barred By The Doctrine Of Res Judicata .......................16

II.  JPMC Will Suffer Irreparable Harm If The Arbitration Is Not Enjoined .............. 18

III. The Balance Of The Equities And The Public Interest Weigh In Favor Of Enjoining The Arbitration ................................................................................................. 19

    A.   The Balance of Equities ................................................................................................19

    B.   The Public Interest ........................................................................................................20

**CONCLUSION** .................................................................................................................. **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airframe Sys., Inc. v. Raytheon Co.*,
    520 F. Supp. 2d 258, 266 (D. Mass. 2007) ............................................................17

*Am. Inst. for Foreign Study, Inc. v. Fernandez-Jimenez*,
    468 F. Supp. 3d 414 (D. Mass. 2020) ..................................................................19

*Ameriprise Fin. Servs. Inc. v. Ekweani*,
    2015 WL 1737417 (D. Ariz. Apr. 16, 2015) ...................................................14, 15

*AT & T Mobility LLC v. Princi*,
    2011 WL 6012945 (D. Mass. Dec. 2, 2011) ..........................................................19

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..............................................................................................10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) ................................................................................................20

*Banco Popular De Puerto Rico v. Airborne Grp. PLC*,
    882 F. Supp. 1212 (D.P.R. 1995) .........................................................................11

*Bio-Imaging Techs., Inc. v. Marchant*,
    584 F. Supp. 2d 322 (D. Mass. 2008) ..................................................................20

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
    775 F.3d 41 (1st Cir. 2014) ...................................................................................11

*Coquico, Inc. v. Rodriguez-Miranda*,
    562 F.3d 62 (1st Cir. 2009) ...................................................................................10

*Emps. Ins. of Wausau v. First State Ins. Grp.*,
    324 F. Supp. 2d 333 (D. Mass. 2004) ..................................................................10

*Europa Eye Wear Corp. v. Kaizen Advisors, LLC*,
    390 F. Supp. 3d 228 (D. Mass. 2019) ..................................................................11

*Great Lakes Ins. SE v. Andersson*,
    629 F. Supp. 3d 1 (D. Mass. 2022) ...................................................................3, 17

*Grumhaus v. Comerica Sec., Inc.*,
    223 F.3d 648 (7th Cir. 2000) ................................................................................15

*Hatch v. Trail King Indus., Inc.*,
    699 F.3d 38 (1st Cir. 2012)........................................................................3, 16, 17

*James v. Cox*,
    2022 WL 2905367 (D. Mass. July 22, 2022).........................................................17

*Jean v. Mass. State Police*,
    492 F.3d 24 (1st Cir. 2007)...................................................................................10

*Joca-Roca Real Est., LLC v. Brennan*,
    772 F.3d 945 (1st Cir. 2014)........................................................................3, 15, 16

*Liu v. Equifax Info. Servs., LLC*,
    2024 WL 308089 (D. Mass. Jan. 26, 2024).....................................................10, 14

*Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*,
    107 F.3d 979 (2d Cir. 1997)..................................................................................19

*Menorah Ins. Co. v. INX Reins. Corp.*,
    72 F.3d 218 (1st Cir. 1995)..............................................................................15, 16

*MIT Fed. Credit Union v. Cordisco*,
    470 F. Supp. 3d 81 (D. Mass. 2020) .....................................................................11

*Morgan Stanley & Co., LLC v. Couch*,
    134 F. Supp. 3d 1215 (E.D. Cal. 2015)...............................................15, 18, 19, 20

*Morgan Stanley & Co. v. Seghers*,
    2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010)...............................3, 15, 18, 19, 20

*New York Bay Cap., LLC v. Cobalt Holdings, Inc.*,
    456 F. Supp. 3d 564 (S.D.N.Y. 2020)...............................................2, 12, 13, 18

*Par. v. Macy's Retail Holdings, Inc.*,
    2017 WL 5484665 (N.D. Tex. Nov. 14, 2017).......................................................20

*PCS 2000 LP v. Romulus Telecomms., Inc.*,
    148 F.3d 32 (1st Cir. 1998)...................................................................................10

*Reder Enterprises, Inc. v. Loomis, Fargo & Co. Corp.*,
    490 F. Supp. 2d 111 (D. Mass. 2007) ...................................................................13

*Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*,
    325 F.3d 54 (1st Cir. 2003)..............................................................................15, 16

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
    102 F.3d 12 (1st Cir. 1996)...................................................................................18

*In Re Tyco Int'l Ltd. Sec. Litig.*,
   422 F.3d 41 (1st Cir. 2005) ............................................................................................ 14

*World Gym, Inc. v. Pla-Fit Franchise, LLC*,
   2013 WL 3830164 (D. Mass. July 19, 2013) ................................................................. 12

**Other Authorities**

FINRA Rule 12507 ............................................................................................................... 16

FINRA Rule 12510 ............................................................................................................... 16

Defendant JPMorgan Chase Bank, N.A. ("JPMC") submits this memorandum in support of its motion (the "Motion") to enjoin Plaintiffs Peter and Yoon Doelger (the "Doelgers" or "Plaintiffs") from pursuing their duplicative FINRA arbitration as contradictory to JPMC's choices-of-forum clauses, these proceedings, and this Court's jurisdiction and rulings.

## PRELIMINARY STATEMENT

Almost three years ago, the Doelgers sued JPMC and Chickasaw Capital Management LLC ("Chickasaw," and with JPMC, "Defendants"), using a complaint (the "Complaint") containing over forty references to J.P. Morgan Securities LLC ("JPMS"), but strategically omitting JPMS as a defendant to avoid any risk of being sent to arbitration. After completing years of extensive fact and expert discovery, however, the Doelgers' counsel attempted to reverse their litigation strategy by belatedly moving to file a proposed amended complaint ("PAC") asserting new claims and adding JPMS as a new party. This Court and the District Court rejected this "eleventh-hour attempt" based on undue delay. (Doc. No. 271 at 7.) Those rulings should have ended the matter.

Instead, Plaintiffs have filed their failed PAC in a FINRA arbitration (the "Arbitration") against JPMS, using the expediency of referring to JPMC and JPMS together as "JPMorgan" and treating them as alter egos of each other. (Ex. 1.[1]) While JPMC and JPMS—two of the largest financial institutions in the world—are plainly not alter egos of each other, it is now inescapably clear that Plaintiffs are treating the FINRA Arbitration as the alter ego of this federal action, in a transparent effort to hedge against the risk of an adverse judgment in this Court. On February 26, 2024, Plaintiffs' counsel confirmed that they intend to use the same documents, the same fact witnesses (including at least sixteen individuals from JPMC and Chickasaw), and the same three experts introduced here as part of a two-week FINRA trial. Mr. Serritella also announced his

---

[1] As used herein, "Ex. _" refers to the exhibits to the Declaration of Tracy O. Appleton ("Appleton Decl.").

intention to seek a FINRA hearing date as early as May 2024, in apparent effort to circumvent this Court's resolution of Plaintiffs' claims. Plaintiffs' decision to institute a flagrant copycat proceeding as insurance against a negative outcome from this Court—the forum Plaintiffs specifically chose for this non-arbitrable matter—is wholly improper. Such conduct should be enjoined, and JPMC satisfies all requirements for such relief.

This Motion is likely to succeed on the merits for at least three reasons. First, the applicable agreements in this litigation expressly preclude arbitration. As the Complaint itself concedes, "the parties did not agree to a FINRA arbitration" (Doc. No. 1 ¶ 103): the contracts governing the master limited partnership ("MLP") portfolio that is central to the Complaint (and the Statement of Claim ("SOC") in the Arbitration) exclude arbitration for disputes "arising out of investment management services provided by [JPMC]" or "out of th[e] agreement" governing the account. (Ex. 2 at 6 of 18; Ex. 3 at 4.) Other agreements related to the Doelgers' line of credit (which are JPMC products) also require litigation in court—not in FINRA. The Doelgers agreed not to arbitrate disputes related to these JPMC contracts and services, and therefore they are barred from doing so now. A party "cannot escape application of the forum selection clause by bringing different claims in a FINRA arbitration proceeding," or by arbitrating against an affiliate who is not party to the forum selection clause. *New York Bay Cap., LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564, 572 (S.D.N.Y. 2020).

Second, even apart from their agreement to those forum selection clauses, the Doelgers irrefutably have waived their right to arbitrate by virtue of their conduct in this litigation. After expressly and purposefully declaring in their Complaint that these issues are not arbitrable (Doc. No. 1 ¶ 103), the Doelgers proceeded to fully litigate this case before this Court, including by obtaining over 40,000 documents, securing numerous interrogatory responses, and participating in

dozens of depositions—discovery that generally would not have been available in proceedings before FINRA.  After "evinc[ing] a clear intent to forgo arbitration and resolve the disputed matter through litigation," the Doelgers cannot now "switch horses midstream to pursue an arbitral remedy."  *Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2014), *abrogated in non-relevant part by Morgan v. Sundance Inc.*, 596 U.S. 411 (2022).

Third, the Arbitration is an affront to this Court's explicit ruling that Plaintiffs' undue delay precluded them from filing the PAC, which contained hundreds of new allegations, many new claims, and a new party.  "Under Federal law, it is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."  *Great Lakes Ins. SE v. Andersson*, 629 F. Supp. 3d 1, 3 (D. Mass. 2022).  Plaintiffs cannot circumvent the denial of their motion to amend by simply filing the same amendments before another forum.  *See, e.g.*, *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012).

Moving beyond the merits of the Motion, the case law is clear that JPMC will suffer irreparable harm if the Motion is denied, including because of the risk of inconsistent rulings.  *See, e.g.*, *Morgan Stanley & Co. v. Seghers*, 2010 WL 3952851, at *6 (S.D.N.Y. Oct. 8, 2010).  And since an injunction would save Plaintiffs the same time, expense, and risks of litigating this matter twice, the balance of the equities also overwhelmingly favors an injunction.

Finally, the public interest heavily supports enjoining Plaintiffs' purposefully duplicative FINRA proceeding.  Most importantly, it will conserve judicial resources by preventing the FINRA proceedings from interrupting this Court's consideration of the case, and it will avoid the risk of FINRA (or Plaintiffs) taking actions that might contradict or undermine this Court's rulings.  This Court has dedicated considerable time and effort to this matter, including in evaluating Defendants' pending motion for summary judgment.  This Court's rulings on that motion (or, if

required, at trial) are bound to be preclusive on the issues raised in the Arbitration, regardless of the outcome.  Plaintiffs chose to file their lawsuit here, and given the efforts this Court and all parties have expended on this case to date, it should be litigated to its conclusion here.

For the foregoing reasons and those presented below, JPMC respectfully requests that this Motion be granted.

**FACTUAL BACKGROUND**

I.   **THE CORE OF THE DOELGERS' COMPLAINT IS THE MLPEI ACCOUNT, WHICH IS SUBJECT TO NON-ARBITRATION PROVISIONS**

A.  **The MLPEI Agreements And The General Terms Explicitly Preclude Arbitration**

The central element of the Doelgers' Complaint (and, as explained below, their FINRA SOC) is the account Mr. Doelger opened with JPMC in 2015 to participate in the Master Limited Partnership & Energy Infrastructure ("MLPEI") strategy (the "MLPEI Account"), which Mrs. Doelger joined in 2019.  This account is governed by the agreements Mr. Doelger signed in 2015 and both Doelgers signed in 2019 (the "MLPEI Agreements"), which contain substantively identical provisions precluding arbitration.

The MLPEI Agreements incorporate by reference JPMC's General Terms for Accounts and Services (the "General Terms").  (Ex. 2 at 6 of 18.)  The General Terms contain a forum selection clause whereby the parties agreed to "submit to the ***exclusive jurisdiction of any federal or state court*** [in your location] ***all legal proceedings arising out of this Agreement***."  (Ex. 3 at 4.)[2]  The "Exclusions from Arbitration" provision in the MLPEI Agreements further states that JPMC "has not agreed to arbitrate ***any dispute arising out of investment management services provided by it***," and that the Doelgers "acknowledge and understand that ***such disputes will not be***

---

[2] Unless otherwise indicated, in quotes the emphasis has been added and quotation marks and alterations have been omitted.

4

*subject to arbitration* provisions set forth [for other services] or any similar provision requiring arbitration."  (Ex. 2 at 6 of 18.)[3]

### B. The JPMC Agreements Governing The Doelgers' Loans, Swaps, And Other Transactions At Issue Do Not Provide For Arbitration

The agreements governing the other transactions at issue in the Complaint (and the SOC)—the line of credit, the 2017 Euro swap, and the 2018 rate cap option—do not contain any agreement to arbitrate by JPMC or JPMS, but rather contain forum selection clauses referencing various federal and state courts.  (*See, e.g.*, Ex. 4 at -7346; Ex. 5 at -5066; Ex. 6 at 1 of 6.)

### C. Only The 1000 Account Agreement With JPMS Contains An Arbitration Clause

Of the various accounts and transactions referenced in the Complaint, only "controversies arising out of the . . . Brokerage Agreement[]" governing the self-directed brokerage account ending in -1000 (the "1000 Account") with JPMS are potentially subject to FINRA arbitration. (Ex. 7 at -5865.)  The Complaint and the SOC do not allege wrongdoing based on the 1000 Account alone; rather, the 1000 Account references are made in connection with allegations of JPMC impropriety with respect to the MLPEI Account or other JPMC products.

## II. THE DOELGERS FILED THEIR FEDERAL COMPLAINT AGAINST JPMC IN JUNE 2021, AND UNSUCCESSFULLY ATTEMPTED YEARS LATER TO AMEND THEIR COMPLAINT

### A. The Original Complaint In June 2021 Deliberately Excluded JPMS As A Party And Stated That "The Parties Did Not Agree To A FINRA Arbitration"

The Doelgers' original Complaint asserted nine counts against JPMC and Chickasaw, focused on the investment management relationship created by the MLPEI Agreements, as well as other JPMC products like loans.  Notably, the Complaint referenced JPMS over forty times, but did not name JPMS as a defendant and, indeed, specifically asserted that "FINRA Rules do not

---

[3] Hereinafter the Exclusions from Arbitration provision and the General Terms' forum selection clause are referred to collectively as the "Non-Arbitration Clauses."

even apply here given that the parties did not agree to a FINRA arbitration." (Doc. No. 1 ¶ 103.)

**B.  More Than Two Years Later, The Doelgers Sought To Amend Their Complaint To Add Additional Claims Against JPMC And JPMS As A Party**

More than two years later, after the parties had exchanged tens of thousands of documents, deposed nearly two dozen witnesses, engaged in expert discovery, and came to the cusp of dispositive motion practice, the Doelgers moved for leave to amend on August 2, 2023, and attached the PAC, in which they asserted six new claims against JPMC and Chickasaw and, for the first time, named JPMS as a defendant for thirteen claims.

**C.  This Court Denied The Motion To Amend, Finding That The Doelgers "Ha[d] Not Provided A Viable Explanation" For Their Yearslong Delay**

On September 21, 2023, this Court denied the Doelgers' motion to amend based on their undue delay in attempting to add new claims and parties to the case. (Doc. No. 271 at 9 n.6.) As to the proposed new claims, the Court found that "much of the information was available to the Doelgers prior to filing the complaint" and the Doelgers failed to "provide[] a viable explanation as to why they did not include" the new claims in their original Complaint. (*Id.* at 8.) Regarding the delay in adding JPMS as a party, the Court found that the Doelgers' "eleventh-hour" argument that they "were not aware until recently of JPMS's role . . . rings hollow" in light of the fact that the Doelgers made "approximately forty references to the company in their original complaint" and included "very specific allegations about JPMS." (*Id.* at 5–7.)

Explaining why the Doelgers' undue delay justified denial of their motion, the Court stated that the amendment would prejudice Defendants by requiring new discovery, "exponentially add[ing] to the time needed to bring this case to a conclusion," and implicating new legal questions, including the potential impact of the forum selection clause of the AIMS and the arbitration clause of the agreement for the 1000 Account. (*Id.* at 8–9.)

6

III. **WHILE THEY PURSUED THEIR MOTION-TO-AMEND APPEAL BEFORE DISTRICT JUDGE KELLEY, THE DOELGERS "PROPHYLACTICALLY" FILED A FINRA STATEMENT OF CLAIM THAT IS NEARLY IDENTICAL TO THE PROPOSED AMENDED COMPLAINT**

On October 6, 2023, one day after appealing this Court's motion-to-amend ruling to District Judge Kelley, the Doelgers filed their SOC against JPMS in FINRA.  (Ex. 8.)  The SOC stated the filing was made "prophylactically" to allow the Doelgers to litigate the PAC's claims in FINRA, due to the denial of their motion to amend.[4]  (*Id.* ¶ 1.)  The SOC also recognized that the matters in the federal litigation "are not subject to arbitration."  (*Id.* at 1 n.1.)

The SOC only named JPMS as a party, but otherwise it is a near exact duplication of the PAC.  (*See* Ex. 1.)  The only real difference between the PAC (and in most instances, the operative Complaint) and the SOC is that the Doelgers redefined term "JP Morgan" in the SOC to refer jointly to JPMC and JPMS.  For example:

| **FINRA SOC[5]** | **Federal Complaint[6]** |
|---|---|
| In disregard of its duties and obligations, [JPMS] willfully, recklessly and imprudently thrust the Doelgers' liquid assets under its care into undiversified and highly risky investments. | In disregard of their duties and obligations, [JPMC and Chickasaw] willfully, recklessly and imprudently thrust the Doelgers' liquid assets under their care into undiversified and highly risky investments. |
| For years, [JPMC, JPMS, and Chickasaw] kept nearly all the Doelgers' money invested in highly volatile Master Limited Partnerships ("MLPs") that declined substantially year after year. | For years, [JPMC and Chickasaw] kept nearly all the Doelgers' money invested in highly volatile Master Limited Partnerships ("MLPs") that declined substantially year after year. |
| [JPMS] never disclosed to the Doelgers its inherent conflict of interest in acting (through an affiliate) as a lender, investment adviser and broker. | [JPMC] never disclosed to the Doelgers its inherent conflict of interest in acting as a lender and an investment adviser. |

---

[4] The SOC implies that the motion to amend was denied in part because this Court determined the JPMS claims needed to be arbitrated.  To the contrary, the motion to amend was denied based on the Doelgers' undue delay in filing it long after fact discovery had closed.  (*See* Doc. No. 271 at 4–9 & n.6; Doc. No. 343.)  This Court's decision simply recognized that "whether claims involving JPMS belong in an action filed in the District of Massachusetts" was one of several complications that would unfairly burden the Court and the Defendants if the tardy motion to amend was granted.  (*See* Doc. No. 271 at 8–9.)

[5] Ex. 8 ¶¶ 3, 4, 262.

[6] Doc. No. 1 ¶¶ 1, 2, 190.

| **FINRA SOC**[5] | **Federal Complaint**[6] |
|---|---|
| [JPMC and JPMS] pressured Peter to invest in currency swaps whereby Peter would supposedly benefit from lower interest rates in foreign currencies. | [JPMC] pressured Mr. Doelger to invest in currency swaps whereby Mr. Doelger would supposedly benefit from lower interest rates in foreign currencies. |

The SOC conceded that, "[b]ecause of the interrelation of the claims, this Statement of Claim necessarily includes allegations involving JP Morgan Bank . . . and Chickasaw." (Ex. 8 ¶ 2.) Notably, every SOC claim is modeled on allegations of wrongdoing that necessarily implicate JPMC. For instance, the SOC claimed JPMS breached the MLPEI Agreements, even though JPMS is not a party to those agreements—JPMC is. (*Compare id.* ¶¶ 384–92 *with* Doc. No. 1 ¶¶ 261–67.) It also asserted breach of contract against JPMS stemming from the Agreement for Investment Management Services between JPMC and Chickasaw, *i.e.*, an agreement that neither the Doelgers nor JPMS are parties to. (*See* Ex. 8 ¶¶ 432–33.)

## IV.   JUDGE KELLEY ADOPTS THIS COURT'S RULING ON THE MOTION TO AMEND IN FULL

On December 18, 2023, Judge Kelley affirmed "in its entirety" this Court's motion-to-amend ruling. (Doc. No. 343.) Judge Kelley found that the Doelgers "lack[ed] good cause" for their delay of more than two years in moving to amend. Judge Kelley further acknowledged that the prejudice and potential burden to Defendants "of extended litigation . . . suffices to support denial of the untimely amendment." (*Id.*)

## V.   THE DOELGERS SEEK TO USE THE FINRA ARBITRATION TO RELITIGATE THE SAME CLAIMS THEY HAVE PURSUED HERE, ON A TIMELINE THAT MAY PRECEDE THIS COURT'S RESOLUTION OF THE DOELGERS' PENDING CLAIMS AGAINST JPMC

### A.   The Doelgers' Counsel Told JPMS That In The FINRA Hearing, They Intend To Use The Same Documents, Call The Same JPMC And Chickasaw Witnesses, And Rely On The Same Experts And Reports As Were Produced In Federal Court

On February 26, 2024, during a meet-and-confer conference, JPMS's counsel asked the Doelgers' counsel if they remained unwilling to stay or dismiss the Arbitration, and the Doelgers'

counsel confirmed this was the case. (Appleton Dec. ¶ 6.) The Doelgers' counsel further indicated

that they intend to request at least a two-week merits hearing in FINRA. (*Id*.) During that trial,

the Doelgers' counsel indicated that they would:

1. Use the same documents produced in this federal action;

2. Call all of the witnesses who were deposed or submitted affidavits in this action, including at least twelve JPMC witnesses and four Chickasaw witnesses; and

3. Use the same three experts Plaintiffs retained in this federal proceeding, who they anticipated would rely on the same expert reports.

(Appleton Dec. ¶¶ 6–7; Ex. 9.) In short, the Doelgers' counsel intends to use the FINRA

Arbitration to relitigate the same matters already before this Court.

### B. The Doelgers Refuse To Schedule The FINRA Hearing After Federal Proceedings Have Concluded, Pressing Instead For Hearing Dates By June Or July

During the same conference, counsel to JPMS noted that Judge Kelley had ordered that

trial (if any) in the federal action must take place by September. (Appleton Dec. ¶ 7.) To avoid

interrupting any proceedings before this Court concerning the pending summary judgment motion

or (if needed) any trial, JPMS's counsel suggested any FINRA hearing (usually calendared at the

outset in FINRA proceedings) be tentatively scheduled to occur in October. (*Id*.) In response, the

Doelgers' counsel indicated that they intend to seek a FINRA hearing in June or July, and possibly

as early as May, irrespective of what happens in this proceeding. (*Id*.)

### C. JPMS Moves To Dismiss The FINRA Arbitration On Several Grounds, Including Because It Improperly Duplicates This Litigation

On February 27, 2024, JPMS filed a motion to dismiss with FINRA. This motion asserted

several dismissal grounds, including that JPMS is not associated with the conduct at issue (JPMC

is), and that this pending federal action should be preclusive on any result reached in FINRA.[7]

---

[7] JPMS also filed an answer on December 21, 2023 (amended on January 5, 2024), which echoed the dismissal grounds raised in its motion to dismiss. Under FINRA 12504, filing an answer is a prerequisite to filing a motion to dismiss.

## LEGAL STANDARD

In considering the motion for a preliminary injunction, "a district court weighs four factors: (1) the [movant's] likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the [non-movants] less than denying an injunction would burden the [movants]; and (4) the effect, if any, on the public interest." *Jean v. Mass. State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007).  Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).[8]

## ARGUMENT

All four injunction factors justify enjoining the Doelgers' duplicative Arbitration.

### I.    JPMC IS LIKELY TO SUCCEED ON THE MERITS OF ITS REQUEST

JPMC is likely to succeed on the merits of its request for three reasons.  First, the Doelgers are prohibited from arbitrating their claims under the Non-Arbitration Clauses contained in the MLPEI Agreements and the General Terms.  Second, the Doelgers consciously waived any right they might have had to arbitrate their claims by bringing the underlying action and actively litigating it for the last three years.  Third, the Doelgers are barred from bringing their claims under the doctrine of res judicata following this Court's decision to deny their motion to amend.

---

[8] It is beyond dispute that this Court has the power to enjoin the FINRA arbitration.  *See, e.g.*, *PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998) ("[T]he power to enjoin an arbitration is the concomitant of the power to compel arbitration . . . .").  Each of the three issues that are the subject of the present motion—the scope of the Non-Arbitration Clauses, the Doelgers' waiver of their right to arbitrate, and the res judicata effect of this proceeding—all clearly fall within the purview of this Court.  *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of whether the parties agreed to arbitrate is to be decided by the court."); *Liu v. Equifax Info. Servs., LLC*, 2024 WL 308089, at *5 (D. Mass. Jan. 26, 2024) ("[W]aiver by conduct, at least where due to litigation related activity, is presumptively an issue for the court."); *Emps. Ins. of Wausau v. First State Ins. Grp.*, 324 F. Supp. 2d 333, 337 (D. Mass. 2004) ("No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations.").

**A. The MLPEI Agreements Mandate That This Lawsuit Involving The MLPEI Agreement And JPMC Services Be Brought In Court, Not Arbitration**

*1.   The MLPEI Agreements And The General Terms Explicitly Preclude Arbitration Of The Claims At Issue In The FINRA Arbitration*

The Non-Arbitration Clauses contained in the MLPEI Agreements plainly preclude arbitration of the FINRA SOC claims.  (*See* Ex. 2 at 6 of 18 (the Doelgers "acknowledge and understand that . . . any dispute arising out of investment management services provided by [JPMC] . . . will not be subject to arbitration"); Ex. 3 at 4 (the parties "submit to the exclusive jurisdiction of [] federal or state court . . . for all legal proceedings arising out of this Agreement").)  These clauses should be enforced.[9]  Further, the agreements related to the line of credit and other JPMC products also lack an agreement to arbitrate, and therefore those transactions are not subject to arbitration.  *See* Fact § I.A–B *supra*.

The Doelgers cannot evade the Non-Arbitration Clauses by simply suing JPMS in the place of JPMC.  The "fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."  *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 390 F. Supp. 3d 228, 231 (D. Mass. 2019).  The First Circuit has consistently held forum selection and arbitration provisions can be applied to actions against a non-signatory when the allegations are closely related to or depend on the existence of the contract.  *See, e.g.*, *id.* ("[T]ort claims against a non-signatory are within the scope of a forum-selection clause if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties.").[10]

---

[9] *See, e.g.*, *MIT Fed. Credit Union v. Cordisco*, 470 F. Supp. 3d 81, 85 (D. Mass. 2020) (enforcing arbitration exemption provision and finding claims not subject to arbitration agreement because "the parties consented to exclude collection disputes from its scope"); *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (1st Cir. 2014) ("A forum selection clause is prima facie valid and, absent a strong showing by the resisting party that the clause is unreasonable under the circumstances, it should not be set aside.").

[10] *See also, e.g.*, *Banco Popular De Puerto Rico v. Airborne Grp. PLC*, 882 F. Supp. 1212, 1216 (D.P.R. 1995) ("[W]hen the alleged conduct of non-parties to a contract is closely related to the contractual relationship, all the participants, parties and non-parties, should benefit from and be subject to any forum selection clauses contained in

The *New York Bay* case is illustrative.  There, the court granted a motion brought by New York Bay ("NYBAY") to enjoin a FINRA arbitration Cobalt filed against, *inter alia*, NYBAY's managing partner (who was a broker dealer), after NYBAY sued Cobalt in court for unpaid fees. *New York Bay*, 456 F. Supp. 3d at 566.  NYBAY's motion was based on a forum selection clause that required "any action, suit or proceeding arising out of or relating to" the contract between NYBAY and Cobalt to be brought in court.  *Id.* at 568.  The court rejected Cobalt's argument that the forum selection clause did not apply because the managing partner (and a related broker) were non-signatories to the contract.  *Id.* at 571.  The court explained that the forum selection clause bound Cobalt, and its language applied to the arbitration because "[b]ut for Cobalt's decision to execute the Contract, there would have been no basis for Cobalt to initiate the FINRA Arbitration." *Id.*  To the extent the FINRA action raised different issues, that was "irrelevant": "courts in similar factual circumstances have rejected the argument that they should not enjoin the arbitration proceedings because the claims or issues are different."  *Id.* at 572 (collecting cases).  Instead, "where the claims before FINRA inextricably linked to claims covered by a forum-selection clause," a party "cannot escape application of the forum selection clause by bringing different claims in a FINRA arbitration proceeding."  *Id.*

Here, the SOC claims against JPMS undoubtedly arise out of the MLPEI Agreements and are inextricably linked to the claims against JPMC here.  Indeed, the vast majority of the SOC's allegations against JPMS are simply cut-and-paste duplications of the Complaint's allegations against JPMC.  (*See* Fact § III *supra*.)  The SOC repeatedly links JPMS to JPMC and the MLPEI Agreement, based on the theory that JPMS and JPMC are "alter ego[s]" of each other:

---

the same."); *World Gym, Inc. v. Pla-Fit Franchise, LLC*, 2013 WL 3830164, at *6 (D. Mass. July 19, 2013) ("Federal courts have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.").

- "Because of the interrelation of the claims, this Statement of Claim necessarily includes allegations involving JPMC." (Ex. 8 ¶ 2.)

- "[JPMS] is an alter ego of [JPMC] in the [MLPEI] Agreements." (*Id*. ¶ 111.)

- "[JPMS] is an alter ego of [JPMC] in the purported terms and conditions that JP Morgan contends that the [MLPEI] Account is subject to." (*Id*. ¶ 112.)

- "The terms and conditions that JP Morgan contends in the Massachusetts Litigation applies, define the 'Bank' in the [MLPEI] Agreements to include [JPMS]." (*Id*. ¶ 387.)

Therefore, as in *New York Bay*, the Arbitration falls within the scope of the MLPEI Agreements' Non-Arbitration Clauses. The Doelgers would not have any arbitral claims to bring but for the MLPEI Agreements, and those claims are inextricably linked to their claims in this litigation. The Doelgers "cannot escape application of" the Non-Arbitration Clauses "by bringing different claims in a FINRA arbitration proceeding." *New York Bay*, 456 F. Supp. 3d at 572.

### 2. The Doelgers' Allegations Relating To The 1000 Account Arise Out Of The MLPEI Agreement And Therefore Are Not Arbitrable

To the extent that the Doelgers attempt to rely on the 1000 Account agreement's arbitration clause, that argument fails. Setting aside waiver and res judicata (discussed below), the Arbitration claims are not based specifically on the 1000 Account, but rather "aris[e] out of investment management services provided by" JPMC and therefore are "not be subject to" any "provision requiring arbitration." (Ex. 2 at 6 of 18.); *see Reder Enterprises, Inc. v. Loomis, Fargo & Co. Corp.*, 490 F. Supp. 2d 111, 115 (D. Mass. 2007) ("[T]he forum-selection clause in the MCA is intentionally broad, *i.e.*, it governs 'any dispute' which can be said to be 'arising out of' that contract. As described, the complaint easily falls within that generous scope."). The Doelgers admit that "[b]ecause of the interrelation of the claims, this [SOC] necessarily includes allegations involving JP Morgan Bank" (Ex. 8 ¶ 2)—indeed, the SOC claims are allegations against JPMC masquerading as JPMS claims. For example, the Doelgers' allegation that "[JPMS] willfully, recklessly and imprudently thrust the Doelgers' liquid assets under its care into undiversified and

13

highly risky investments" is clearly a reference to the MLPEI Account—the managed account where the majority of the Doelgers' MLPs were held—not the self-directed 1000 Account where the Doelgers maintained a small portion of their long-held MLPs for tax purposes.  (*See id.* ¶ 31.[11])

In sum, it is clear that all allegations relating to JPMS and the 1000 Account in the SOC arise out of JPMC's provision of investment management services in connection with the MLPEI Account and MLPEI Agreement, or other JPMC services that are not subject to arbitration.

### B.  The Doelgers Purposefully Waived Their Right To Arbitrate Long Ago

Even assuming the SOC claims could have been subject to arbitration (they are not), the Doelgers consciously gave up any arbitration right they may have had by filing this action in a way that avoided arbitration and then actively litigating it before this Court for years.  It is well established that a party may impliedly waive its right to arbitrate.  *See In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005) ("Waivers of arbitral rights need not be express, but may be implied from the particular circumstances."); *Liu*, 2024 WL 308089 at *7 (a party "relinquish[es] the right to arbitrate by acting inconsistently with that right").  Because the waiver analysis "focuses on the conduct of the allegedly waiving party" (*Liu*, 2024 WL 308089, at *7), a plaintiff can waive their right to arbitrate a dispute against one defendant based on the plaintiff's actions in a prior litigation with another defendant where, as here, "the previous lawsuit and the present demand for arbitration involve the same issues, arguments, witnesses, and lawyers."  *Ameriprise Fin. Servs. Inc. v. Ekweani*, 2015 WL 1737417, at *5 (D. Ariz. Apr. 16, 2015), *aff'd*, 683 F. App'x 641 (9th Cir. 2017).

---

[11] To be clear, this does not mean that the Doelgers could never bring a FINRA arbitration against JPMS.  Rather, because the subject matter of *this particular* Arbitration necessarily decides disputes related to JPMC agreements and services, arbitration of this case is precluded.

The First Circuit has established factors for courts to consider when determining whether a party has waived its right to arbitrate, including whether: (1) the party seeking arbitration "participated in [a] lawsuit or has taken other action inconsistent with" arbitration; (2) the "litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated"; (3) "there has been a long delay" or "arbitration was brought up when the trial was near at hand"; and (4) the party seeking arbitration had "tak[en] advantage of judicial discovery procedures not available in arbitration." *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 61 (1st Cir. 2003). Here, these factors weigh strongly in favor of finding that the Doelgers waived their right to arbitrate.

First, the Doelgers plainly took actions inconsistent with arbitration by initiating and actively litigating since 2021 a federal action virtually identical to the Arbitration. *See, e.g.*, *Menorah Ins. Co. v. INX Reins. Corp.*, 72 F.3d 218, 221 (1st Cir. 1995) (finding waiver "where a party unconditionally submitted part of an arbitrable matter to the courts, but later attempted to take advantage of the arbitration clause"). The Doelgers made the strategic choice not to sue JPMS initially, despite the fact that, as this Court recognized, "the Doelgers were aware of JPMS from at least the outset of this case." (Doc. No. 271 at 5.) Indeed, the Complaint specifically asserted that "FINRA Rules do not even apply here." (Doc. No. 1 ¶ 103.) The Doelgers thus "evinced a clear intent to forgo arbitration and resolve the disputed matter through litigation" and cannot now "switch horses midstream to pursue an arbitral remedy." *Joca-Roca*, 772 F.3d at 949.[12]

---

[12] *See also, e.g.*, *Ameriprise*, 2015 WL 1737417 at *5 (plaintiff waived right to arbitrate claims against subsidiary by choosing to litigate related claims against parent company); *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015) (finding waiver where plaintiff litigated in court for one year before initiating arbitration with claims and allegations that were "materially similar" though "not identical" to those made in the litigation); *Seghers*, 2010 WL 3952851 at *6 (finding waiver where FINRA Statement of Claim "copied several allegations word-for-word" from plaintiff's complaint in a prior litigation in which he brought closely related claims because the prior litigation "reflect[ed] Seghers's choice to litigate the legal and factual issues that he now seeks to arbitrate"); *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 652–53 (7th Cir. 2000) ("[W]hen the same issues are presented, a party may not escape the effect of its waiver by minimally restyling the claim and presenting it for arbitration.").

The second and third factors also support waiver.  After filing this litigation, the Doelgers delayed initiating the Arbitration for over two years.  *See Menorah*, 72 F.3d at 222 (delay of fifteen months sufficient for waiver).  The Doelgers substantially invoked the litigation machinery during that time, including by forcing Defendants to spend millions on substantial discovery and responding to frequent (and often meritless) motions.  *See Joca-Roca*, 772 F.3d at 949 (finding waiver where plaintiff "waited more than eight months" to pursue arbitration, causing defendant to incur substantial costs through "more than a dozen depositions, interrogatories, document production, and conferences with the magistrate judge and opposing counsel").  Indeed, at this late date, (i) discovery is closed, (ii) the summary judgment motion is fully briefed, and (iii) any trial— if one is needed at all—will take place by September.  (Doc. No. 371.)

Finally, the Doelgers have availed themselves of substantial discovery here that would not be available in the Arbitration, including document demands far in excess of what FINRA generally allows, not to mention the many depositions, interrogatories, and requests for admission that FINRA usually does not permit (*see* FINRA Rules 12507(a)(1), 12510).  *See, e.g.*, *Joca-Roca*, 772 F.3d at 949; *Restoration Pres. Masonry*, 325 F.3d 54 at 61 (party previously "involved in at least five depositions" waived arbitration).

### C.  The Doelgers' Claims Are Barred By The Doctrine Of Res Judicata

When a party "chooses to move for leave to amend its complaint" and the motion is denied, the doctrine of res judicata—also known as claim preclusion—provides that "the party is not entitled to a second opportunity in a later action to litigate the claim that the party sought to add." *Hatch*, 699 F.3d at 45.  Because this Court previously denied the Doelgers' motion to amend, in which they sought to bring the same claims that now form the basis of their SOC, res judicata bars the Doelgers from relitigating these claims through the Arbitration.

Res judicata "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." *James v. Cox*, 2022 WL 2905367, at *3 (D. Mass. July 22, 2022) (Kelley, J.). It applies "where there is (1) a prior final judgment on the merits (2) on the same or sufficiently identical claims (3) between the same parties or their privies" or "when a defendant is closely related to a defendant from the original action but was not named in the previous law suit." *Id.* "Under Federal law, it is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *Great Lakes*, 629 F. Supp. 3d at 3.

Here, the Doelgers' motion to amend sought to add six new claims against JPMC and Chickasaw, and thirteen claims against JPMS. This Court denied their "eleventh-hour" motion on the basis of undue delay, finding that the Doelgers "ha[d] not provided a viable explanation" for their delay since they had all necessary information regarding JPMS and their newly asserted claims before filing their initial Complaint, and because granting the motion would "inevitably and unjustifiably delay this proceeding." (Doc. No. 271 at 5–8.)

Crucially, the claims that the motion to amend sought to add are the *very same claims* that the Doelgers have brought in the Arbitration. Indeed, the redline attached as Exhibit 1 shows that the SOC is essentially a carbon copy of the PAC denied by this Court. The Doelgers should not be allowed to circumvent the Court's ruling on their motion by simply bringing the same claims in arbitration.[13] The Doelgers strategically chose not to sue JPMS or bring the PAC claims years

---

[13] *See, e.g., James*, 2022 WL 2905367, at *4 (concluding that new defendants could invoke claim preclusion based on plaintiff's prior related action against another defendant where new defendants' "names appear[ed] throughout" the complaint in the prior litigation, and original defendant's "name appear[ed] more often in the complaint" in the new action "than any of the named defendants"); *Airframe Sys., Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258, 266 (D. Mass. 2007) (claims precluded where plaintiff "recognized the possibility of amending its complaint to include" new defendant in the original litigation and failed to provide "a good reason" why it did not do so), *aff'd*, 601 F.3d 9 (1st Cir. 2010).

ago.  They must now live with that strategy.  *See Hatch*, 699 F.3d at 45 ("It is axiomatic that claim preclusion doctrine requires a party to live with its strategic choices.").

## II.    JPMC WILL SUFFER IRREPARABLE HARM IF THE ARBITRATION IS NOT ENJOINED

The First Circuit has explained that "an attempt to show irreparable harm cannot be evaluated in a vacuum" and "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).  Thus, "the greater the likelihood of merits success, the less that is required in the way of irreparable harm."  *Id.*  Here, not only is there a high likelihood that the Motion will prevail on the merits, but JPMC will also suffer irreparable harm if the Arbitration is not enjoined.

For example, JPMC will obviously suffer irreparable harm due to the risk of inconsistent rulings here and the Arbitration.  *See, e.g.*, *Seghers*, 2010 WL 3952851, at *6 ("[P]laintiff faces irreparable injury to its interests in the finality of the litigation . . . . Having to arbitrate issues that have been finally determined by litigation is an injury for which plaintiff could not be adequately compensated after the fact.").  This is so even though the parties and claims at issue here and the Arbitration are not identical, given the considerable overlap between the two actions.  *See New York Bay*, 456 F. Supp. 3d at 573 ("NYBAY will suffer irreparable harm absent a preliminary injunction because of the possibility of inconsistent rulings from an arbitrator and the Court.  Although the claims [and parties] in the actions are different, there is substantial overlap between the subject matter of this lawsuit and the FINRA Arbitration . . . .").

JPMC will also "suffer irreparable harm if it is forced to participate in a FINRA arbitration initiated by a party"—*i.e.*, the Doelgers—"that has waived its right to do so."  *Couch*, 134 F. Supp. 3d at 1235.  Although JPMC is not a party to the Arbitration, JPMC (and its counsel, who are also counsel to JPMS) will be required to participate substantially in the Arbitration through JPMC's documents and witnesses.  *See id.* ("[A]rbitration expenditures 'are an irreparable injury sufficient

to support a preliminary injunction.'" (quoting *Seghers*, 2010 WL 3952851, at *6)).[14]

Moreover, the Arbitration is bound to be disruptive to this Court's proceedings. Plaintiffs have made clear they intend to try the Arbitration while this case is simultaneously litigated here, even if doing so disrupts proceedings before this Court. If this Court recommends the summary judgment motion be granted, the Arbitration may interrupt any further proceedings before the District Court on that motion, as well as any appeals. Of course, JPMC expects that this case will be dismissed on summary judgment—but if it is not, the Arbitration will be even more disruptive to any trial held in federal court. Such a result would be burdensome not only to JPMC (and its counsel)—who would be required to participate substantively in two potentially conflicting proceedings—but also to this Court when managing its administration of this case.

## III.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF ENJOINING THE ARBITRATION

### A.  The Balance of Equities

The balance of the equities weighs in favor of issuing an injunction here. As described above, the irreparable harm that JPMC faces is substantial. *See Am. Inst. for Foreign Study, Inc. v. Fernandez-Jimenez*, 468 F. Supp. 3d 414, 425 (D. Mass. 2020) (balance of equities supported enjoining arbitration because party faced "hardship" of having to arbitrate non-arbitrable claims).[15] Conversely, Plaintiffs face no undue hardship if the Arbitration is enjoined; rather, Plaintiffs would be spared the same time, expense, and risks of litigating this matter twice. Moreover, it would be

---

[14] JPMC will likewise be irreparably harmed if forced to participate in the Arbitration given that this dispute is not subject to arbitration under the Non-Arbitration Clauses. *See Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997) (a party is "irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable"); *AT & T Mobility LLC v. Princi*, 2011 WL 6012945, at *1 (D. Mass. Dec. 2, 2011) ("[T]o be forced to arbitrate a claim plaintiff did not agree to arbitrate is irreparable harm for which there is no adequate remedy at law.").

[15] *See also, e.g.*, *Couch*, 134 F. Supp. 3d at 1237 ("MSSB will be required to expend time and resources litigating claims Couch has no right to pursue, and possibly may be required to return to the Court to set aside an arbitration award. The Court therefore finds that the balance of equities favors MSSB."); *Seghers*, 2010 WL 3952851 at *7 ("The balance of hardships tips in favor of the plaintiff in this case. Morgan Stanley has shown that, without an injunction, it would have to expend time and resources participating in the Texas Arbitration.").

inequitable to allow the Doelgers to take a second bite at the apple with JPMS in the Arbitration after having pursued the same claims against JPMC in this litigation for the last three years.  *See Par. v. Macy's Retail Holdings, Inc.*, 2017 WL 5484665, at *8 (N.D. Tex. Nov. 14, 2017) ("The moving party should not be allowed a second bite at the apple through arbitration, nor should a party be permitted to play 'heads I win, tails you lose' by testing the waters through litigation and, when concerned with the litigation outcome, move for arbitration.").

### B.  The Public Interest

The public interest similarly favors granting the injunction, for two reasons.  First, holding the Doelgers to the Non-Arbitration Clauses to which they agreed "serves the public interest in enforcing contractual arrangements."  *Bio-Imaging Techs., Inc. v. Marchant*, 584 F. Supp. 2d 322, 330 (D. Mass. 2008).[16]  Second, enjoining the Arbitration will serve the "significant public interest in conserving judicial and arbitration resources by preventing duplicative proceedings" with potentially contradictory results.  *Seghers*, 2010 WL 3952851 *7.[17]  In sum, it does not serve the interest of our judicial system to allow a party to bring a case in court, litigate it to near completion, and then switch to a new forum at the last minute when they decide they would prefer that someone else decide their case.

### CONCLUSION

For the foregoing reasons, JPMC respectfully requests that this Court enjoin the Arbitration as contrary to the Non-Arbitration Clauses, this case, and this Court's jurisdiction and rulings.

---

[16] *See also, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.").

[17] *See also, e.g.*, *Couch*, 134 F. Supp. 3d at 1237 (public interest weighed in favor of enjoining arbitration because "permitting the FINRA arbitration to proceed raises the risk of duplicative litigation with contradictory results").

Dated:  February 28, 2024

Respectfully submitted,

*/s/ Tracy O. Appleton*
**DONTZIN NAGY & FLEISSIG LLP**
Tibor L. Nagy, Jr.*
Tracy O. Appleton*
William H. LaGrange*
31 East 62nd St.
New York, New York 10065
Tel: 212.717.2900
tibor@dnfllp.com
tappleton@dnfllp.com
wlagrange@dnfllp.com

*Admitted pro hac vice

**MANATT, PHELPS & PHILLIPS LLP**
Joan A. Lukey (BBO #307340)
Max A. Jacobs (BBO #707327)
One Beacon Street, Suite 28-200
Boston, MA 02108
Tel: 617.646.1488
jlukey@manatt.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF CONFERRAL

Counsel for JPMC hereby certifies that JPMC conferred with Plaintiffs on these issues on several occasions, most recently via Zoom on February 26, 2024, when Plaintiffs indicated that they would not consent to stay or dismiss the FINRA Arbitration.  JPMC's attempts to narrow the issues before this Court were unsuccessful.  Counsel to Chickasaw assented to this Motion.

**<u>CERTIFICATE OF SERVICE</u>**

I, Tracy O. Appleton, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 28, 2024, and that paper copies will be sent to those indicated as non-registered participants on February 28, 2024.

*/s/ Tracy O. Appleton*
Tracy O. Appleton
