# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| YOON DOELGER, and<br>PETER DOELGER,<br><br>*Plaintiffs,*<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., and<br>CHICKASAW CAPITAL MANAGEMENT,<br>LLC,<br><br>*Defendants.* | No. 1:21-cv-11042-AK |

**JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT ON PLAINTIFFS' CLAIMS AND DISMISSAL WITHOUT PREJUDICE, OR A STAY, OF ITS COUNTERCLAIMS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 1

PROCEDURAL HISTORY .................................................................. 3

I.      PLAINTIFFS FILED THEIR LAWSUIT IN JUNE 2021 DESPITE KNOWING THEIR CLAIMS LACKED MERIT, AND JPMC WAS COMPELLED TO PARTICIPATE IN THE LITIGATION AND TO ASSERT ITS COMPULSORY COUNTERCLAIMS ........................................ 3

II.     THE PARTIES CONDUCTED OVER A YEAR OF DISCOVERY, WHICH FOCUSED ON PLAINTIFFS' MANY AFFIRMATIVE CLAIMS ............................................ 3

III.    DURING ORAL ARGUMENT ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PLAINTIFFS MADE CLEAR THAT THEY WOULD INSIST ON A TWO-WEEK TRIAL ON JPMC'S COUNTERCLAIMS ...................................................... 4

IV.     ON SEPTEMBER 27, 2024, THIS COURT GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS, LEAVING JPMC'S COUNTERCLAIMS AS THE ONLY REMAINING CLAIMS ................................................. 5

GROUNDS FOR REQUESTED RELIEF ............................................... 5

I.      THE COURT SHOULD ISSUE A PARTIAL FINAL JUDGMENT ON PLAINTIFFS' CLAIMS ........... 6

II.     THE COURT SHOULD DISMISS JPMC'S COUNTERCLAIMS WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, STAY THEM ...................................................... 8

        A. The Court May Dismiss JPMC's Claims Without Prejudice Because Plaintiffs Will Suffer No Legal Prejudice .............................................. 9

        B. In The Alternative, The Court May Stay The Counterclaims During The Pendency Of Any Appeal ................................................. 13

CONCLUSION ............................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Auto. Mfrs. Ass'n v. Comm'r, Mass. Dep't of Env't Prot.*,
　998 F. Supp. 26 (D. Mass. 1998) ...............................................................6

*Barela v. Sniderhan*,
　2008 WL 11511908 (D. Mass. Feb. 21, 2008) .......................................13

*Borden v. Saxon Mortg. Servs., Inc.*,
　469 F. App'x 752 (11th Cir. 2012) ........................................................10

*Camacho-Albert v. Mendez & Co.*,
　589 F. Supp. 2d 141 (D.P.R. 2008) ....................................................9, 10

*Canadian Nat. Ry. Co. v. Montreal, Maine & Atl. Ry., Inc.*,
　275 F.R.D. 38 (D. Me. 2011) ................................................................11

*Cason v. Puerto Rico Elec. Power Auth.*,
　770 F.3d 971 (1st Cir. 2014) ..................................................................9

*Century Mfg. Co. v. Cent. Transp. Int'l, Inc.*,
　209 F.R.D. 647 (D. Mass. 2002) ............................................................9

*Charlene Liberty v. Rhode Island Dep't of Corr.*,
　2022 WL 18024627 (D.R.I. Dec. 30, 2022) ..........................................13

*Cherry v. Hanks*,
　2020 WL 838484 (D.N.H. Jan. 21, 2020) ...............................................9

*DeLong v. Bigio*,
　2020 WL 13827069 (D. Mass. Sept. 25, 2020) .......................................8

*Doe v. Urohealth Sys., Inc.*,
　216 F.3d 157 (1st Cir. 2000) ...........................................................10, 12

*Doelger v. JPMC*,
　2022 WL 1805479 (D. Mass. June 2, 2022) ............................................3

*Kwan v. Schlein*,
　634 F.3d 224 (2d Cir. 2011) .................................................................11

*Lechmere, Inc. v. Hurley State Bank*,
　1995 WL 522780 (D. Mass. Aug. 11, 1995) ............................................6

*Less v. Berkshire Hous. Ser.*,
  2000 WL 1615740 (D. Mass. Sept. 8, 2000) ........................................................10

*Lobster 207, LLC v. Pettegrow*,
  2022 WL 484823 (D. Me. Jan. 26, 2022) .............................................................7

*Mangosoft, Inc. v. Oracle Corp.*,
  482 F. Supp. 2d 179 (D.N.H. 2007)......................................................................11

*N. Ins. Co. of New York v. Bongard S.A.S.*,
  2011 WL 1584355 (D. Mass. Apr. 26, 2011) .......................................................9

*Nestor, Inc. v. HNC Software, Inc.*,
  2001 WL 34134292 (D.R.I. Jan. 16, 2001) ..........................................................12

*Niemic v. Galas*,
  286 F. App'x 738 (1st Cir. 2008).....................................................................6, 7, 8

*Pagan-Garcia v. Rodriguez*,
  2017 WL 377911 (D.P.R. Jan. 26, 2017)..............................................................9

*Patel v. 7-Eleven, Inc.*,
  504 F. Supp. 3d 1 (D. Mass. 2020) ..............................................................7, 8, 13

*Puerto Rico Mar. Shipping Auth. v. Leith*,
  668 F.2d 46 (1st Cir. 1981)...................................................................................9

*Reuter v. Jax Ltd., Inc.*,
  2012 WL 639447 (D. Minn. Feb. 28, 2012) .........................................................11

*Rodriguez-Miranda v. Coquico, Inc.*,
  2011 WL 2292263 (D.P.R. June 7, 2011).............................................................12

*S.E.C. v. TelexFree, Inc.*,
  52 F. Supp. 3d 349 (D. Mass. 2014) ....................................................................13

*Simmons v. Galvin*,
  2008 WL 11456109 (D. Mass. Jan. 16, 2008) ......................................................13

Defendant JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this Memorandum of Law in Support of its Motion for Entry of Partial Final Judgment on Plaintiffs' Claims and Dismissal Without Prejudice, or a Stay, of its Counterclaims  (the "Motion").

## PRELIMINARY STATEMENT

This lawsuit should never have been filed.  As JPMC has maintained throughout this litigation, Plaintiffs' claims do not, and have never had, any support in fact or law.  Nevertheless, Plaintiffs' counsel persisted with this action, and as a result, a host of parties and nonparties were required to undergo three years of extensive document discovery, burdensome depositions, and extreme motion practice, on which the Court was also required to expend its valuable time.  On top of this, JPMC's employees have been subject to years of slanderous allegations both within and outside the courtroom—baseless assertions that have been damaging to their careers and reputations.

Ultimately, Plaintiffs' claims were put to the test at summary judgment.   In its memorandum and order on Defendants' summary judgment motion (the "SJ Ruling"), this Court undertook a thorough analysis of Plaintiffs' claims and determined that all of them were unsustainable.  Doc. No. 418.  Among other things, the SJ Ruling observed that Plaintiffs had mischaracterized the record (*id.* at 9-12, 14, 22-23, 27 n.8), and made assertions that were misleading (*id.* at 10), unsupported (*id.* at 10, 12-16, 20, 26-27 & n.8, 31, 33, 35, 37, 39, 44), and untrue (*id.* at 9, 32).  Accordingly, the SJ Ruling granted Defendants' request to dismiss Plaintiffs' claims on summary judgment.  *Id.*

As a result, the only claims that are left to be resolved are the counterclaims JPMC was compelled to file as part of this proceeding.  Plaintiffs' counsel made clear that they will demand a trial of no less than two weeks on JPMC's counterclaims alone.  *See* Doc. No. 404 at 33:25-34:15.  JPMC believes Plaintiffs' trial demand is overblown, and it is confident it would prevail in

any such trial of its counterclaims.  At the same time, JPMC does not wish to force its employees—and all other parties involved, including Plaintiffs—to subject themselves to these contentious proceedings any longer.  Instead, JPMC is willing to forgo its counterclaims if it means that no trial of any kind will be needed in this case.

At the same time, Plaintiffs have made clear their intention to appeal the SJ Ruling.  JPMC expects this Court's SJ Ruling to be affirmed on appeal, at which point this action should come to a close without a trial.  If, on the other hand, Plaintiffs succeed in reviving any of their claims on appeal, on remand Plaintiffs would inevitably compel a trial to be held on their claims—in which case, JPMC would seek to have its counterclaims tried concurrently.  Thus, the only live issue that remains in these proceedings is Plaintiffs' challenge to the SJ Ruling.  And resolving that issue as soon as possible would best serve the interests of efficiency and of minimizing the burden on this Court.

The swiftest way to resolve the status of Plaintiffs' claims (and thereby determine whether trial is needed) is for the Court to enter a partial final judgment under Federal Rule of Civil Procedure 54(b) on Plaintiffs' claims, as doing so will permit prompt appellate review.  At the same time, the Court should grant relief to prevent a needless trial from proceeding in the interim on JPMC's counterclaims.  To accomplish this, the Court should either (1) dismiss JPMC's counterclaims without prejudice to JPMC reasserting them on remand if Plaintiffs resuscitate any of their claims on appeal, or (2) stay JPMC's counterclaims until any appeal is resolved.

For the foregoing reasons and those set forth below, JPMC respectfully requests that this Court grant the Motion.

## PROCEDURAL HISTORY

I.   **PLAINTIFFS FILED THEIR LAWSUIT IN JUNE 2021 DESPITE KNOWING THEIR CLAIMS LACKED MERIT, AND JPMC WAS COMPELLED TO PARTICIPATE IN THE LITIGATION AND TO ASSERT ITS COMPULSORY COUNTERCLAIMS**

On February 18, 2021, Plaintiffs' counsel served a demand letter on Defendants JPMC and Chickasaw Capital Management LLC ("Chickasaw"), setting forth their allegations and seeking tens of millions of dollars in damages. Doc. No. 276-155. JPMC responded on March 18, 2021, with a fifteen-page letter containing multiple exhibits. Doc. No. 37-1. In that letter, JPMC both explained in detail why Plaintiffs' claims were meritless and put Plaintiffs' counsel on notice of Plaintiffs' 2015 agreement to indemnify JPMC. *Id.* at 2-16. Despite JPMC's letter, Plaintiffs' counsel proceeded to file their lawsuit on June 23, 2021. Doc. No. 1. That compelled JPMC not only to answer the Complaint but to file its counterclaims for indemnification and breach of contract to ensure those claims were preserved. Doc. No. 25; *see Doelger v. JPMC*, 2022 WL 1805479, at *4 (D. Mass. June 2, 2022) (noting JPMC asserted its counterclaims to "preserve its right[s]"). Accordingly, JPMC filed its answer and counterclaims on October 1, 2021. Doc. No. 25.

II.  **THE PARTIES CONDUCTED OVER A YEAR OF DISCOVERY, WHICH FOCUSED ON PLAINTIFFS' MANY AFFIRMATIVE CLAIMS**

From April 2022 through September 2023, the Parties conducted extensive (and contentious) discovery. In light of the scope of Plaintiffs' nine different causes of action, the discovery on Plaintiffs' affirmative claims was expansive, covering tens of thousands of documents, more than a dozen depositions, and work from six experts. Notably, JPMC did not request, and Plaintiffs were not required to provide, any discovery that was related solely to JPMC's counterclaims.

III.   **DURING ORAL ARGUMENT ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PLAINTIFFS MADE CLEAR THAT THEY WOULD INSIST ON A TWO-WEEK TRIAL ON JPMC'S COUNTERCLAIMS**

On September 28, 2023, Defendants filed their motion for summary judgment on plaintiffs' claims.  Doc. No. 273, 276-278.  On March 25, 2024, Magistrate Judge Boal issued a Report and Recommendation ("R&R") recommending that the summary judgment motion be granted in its entirety.  Doc. No. 383.  Plaintiffs filed many objections to the R&R (Doc. No. 391), which Defendants opposed (Doc. No. 398).  This Court held oral argument on Plaintiffs' R&R objections on May 14, 2024.  Doc. No. 402.

During oral argument, the Court inquired about the status of JPMC's counterclaims if the Court adopted the R&R in full.  Doc. No. 404 at 31:9-17.  JPMC's counsel responded that, if the parties did not resolve the counterclaims by agreement, they might be stayed pending appeal or resolved by motion; however brief any trial of JPMC's counterclaims might be, JPMC made clear it intended to "avoid a trial at all costs." *Id.* at 31:23-32:13, 33:9-18.  Plaintiffs' counsel responded that, if JPMC's counterclaims were tried, (i) Plaintiffs would insist on two full weeks of trial, (ii) trial of JPMC's counterclaims would be no shorter than a trial of Plaintiffs' claims, and (iii) Plaintiffs would call well over a dozen witnesses.  *Id.* at 33:25-34:15 (claiming "there was like 12 people involved in drafting" the letter containing the indemnification provision, and "[w]e need to call them all as witnesses").  In response, JPMC's counsel stated that, if a two-week trial were needed just on JPMC's counterclaims, JPMC "might at that point opt to simply not pursue" them. *Id.* at 35:2-9 ("[I]t's a cost/benefit analysis at that point, Your Honor, that we likely would not go forward with a two-week trial.").

IV.   **ON SEPTEMBER 27, 2024, THIS COURT GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS, LEAVING JPMC'S COUNTERCLAIMS AS THE ONLY REMAINING CLAIMS**

On September 27, 2024, this Court issued its SJ Ruling on Defendants' summary judgment motion.  Doc No. 418.  The SJ Ruling exhaustively analyzed Plaintiffs' claims and found each of them unsustainable.  Based upon the Court's "thorough review and consideration of the Plaintiffs' numerous objections," the Court "overruled" Plaintiffs' objections, "ADOPT[ED] the [R&R] in its entirety, and GRANT[ED] Defendants' Motion for Summary Judgment."  *Id.* at 2.

Thereafter, JPMC made multiple attempts to reach a resolution with Plaintiffs that would allow all involved to avoid a trial solely on JPMC's counterclaims.  *See* Certificate of Conferral, *infra*.  JPMC was unable to secure Plaintiffs' consent to any of its proposals, including the relief this Motion requests.  *Id.*  As a result, JPMC filed this Motion.

## GROUNDS FOR REQUESTED RELIEF

The Court should enter a partial final judgment on Plaintiffs' claims and dismiss without prejudice or, in the alternative, stay JPMC's counterclaims because doing so will serve the interests of efficiency and will benefit all involved by avoiding an unnecessary and potentially redundant trial on JPMC's counterclaims.

This Court has already dedicated substantial judicial resources to this matter.  By granting this Motion, the Court would eliminate any immediate need for this Court to spend additional time and energy presiding over a trial.  And if Plaintiffs are unable to revive their claims on appeal, trial in this matter can be avoided entirely.  On the other hand, if Plaintiffs succeed in their attempts to reverse this Court's SJ Ruling, then JPMC's counterclaims could be tried concurrently with Plaintiffs' claims and with no greater burden.  *See* Doc. No. 418 at 33:25-34:9 (Plaintiffs' counsel discussing overlap of claims and counterclaims).

By contrast, if this Court were to require JPMC to proceed to trial now on its counterclaims, the result would be at least one trial, and possibly *two* largely overlapping and weeks-long trials, which would waste resources and potentially result in inconsistent findings. That is not an efficient outcome for the Court, for JPMC's employees, for Chickasaw (which is still a party) or, for that matter, for Plaintiffs.

For all these reasons, the Court should grant the requested relief to prevent this case from further unnecessarily taxing the resources of the parties, witnesses, and the Court.

## I.    THE COURT SHOULD ISSUE A PARTIAL FINAL JUDGMENT ON PLAINTIFFS' CLAIMS

Under Rule 54(b), the Court "may direct entry of a final judgment as to one or more, but fewer than all claims . . . if the [C]ourt expressly determines that there is no just reason for delay." The First Circuit has identified two considerations bearing on whether a partial final judgment should issue under Rule 54(b). Both of those considerations weigh decisively in favor of entry of a partial final judgment on Plaintiffs' claims.

*First*, this Court's SJ Ruling on Plaintiffs' claims "has the requisite aspects of finality," as the Court dismissed all of Plaintiffs' claims against JPMC (and Chickasaw). *See Niemic v. Galas*, 286 F. App'x 738, 739 (1st Cir. 2008) ("We first ask 'whether the judgment has the requisite aspects of finality.' The answer to that question is not in doubt here, since the judgment dismissed all claims against the medical defendants." (internal citation omitted)); *Lechmere, Inc. v. Hurley State Bank*, 1995 WL 522780, at *1 (D. Mass. Aug. 11, 1995) (concluding that, where a summary judgment decision "resolved the essence of the case," the decision had the finality required by Rule 54(b) despite leaving the issue of damages unresolved); *Am. Auto. Mfrs. Ass'n v. Comm'r, Mass. Dep't of Env't Prot.*, 998 F. Supp. 26, 29 (D. Mass. 1998).

*Second*, there is no "just reason" for delaying appellate review of the SJ Ruling. To determine whether "just reason" exists to delay review, the Court considers (1) "any

interrelationship or overlap among the various legal and factual issues involved in the dismissed and the pending claims, and (2) any equities and efficiencies implicated" by the decision to enter a partial final judgment. *See Niemic*, 286 F. App'x at 739.

As to the first prong of the "just reason" analysis, no "interrelationship or overlap" between Plaintiffs' appellate issues and the counterclaims that would remain before this Court counsels against entry of a partial final judgment. While it cannot be denied that Plaintiffs' claims and JPMC's counterclaims are "factually interrelated, they are, at this point, legally ***un*****related**" in a way that weighs in favor of entering partial final judgment. *Lobster 207, LLC v. Pettegrow*, 2022 WL 484823, at *1 (D. Me. Jan. 26, 2022) (emphasis added). The question is whether the issues are interrelated in a way that would render interlocutory appellate review inefficient. *See Patel v. 7-Eleven, Inc.*, 504 F. Supp. 3d 1, 4 (D. Mass. 2020). Here, JPMC's counterclaims rise and fall on the interpretation of particular contractual provisions. In contrast, the bulk of Plaintiffs' claims concern legally distinct claims under common law, federal and state statutory law, and distinct provisions of the parties' agreements. *See id.* (finding negligible overlap between claims based on regulatory and statutory law and counterclaims invoking particular contract provisions). And to the limited extent Plaintiffs' claims relate to the counterclaims, permitting appeal now can only narrow any open issues. If Plaintiffs obtain reversal on any of their claims related to the letter Peter Doelger signed with JPMC, this could moot aspects of JPMC's counterclaims, and if the SJ Ruling is sustained on appeal, the counterclaims will not be tried at all. "The fact that some pending claims could be rendered moot on appeal strongly supports the finding of no just reason for delay." *Id.* (internal quotation marks omitted).

There is also no "just reason" for delay based on the second prong: the "equities and efficiencies implicated" supporting entry of partial final judgment are straightforward. By

allowing a prompt appeal to determine whether Plaintiffs' claims will be reinstated, the Court would avoid wasteful and potentially duplicative litigation. That interest is particularly weighty in light of the substantial cost the parties have already incurred in the years over which this dispute has been litigated. *See Niemic*, 286 F. App'x at 740 (citing the prevention of "unnecessary cost" as a relevant consideration on a motion under Rule 54(b)). And JPMC's commitment that it will not pursue its counterclaims in the event Plaintiffs' claims are not reinstated means that, practically if not strictly speaking, JPMC's counterclaims "would be moot" "[i]f the summary judgment order is affirmed on appeal," which "weigh[s] in favor of a determination that there is no just delay." *See Patel*, 504 F. Supp. 3d at 4. Finally, the cloud that Plaintiffs' scurrilous allegations have cast over the reputations of JPMC's employees (first and foremost, Mr. Baker) lends additional urgency to the final resolution of Plaintiffs' claims. *Cf. DeLong v. Bigio*, 2020 WL 13827069, at *1, *4 (D. Mass. Sept. 25, 2020) (finding a defendant physician's obligation to "report" the litigation "to his insurer, the Board of Medicine, and his associated practices despite there being a finding that [the plaintiff] provided insufficient proof of [his] claim against" the defendant weighed in favor of entry of a partial final judgment).

For the foregoing reasons, the Court should direct entry of a partial final judgment on Plaintiffs' claims pursuant to Rule 54(b).

## II.   THE COURT SHOULD DISMISS JPMC'S COUNTERCLAIMS WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, STAY THEM

In conjunction with its directing entry of a partial final judgment pursuant to Rule 54(b), the Court should issue relief sparing the parties and the Court from an unnecessary trial on JPMC's counterclaims in the interim. Two mechanisms exist for doing so: (i) dismissing JPMC's counterclaims without prejudice to its ability to reassert them if Plaintiffs' claims are reinstated

after an appeal or asserted in another action, or (ii) staying the claims during the pendency of Plaintiffs' anticipated appeal.   Either option is justified under the relevant authorities.

**A.     The Court May Dismiss JPMC's Claims Without Prejudice Because Plaintiffs Will Suffer No Legal Prejudice**

Under Federal Rules of Civil Procedure 41(a)(2) and 41(c), the Court may, in its discretion, dismiss a defendant's counterclaims "on terms that the [C]ourt considers proper."  *See Century Mfg. Co. v. Cent. Transp. Int'l, Inc.*, 209 F.R.D. 647, 648 (D. Mass. 2002).  Here, the Court should dismiss JPMC's counterclaims without prejudice to its ability to reassert those claims in the event Plaintiffs' claims are resurrected on appeal and tried because Plaintiffs will suffer no "plain legal prejudice as a result thereof."  *See Cason v. Puerto Rico Elec. Power Auth.*, 770 F.3d 971, 976 (1st Cir. 2014).  To the contrary, the relief JPMC seeks inures to the benefit of all parties.

Under Rule 41, "dismissal without prejudice is the norm."  *Cherry v. Hanks*, 2020 WL 838484, at *1 (D.N.H. Jan. 21, 2020).  A dismissal should be without prejudice "unless the [C]ourt finds that the [non-movant] will suffer legal prejudice."  *Puerto Rico Mar. Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981).  "The mere prospect of a second law suit," or the possibility that the movant will secure a tactical advantage by dismissal, "is not 'plain legal prejudice.'"  *See Camacho-Albert v. Mendez & Co.*, 589 F. Supp. 2d 141, 144 (D.P.R. 2008); *N. Ins. Co. of New York v. Bongard S.A.S.*, 2011 WL 1584355, at *4 (D. Mass. Apr. 26, 2011).  Instead, courts conduct a "holistic" inquiry that focuses upon whether the movant's maintenance and subsequent dismissal of its claims would result in unfairness to the non-movant.  *Pagan-Garcia v. Rodriguez*, 2017 WL 377911, at *2 (D.P.R. Jan. 26, 2017).  Among the typical considerations are (1) the non-movant's effort and expense in preparing to try the particular claims at issue, (2) whether the movant acted with "excessive delay and lack of diligence" in litigating the claims, (3) the sufficiency of the explanation of the need for dismissal, and (4) whether the non-movant has filed a motion for

summary judgment on the claims the movant seeks to dismiss. *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 160 (1st Cir. 2000). But a court "need not analyze each factor or limit [its] consideration" to them, *Urohealth*, 216 F.3d at 160, as they are "simply a guide for the trial judge, in whom the discretion ultimately rests," *Less v. Berkshire Hous. Ser.*, 2000 WL 1615740, at *6 (D. Mass. Sept. 8, 2000).

This case presents an unusually strong basis for voluntary dismissal without prejudice, as Plaintiffs will suffer no cognizable prejudice from dismissal. Indeed, dismissal at this stage is plainly to their benefit.

*First*, the maintenance of JPMC's counterclaims has not caused Plaintiffs to incur unnecessary expenses in preparing to try this case. To the contrary, it was *Plaintiffs* who brought this action, and proceedings to date have principally been dedicated to litigating *Plaintiffs'* claims. Discovery has all concerned Plaintiffs' affirmative claims; at no point did JPMC demand discovery that related solely to its counterclaims. *See Borden v. Saxon Mortg. Servs., Inc.*, 469 F. App'x 752, 755 (11th Cir. 2012) (affirming counterclaim dismissal after the defendants prevailed on summary judgment because the plaintiffs could "point to no specific discovery conducted on the[] counterclaims"). And even if Plaintiffs could identify discovery or trial work that is uniquely applicable to the counterclaims, such work will not be wasted if they obtain a reversal of the SJ Ruling, for Plaintiffs can use that work in any trial of both sides' claims. *See Camacho-Albert*, 589 F. Supp. 2d at 146 (holding that, where a party's trial preparation efforts would not be wasted if a subsequent suit was filed by the dismissing party, no cognizable legal prejudice resulted from dismissal).

*Second*, JPMC has not been dilatory in litigating its counterclaims. As noted, this case was initiated by Plaintiffs and has, since its inception, been driven by Plaintiffs' affirmative claims.

The (compulsory) assertion of JPMC's counterclaims has done nothing to delay resolution of this case.  Nor has JPMC delayed in seeking its counterclaims' dismissal when it became clear that their maintenance would result in an unnecessary trial—this motion comes just three weeks after the Court's September 27 SJ Ruling.

*Third*, JPMC has proffered a sufficient reason for why it seeks dismissal.  As noted, dismissal without prejudice will benefit Plaintiffs, JPMC, and the Court by preventing the expenditure of time and energy on a trial that will be rendered unnecessary regardless of which side prevails on Plaintiffs' appeal.  *See Mangosoft, Inc. v. Oracle Corp.*, 482 F. Supp. 2d 179, 181 (D.N.H. 2007) (holding that, after dismissal of plaintiff's claims, the "most prudent way to resolve th[e] matter, and the most cost-effective way for the parties, [was] to dismiss [the defendant's] counterclaim," thereby permitting the plaintiff to seek "immediate appellate review").  Indeed, it is *the denial* of the Motion that would result in undue prejudice, as it would force all parties to litigate claims that JPMC is willing to forgo if it would allow all involved to avoid the ordeals of trial.  The Court's "resources are better directed to controversies that all parties . . . wish to litigate, rather than to controversies that . . . parties, who initially sought relief, wish to dismiss." *Canadian Nat. Ry. Co. v. Montreal, Maine & Atl. Ry., Inc.*, 275 F.R.D. 38, 42 (D. Me. 2011).  That is why, when confronted with circumstances materially identical to ours, courts consistently permit voluntary dismissal of counterclaims without prejudice.  *See, e.g.*, *Reuter v. Jax Ltd., Inc.*, 2012 WL 639447, at *5 (D. Minn. Feb. 28, 2012) (permitting, over the plaintiff's objection, a defendant to dismiss its counterclaims without prejudice where, after prevailing on summary judgment, it "no longer wishe[d] to litigate" them); *accord Kwan v. Schlein*, 634 F.3d 224, 231 (2d Cir. 2011).

*Fourth*, Plaintiffs have not filed a summary judgment motion on Defendants' counterclaims.  Thus, there is no pending motion for summary judgment that Plaintiffs might point

to as a source of potential prejudice if this Motion is granted.  The only motion Plaintiffs have ever filed concerning the counterclaims was their pleadings-stage challenge to the counterclaims, which was filed and resolved against them years ago.  Notably, courts in this Circuit have dismissed counterclaims without prejudice even when those claims were the subject of *pending* motions to dismiss.  *See, e.g.*, *Rodriguez-Miranda v. Coquico, Inc.*, 2011 WL 2292263, at *3 (D.P.R. June 7, 2011).  In any event, because Plaintiffs did not "file[] a motion for summary judgment on the claims the movant seeks to dismiss," the fourth consideration from *Urohealth* also weighs against them.  *Urohealth Sys., Inc.*, 216 F.3d at 160.

In short, the voluntary dismissal without prejudice of JPMC's counterclaims cannot be unfairly prejudicial to Plaintiffs.  *See Nestor, Inc. v. HNC Software, Inc.*, 2001 WL 34134292, at *1 (D.R.I. Jan. 16, 2001) ("HNC's infringement claim was brought as a compulsory counter-claim . . . . Although Nestor made expenditures in defending the infringement claim, this Court is mindful of the fact that it is Nestor who initiated this lawsuit and necessitated HNC's compulsory counter-claims.").  Accordingly, JPMC's claims should be dismissed without prejudice to its right to assert them should a trial in this matter become unavoidable.

For the Court's convenience, JPMC has filed contemporaneously herewith a proposed order, pursuant to which JPMC's counterclaims would be dismissed under Rule 41(a)(2) without prejudice to JPMC's right to reassert the counterclaims if Plaintiffs' claims are reinstated after appeal or Plaintiffs improperly pursue the same claims in another action.[1]

---

[1] Should it assist the Court, upon request and with the Court's guidance, JPMC is prepared to submit a proposed order providing for entry of partial final judgment under Rule 54(b), or one staying JPMC's counterclaims pending Plaintiffs' appeal of the SJ Ruling.

**B.     In The Alternative, The Court May Stay The Counterclaims During The Pendency Of Any Appeal**

As noted, Rule 41 provides one mechanism for preserving the status quo during Plaintiffs' anticipated appeal.  But if the Court determines that it is more prudent for the claims not to be dismissed, "the considerations counseling . . . a stay are overwhelming."  *Barela v. Sniderhan*, 2008 WL 11511908, at *1 (D. Mass. Feb. 21, 2008).

This Court possesses "the inherent power to stay pending litigation 'when the efficacious management of court dockets reasonably requires such intervention.'"  *S.E.C. v. TelexFree, Inc.*, 52 F. Supp. 3d 349, 352 (D. Mass. 2014).  Here, prudence strongly counsels in favor of a stay because, as set forth *supra*, a stay will "avoid an enormous duplication of effort and waste of judicial resources."  *Charlene Liberty v. Rhode Island Dep't of Corr.*, 2022 WL 18024627, at *4 (D.R.I. Dec. 30, 2022); *see also Simmons v. Galvin*, 2008 WL 11456109, at *4 (D. Mass. Jan. 16, 2008) ("Moreover, a stay is necessary to achieve the substantial savings of time and expense that an interlocutory appeal may provide.").  The fact that Plaintiffs' appeal may not just "narrow" but potentially moot "the issues" raised by JPMC's counterclaims also weighs in favor of preserving the status quo.  *See TelexFree, Inc.*, 52 F. Supp. 3d at 353.  So too does the fact that Plaintiffs will suffer no prejudice.  Indeed, the Court in *Patel* stayed a defendant's counterclaims (and third-party claims) in materially similar circumstances to those at issue here, thereby permitting the plaintiffs to take an appeal.  *See Patel*, 504 F. Supp. 3d at 4 (noting that the court "stay[ed] . . . adjudication of 7-Eleven's counterclaims and third party claims" after entry of a Rule 54(b) partial final judgment).  The Court should do the same thing here.

For these reasons, the Court should stay JPMC's counterclaims during the pendency of any appeal if it decides not to dismiss them without prejudice.

## CONCLUSION

For the reasons set forth above, JPMC respectfully requests that the Court enter a partial final judgment on Plaintiffs' claims under Rule 54(b) and either dismiss JPMC counterclaims without prejudice to its right to reassert the counterclaims in the event Plaintiffs prevail on appeal and proceed to trial on their claims, or stay the counterclaims during the pendency of any appeal.

## CERTIFICATE OF CONFERRAL

Counsel for JPMC hereby certify that they conferred with counsel for all parties on these issues.  By telephone on October 3, 2024, Plaintiffs' counsel refused JPMC's proposal to resolve this case by agreeing to full and final dismissal of all claims, counterclaims, and requests for costs or fees.  By video conference on October 15, 2024, Plaintiffs' counsel refused to resolve matters related to the counterclaims alone by consenting to the relief requested in this Motion.  Thereafter, via email through the filing of this Motion, JPMC continued to discuss potential terms pursuant to which Plaintiffs might offer their consent to the relief requested in this Motion, but without success.  Counsel for Chickasaw consented to all proposals made by JPMC, including the relief requested in this Motion.  All other attempts to resolve the issues presented in this Motion were unsuccessful.

Dated:  October 17, 2024

Respectfully submitted,

*/s/ Tracy O. Appleton*

**DONTZIN NAGY & FLEISSIG**
Tibor L. Nagy, Jr.*
Tracy O. Appleton*
William H. LaGrange*
31 East 62nd Street
New York, NY 10065
Tel: 212.717.2900
tibor@dnfllp.com

**MANATT, PHELPS & PHILLIPS LLP**
Joan A. Lukey (BBO #307340)
Max A. Jacobs (BBO #707327)
One Beacon Street, Suite 28-200
Boston, MA 02108
Tel: 617.646.1488
jlukey@manatt.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

*Admitted pro hac vice

**<u>CERTIFICATE OF SERVICE</u>**

I, Tracy O. Appleton, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 17, 2024, and that paper copies will be sent to those indicated as non-registered participants on October 17, 2024.

*/s/ Tracy O. Appleton*
Tracy O. Appleton
